IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION
Civil Action No. 2:23-CV-14297-AMC

| | |
|---|---|
| CLARISSA CRUZ, ROBERT ALLAN MARTIN, and KATRINA MARTIN, *individually and on behalf of themselves and all others similarly situated*, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| SELENE FINANCE, LP, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM IN SUPPORT OF**
**<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

Plaintiffs Clarissa Cruz, Robert Allan Martin, and Katrina Martin (collectively "Plaintiffs") respectfully move this Court for an Order certifying this case as a Class Action on behalf of Florida borrowers to whom Defendant Selene Finance, LP ("Selene") has sent one or more form letters falsely threatening acceleration and foreclosure of their mortgage loans in violation of Florida and Federal law. In Support of this Motion, Plaintiffs state:

## I.       PRELIMINARY STATEMENT.

This is a consumer protection action arising out of Selene's systematic use of unlawful and unfair debt collection practices to collect upon residential consumer mortgage loans. Selene systematically sends Florida borrowers templated form letters, misrepresenting that failure to fully cure their delinquency by a false expiration date may result in acceleration of the loan and foreclosure of their homes (the "Final Letters"). However, as admitted by Selene, this ultimatum contradicts Selene's actual policy, in accordance with relevant federal regulations, of <u>never</u> accelerating or initiating foreclosure proceedings on a loan until it is at least 120 days delinquent:



As a result, the Final Letters violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*. ("FDCPA") and the Florida Consumer Collection Practices Act, §§ 559.72, *et seq*. ("FCCPA"). Accordingly, Plaintiffs seek certification of a Florida State Law Class and an FDCPA Sub-Class, as fully described *infra*.

## II.     STATEMENT OF FACTS.

### A.  Selene's Pre-Foreclosure Operations.

Selene is a mortgage servicer servicing hundreds of thousands of loans across the United States.[4] ███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████

████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

---

[4] Selene, *About Us*, https://selenefinance.com/about-us (last accessed May 17, 2024).

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████

**B. Final Letters and Policies.**

    **1.** *Procedure and Content of the Final Letters.*

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████

█████████████████

██████████████████████

████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████

████████████████

███████████████████████████████████████████████

████████████████



**2.** *Selene's Actual Policies Regarding Delinquency and Acceleration.*

As an example of the timeline:

A loan due on January 1 would be sent a Final Letter around February 14 (45 days past due) with a March 17 deadline requiring a borrower to "cure their default". Any payment prior to March 17 sufficient to cover the January payment would leave the loan no more than 45 days past due on March 17 (because the loan would be 45 days past due for the February payment). No payment would leave the loan only 80 days past due. Thus, a borrower must fail to pay anything for the remainder

of March and all of April before Selene's threats become viable, and any payment sufficient to cover January would subtract 30 days from the number of days past due.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████  In other words, Selene does not accelerate loans in the manner threatened in the Final Letters. Rather, the expiration date contained in the Final Letters is completely meaningless—designed only to deceive and scare borrowers into paying more money more quickly than necessary.

**3.  *Selene Sent Final Letters to Plaintiffs and Putative Class.***

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████.  On August 16, 2022, when the loan became more than 45 days past due, the Martin Plaintiffs were sent Final Letters. *See* <u>Ex. C</u>.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████

### III.    LEGAL STANDARD.

**A.  Standards for Class Certification in the 11th Circuit.**

Rule 23(a) provides that members of a class may sue as representatives of the class if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). The initial four requirements of Rule 23 "are designed to limit class claims to those 'fairly encompassed' by the named plaintiffs' individual claims." *Piazza v. Ebsco Inds., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). Plaintiffs have the burden of showing that the elements of Rule 23 are satisfied. *London v. Wal-Mart Stores*, 340 F.3d 1246, 1253 (11th Cir. 2003). The class representatives need not establish their case on the merits. *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D.Fla. 2004) ("[A] district court is not to determine the merits of a case at the certification stage"); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).

Additionally, Plaintiffs must satisfy one of the three requirements of Rule 23(b)(3): "that the questions of law or fact common to the members of the class predominate over any questions affecting only the individual members of the class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The matters pertinent to the findings under Rule 23(b)(3) include:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of

the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.*

**B. Standard Form Debt Collection Letter Class Actions under the FDCPA.**

Notably, Congress has expressly provided for the approval and management of FDCPA class actions by the inclusion of the special damage provisions for class actions, contained in 15 U.S.C. §§ 1692(a) and (b). The district courts of the Eleventh Circuit have certified a number of FDCPA letter class actions. *See, e.g., Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644 (M.D.Fla. 2015) *reconsideration denied sub nom*. *Roundtree v. Ross*, 2015 WL 1931103 (M.D.Fla. Apr. 28, 2015); *Agan* at 692; *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 700 (M.D.Fla. 2000); *Swanson v. Mid Am, Inc*., 186 F.R.D. 665, 668 (M.D.Fla.1999); *Stewart v. Slaughter*, 165 F.R.D. 696, 700 (M.D.Ga.1996). "In cases seeking relief for conduct involving form collection letters alleged to violate the FDCPA[,] certification of a class action is not unusual." *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp*., 2008 WL 3850657 at \*2 (M.D.Fla. Aug. 14, 2008).

In fact, few consumer cases are more readily certifiable than class actions involving standard form debt collection letters.[5] This is because "the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the "least sophisticated consumer" would have been misled." *Swanson* at 668 (citing *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985)); *see also Fuller* at 698-99 (FDCPA claims certified where Defendants sent collection letters to class members: (1) failing to state the

---

[5] The facts and legal issues raised in this action are particularly well-suited to a class action. Numerous federal courts have recognized the appropriateness of certifying class actions involving, as this case does, claims of a common course of conduct involving collection efforts alleged to violate a consumer protection statute. *See, e.g. Keele v. Wexler*, 149 F.3d 589, 594-96 (7th Cir. 1998); *Kalkstein v. Collecto, Inc*., 304 F.R.D. 114, 120 (E.D.N.Y. 2015); *Sharf v. Fin. Asset Resol*., *LLC*, 295 F.R.D. 664, 664 (S.D.Fla. 2014); *Agan* at 696-701; *Hunt v. Check Recovery Sys., Inc*., 241 F.R.D. 505, 508-15 (N.D.Cal. 2007); *Fuller* at 700-01.

amount of the debt; (2) contradicting and overshadowing the validation notice; (3) falsely representing a remedy available to the creditor, and (4) using false representation or deceptive means in an attempt to collect the debt.); *Rivera v. Amalgamated Debt Collection*, 462 F.Supp.2d 1223 (S.D.Fla. 2006) (class certification granted in class action against debt collector under FDCPA and other state statutes relating to two standard form letters that debt collector sent to consumer plaintiff); *West v. Costen*, 558 F.Supp. 564, 572-573 (W.D.Va. 1983) (class certified regarding alleged failure to provide required "validation" notices; *Cheqnet Sys., Inc. v. Montgomery*, 911 S.W.2d 956 (Ark. 1995); *Labbate-D'Alauro v. GC Services Ltd., P'ship*, 1996 WL 563376 (E.D.N.Y. 1996); *Stewart* at 696 (M.D.Ga. 1996); *Villareal v. Snow*, 1996 WL 28254 (N.D.Ill. 1996); *Holloway v. Pekay*, 1995 WL 16925 (N.D.Ill. 1995); *Can v. TransUnion Corp*., 1995 WL 20865 (E.D.Pa. 1995) (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); *Colbert v. TransUnion Corp*., 1995 WL 20821 (E.D.Pa. 1995) (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); *Gammon v. GC Servs.*, 162 F.R.D. 313 (N.D.Ill. 1995); *Zanni v. Lippold*, 119 F.R.D. 32, 35 (C.D.Ill. 1988); *Vaughn v. CSC Credit Servs., Inc*., 1994 WL 449247 (N.D.Ill. 1994), *adopted*, 1995 WL 51402 (N.D.Ill. 1995) (FDCPA class certified regarding alleged failure to provide sufficient "validation" notices; *Avila v. Van Ru*, 1995 WL 41425 (N.D.Ill. 1995); *Brewer v. Friedman*, 152 F.R.D. 142 (N.D.Ill. 1993) (FDCPA class certified regarding transmission of misleading collection demands to consumers); *Beasley v. Blatt*, 1994 WL 362185 (N.D.Ill. 1994); *Duran v. Bureau of Yuma, Inc.*, 93 F.R.D. 607 (D.Ariz. 1982).

**C.  Standard Form Debt Collection Letter Class Actions under the FCCPA.**

Similarly, Florida has expressly provided for the approval and management of FCCPA

class actions by the inclusion of the special damage provisions for class actions, contained in Fla. Stat. § 559.77(2). Federal courts in Florida have certified numerous FCCPA class actions. *See e.g.*, *Sharf* at 664 (FCCPA class certified regarding transmission of form letter without notice of acquiring debt); *Agan* at 692 (FCCPA class certified concerning alleged failure to include due date letters regarding claims of lien); *Fuller* at 699 (FCCPA claims certified where Defendants sent collection letters to class members: (1) failing to state the amount of the debt; (2) contradicting and overshadowing the validation notice; (3) falsely representing a remedy available to the creditor, and (4) using false representation or deceptive means in an attempt to collect the debt.).

## IV. ARGUMENT.

### A. This Action Meets Rule 23(a) Prerequisites for Class Certification.

Plaintiffs bring this action on behalf of themselves and on behalf of two proposed classes[6] with the following definitions:

> **Florida State Law Class**: All Florida residential mortgagors to whom Selene sent a letter substantially similar or materially identical to the Final Letter warning of acceleration of the home loan and/or commencement of foreclosure proceedings upon less than full payment of the "amount due" or "default amount," within the applicable statute of limitations period. (*See* Exhibit B and Exhibit C).

> **FDCPA Sub-Class**: All Florida residential mortgagors whose mortgage servicing was transferred to Selene while in a state of default to whom Selene sent a letter substantially similar or materially identical to the Final Letter warning of acceleration of the home loan and/or commencement of foreclosure proceedings upon less than full payment of the "amount due" or "default amount" within the applicable statute of limitations period. (*See* Exhibit B and Exhibit C).

The Relevant Class Periods are August 16, 2021 through the date of Notice for the Florida State Law Class, and August 16, 2022 through the date of Notice for the FDCPA Sub-Class.

---

[6] Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Selene and any entity which Selene has a controlling interest in and its legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion.

This action meets all requirements for class certification in Rule 23(a) and (b)(3): (1) ascertainability, (2) numerosity, (3) commonality, (4) typicality, (5) adequacy of representation, and (6) predominance of common questions and superiority of the class action mechanism.

**1.  *The Proposed Classes are Readily Ascertainable.***

"The first step in determining whether a class should be certified is to decide whether the Plaintiff has identified a class that exists and that can be precisely defined." *Cox v. Porsche Fin. Servs., Inc.*, 330 F.R.D. 322, 330 (S.D.Fla. 2019). Consequently, "[a]n identifiable class is essential so that the Court can determine whether a particular claimant is a class member." *Id*. (citing *Perez v. Metabolife Int'l, Inc*., 218 F.R.D. 262, 266 (S.D.Fla. 2003) (internal citations omitted)). The ascertainability requirement, "addresses whether class members can be identified at all, at least in any administratively feasible (or manageable) way." *Karhu v. Vital Pharm., Inc*., 621 F.App'x 945, 950 (11th Cir. 2015).

███████ This information will not only provide all requisite identifying information for ascertaining who is a Class Member, but also where notice can be directly provided. ████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████. Selene must only match each account number with an address and name to ascertain the Class Members.

2. ***The Proposed Class is so Numerous that Joinder of All Members is Impracticable.***

Rule 23(a)(1) provides that numerosity is satisfied if the proposed class is so numerous that joinder of all members in a single action is impracticable. Fed.R.Civ.P. 23(a)(1). The numerosity requirement imposes a "generally low hurdle." *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D.Fla. 2013) (citation omitted); *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983) ("Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class.").

Here, numerosity of both classes is clearly met. ██████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████ The FDCPA subclass also satisfies the numerosity requirement. ████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████ Therefore, the Florida State Law and FDCPA subclass are so numerous as to make joinder of all members

impracticable.

### 3. *Questions of Law and Fact are Common to All Class Members.*

Rule 23(a)(2) provides that a suit may be maintained as a class action if "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Rule 23(a)(2) requires only that there be at least one issue of law or fact common to the potential class. *Hicks* at *5 (quoting *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D.Fla. 1996) (finding Rule 23(a)(2) "does not require that all of the questions of law or fact raised by the case be common to all plaintiffs"); *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) ("even a single common question will do"). This requirement is generally satisfied where "[d]efendants have engaged in a standardized course of conduct that affects all class members." *Id*.

This is a prototype class action.  . The common issues are identical amongst class members—whether Selene's use of the Final Letters violates the FCCPA and FDCPA.[7] Selene's liability hinges solely on common legal determinations as to whether the Final Letters violated the FDCPA and FCCPA:

> 1.  Whether Selene, through its Final Letters, made or used false, deceptive, or misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e.

---

[7] The use of form communications is a hallmark of commonality. *See Keele* at 394 ("Common nuclei of facts are typically manifest where…the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents"); *Swanson* at 668 ("[T]o establish commonality, it is sufficient that Plaintiff allege that all class members receive the same collection letter"); *Fuller* at 700 (finding commonality satisfied where "[a]ll members of the prospective class could be affected from the issue regarding the letters sent").

**2.**
Whether Selene, through its Final Letters, threatened to take any action that could not legally be taken or was not intended to be taken in violation of 15 U.S.C. § 1692e(5).

**3.** Whether Selene, through its Final Letters, used false representations or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10).

**4.** Whether Selene, through its Final Letters, used unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692(f).

**5.** Whether Selene, through its Final Letters, willfully engaged in conduct which could reasonably be expected to abuse or harass a borrower or any member of her or his family in violation of Fla. Stat. § 559.72.

**6.** Whether Selene, through its Final Letters, knowingly made false representations that failure to fully cure their delinquency by a false expiration date may result in acceleration of the loan and foreclosure of their home.

[*See generally* D.E. 15, pp. 10-34].

The common questions of law and fact hinge on identical facts central to the resolution of the claims of Plaintiffs and all Class Members. *Wal-Mart Stores*, 564 U.S. at 350 (legal questions are "capable of class wide resolution" when determination of any one of these questions "will resolve any issue that is central to the validity of each one of the claims in one stroke").

### 4. *The Representative Plaintiffs' Claims are Typical of the Claims of the Potential Class.*

Typicality under Rule 23(a)(3) is satisfied where "the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory." *Rosario-Guerrero v. Orange Blossom Harvesting, Inc.*, 265 F.R.D. 619, 627 (M.D.Fla. 2010). "The test for typicality is not demanding." *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F.Supp.2d 1315, 1326 (N.D.Ga. 2007). Factual variation will not render a class representative's claims atypical unless the factual position of the representative differs markedly from other

members of the class. *See In re Netbank, Inc. Sec. Litig.*, 259 F.R.D. 656, 665 (N.D.Ga. 2009). This requirement seeks to ensure that the representative parties possess the same interest and have suffered the same injury as the other members of the proposed class. *Id.*

Plaintiffs' claims are typical of those in the Classes because they arise from the same collection policies, practices, and alleged violations of the same laws. *See Fuller* at 700 (finding typicality satisfied where "[e]ach of the prospective members received a variation of the same collection letter as the named plaintiffs.").



**5.** ***The Representative Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Classes.***

Rule 23(a)(4) requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P., Rule 23(a)(4). Adequacy under Rule 23(a)(4) has two requirements: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citing *In re HealthSouth Corp. Securities Litigation*, 213 F.R.D. 447, 460-461 (N.D.Ala. 2003)). "The purpose of the 'adequacy of representation' requirement is 'to protect the legal rights of absent class members' who will be bound by the *res judicata* effect of a judgment." *Prindle v. Carrington Mortg. Servs., LLC*, 2016 WL 4466838 at *6 (M.D.Fla. 2016) (quoting *Kirkpatrick v. J.C. Bradford & Co*., 827 F.2d 718 (11th Cir. 1987)). Accordingly, the adequacy requirement is applicable to the proposed class representatives and to proposed class counsel. *London* at 1253.

However, "the existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be 'fundamental' one going to the specific issues in controversy." *Valley Drug* at 1189. A conflict is "fundamental" "where some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Id*.

Here, Rule 23(a)(4) is satisfied as the proposed Class Representatives and Class Counsel are adequate. Specifically, the three proposed Representative Plaintiffs have demonstrated their commitment to the putative class by assisting Class Counsel in the litigation, understanding the nature of the case, reviewing the complaint and discovery, producing documents, and communicating with Class Counsel regularly. *See* Exhibit D: Declaration of Scott C. Harris at ¶¶ 8-9. Further, they do not have any conflicts, fundamental or otherwise, which would make their

interests antagonistic to those of the proposed Classes. *Id*. at ¶ 10. In fact, as discussed *supra*, Plaintiffs' claims are typical of those shared by the putative Class Members. *Id*. Additionally, Plaintiffs' counsel are all respected attorneys with extensive experience in complex litigation, consumer protection litigation, and class actions. *Id*. at ¶¶ 3-5.

**B. This Action Meets Rule 23(b) Prerequisites for Class Certification.**

In addition to satisfying the requirements of Rule 23(a), the proposed class must be maintainable under one of the provisions of Rule 23(b). Fed.R.Civ.P. Rule 23(b). Plaintiffs seek class certification pursuant to Rule 23(b)(3), as "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating controversy." *Id*. Rule 23(b)(3).

**1. *Common Issues Predominate.***

The predominance inquiry is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Under this rule, Plaintiffs must demonstrate that those issues common to the classes "predominate over" individual questions. *Id*. For common questions to predominate, it is not necessary for "each element of plaintiff[s'] claims [to be] susceptible to classwide proof," but only for "common questions [to] predominate over any questions affecting only individual class members." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) (cleaned up). Specifically, "[c]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability on every class member's entitlement to injunctive and monetary relief." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009). For this reason, the Supreme Court has noted that "[p]redominance is a test readily met

in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem* at 625.

As the Eleventh Circuit has explained, "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate," and "even if courts must confront some individualized damages issues, common issues predominate if liability can be determined on a class-wide basis." *Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 Fed.App'x 930, 936 (11th Cir. 2016). Indeed, the fact that the amount of damages to be awarded might vary with each individual class member "is not enough to defeat class certification." *Moreno-Espinosa v. J & J Ag. Prods.*, 247 F.R.D. 686, 689 (S.D.Fla. 2007).



Plaintiffs' legal theory relies on objective standards rather than individualized analysis such as causation or reliance. ██████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████. The relevant consumer protection statutes protect consumers from the unlawful threats and misrepresentations contained within the Final Letters and prescribe statutory penalties such threats and misrepresentations. The same evidence will be used to establish Selene's liability for both the

---

[9] ████████████████████████████

Florida State Law Class and the FDCPA sub-Class.

Further the FDCPA provides statutory damages of $1,000 for each individual. In fact, the FDCPA is particularly well suited for class certification as there is a specific damages provision setting forth damages calculations as follows:

> [I]n the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.

15 U.S.C. § 1692k(a)(2)(B).

The FCCPA is similarly well suited for class certification as it also contains a special damages provision setting forth damages calculation in class actions:

> [I]n a class action lawsuit brought under this section, the court may award additional statutory damages of up to $1,000 for each named plaintiff and an aggregate award of additional statutory damages up to the less of $500,000 or 1 percent of the defendant's net worth for all remaining class members; however the aggregate award may not provide an individual class member with additional statutory damages of excess of $1,000.

Fla. Stat. § 559.77(2).

Here, the Class has damages that can be decided formulaically without any individualized inquiry as those who received multiple letters will simply receive the same statutory damages. Accordingly, predominance is met as common issues predominate as to both liability and damages.

### 2. *Class Treatment is Superior.*

Superiority under Rule 23(b)(3) asks whether proceeding as a class action is superior to other available methods of resolution. Four factors are relevant to answer this question: (a) the interests of members in the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced

by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3). No single element is determinative, and the list is not exhaustive in determining superiority. *Walco Invs.,* 168 F.R.D. at 337.

Where the type of injury suffered by the class member is not one in which a plaintiff would typically have "a substantial stake in making individual decisions on whether and when to settle," such as personal injury litigation, class actions are superior to other methods of resolution. *Amchem* at 616. Accordingly, in evaluating whether a class action is the superior mechanism for resolving the case, the court evaluates "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639 (2008).

In this case, each factor supports class treatment. Regarding the first and second factors, there is no evidence that individual class members have an interest in controlling prosecution of this case or have commenced a previous suit against Selene for sending Final Letters. As to the third factor, it is far more desirable to concentrate the litigation as a class action. Given the uniformity of Selene's collection policies applied to all Florida loans, the duplication of effort from individual trials would increase burdens on all parties, create uncertainty for Selene, and waste judicial resources.

There are also no unique difficulties in managing this case as a class action. Plaintiffs' claims primarily rest on issues of law with few evidentiary issues to be decided by the Court ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ Damage calculations do not present a burden and can be calculated formulaically. This case is well-suited for class certification, and superiority has been established.

### V.   CONCLUSION.

Based on the foregoing, Plaintiffs affirmatively satisfy the requirements of Rules 23(a) and 23(b)(3) for the Class; class certification is therefore appropriate, and Plaintiffs respectfully request that the Motion for Class Certification be granted in its entirety.

Respectfully submitted, this the 20th day of May, 2024.

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**

*s/ Scott C. Harris*
SCOTT C. HARRIS
Fla. Bar No. 103905
900 W. Morgan Street
Raleigh, North Carolina 27603
Tel:    919-600-5000
Fax:    919-600-5035
sharris@milberg.com

JONATHAN B. COHEN
Fla. Bar No. 27620
3833 Central Avenue
St. Petersburg, Florida 33713
Tel:    813-699-4056
jcohen@milberg.com

**MAGINNIS HOWARD**

EDWARD H. MAGINNIS
(admitted *pro hac vice*)
N.C. State Bar No. 39317
KARL S. GWALTNEY
(*pro hac vice* forthcoming)
N.C. State Bar No. 45118
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Tel:    919-526-0450
Fax:    919-882-8763
emaginnis@maginnishoward.com
kgwaltney@maginnishoward.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I have filed electronically the foregoing document which will be automatically served upon all attorneys of record via the Court's CM/ECF System.

This the 20th day of May, 2024.

MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC

*s/ Scott C. Harris*
SCOTT C. HARRIS
Fla. Bar No. 103905
900 W. Morgan Street
Raleigh, North Carolina 27603
Tel:    919-600-5000
Fax:    919-600-5035
sharris@milberg.com

*Counsel for Plaintiffs*