IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION
Civil Action No. 2:23-CV-14297-AMC

| | | |
|---|---|---|
| CLARISSA CRUZ, ROBERT ALLAN MARTIN, and KATRINA MARTIN, *individually and on behalf of themselves and all others similarly situated*, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | **MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| v. | ) ) | |
| SELENE FINANCE, LP, | ) ) | |
| Defendant. | ) ) | |

Plaintiffs Clarissa Cruz, Robert Allan Martin, and Katrina Martin ("Plaintiffs") submit this Memorandum of Law in Further Support of Plaintiffs' Motion for Class Certification [DE 47] and in reply to Defendant Selene Finance, LP's ("Selene" or "Defendant") Amended Response in Opposition to Plaintiffs' Motion for Class Certification. (DE 75).

## INTRODUCTION

Plaintiffs bring straightforward claims for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*. ("FDCPA") and the Florida Consumer Collection Practices Act, §§ 559.72, *et seq*. ("FCCPA") arising out of Selene's common practice of systematically sending Florida borrowers templated letters, misrepresenting that failure to fully cure their delinquency by a false expiration date may result in acceleration of the loan and foreclosure of their homes (the "Final Letters"). This is a prototype class action with obvious common issues predominating over any alleged individual issues. The Final Letters were materially identical and sent pursuant to common processes and policies. (DE 70-1 (52:14-53:07; 76:25-77:3; 87:14-88:04; 89:01-12; 89:24-90:07)). Selene's collection policies are identical and were applied consistently to Plaintiffs and all Class Members. (*Id*. (98:25-99:12)). Selene intended the false and misleading representations to be relied upon by consumers and were, in fact, relied upon by the Plaintiffs and Class Members. (DE 15, ¶¶ 188, 222-224). The common questions of law and fact hinge on identical facts and law central to the resolution of the claims of Plaintiffs and all Class Members.

1

Selene has not made any argument that should prevent certification. Courts regularly certify classes in debt-collection actions, including under the FDCPA and FCCPA, in the face of arguments that the "consumer debt" analysis requires individual inquiry. So, too, with arguments that damages will require individual inquiry. Rule 23 does not require there be no individual issues, only that these issues do not predominate. Plaintiffs satisfied each element of Rule 23(a) and (b)(3). None of Selene's arguments raise an individual issue that predominates over the core of common issues. As discussed herein and in Plaintiffs' opening brief, Plaintiffs' Motion should be granted.

## ARGUMENT

**I.    PLAINTIFFS SUSTAINED CONCRETE INJURIES DUE TO SELENE'S DECEPTIVE LETTERS.**

Selene, like many consumer protection defendants following *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), claims Plaintiffs lack Article III standing because their alleged injuries were not sufficiently "concrete, particularized, and actual or imminent," or caused by Selene's Notices. (DE 75 at 8).[1]

But *Ramirez, Spokeo v. Robins,* 136 S.Ct. 1540 (2016)*,* and *Ramirez*'s 11th Circuit predecessor, *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 997 (11th Cir. 2020), do not create an insurmountable bar to recovery. These cases stand for the proposition that the named Plaintiffs must simply show *any* injury – tangible or intangible with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American Courts.[2] There is no "actual damages" requirement; there must simply be a real-world harm stemming from Selene's blatant violations of state and federal law.

While some FDCPA cases may struggle to show actual harm post-*Ramirez*, this case is not one of them because Selene intends for borrowers to rely on the contents of its Final Letters and act in response to the deadlines provided therein. (DE 15, ¶ 188). Plaintiffs suffered real world

---

[1] Selene's response focuses on Plaintiffs' Article III standing arising out of Plaintiffs' FDCPA and FCCPA claims and fails to address Plaintiffs' standing under the Class Action Fairness Act ("CAFA"). Yet, in its Notice of Removal, Selene represented that Plaintiffs satisfy each of CAFA's jurisdictional requirements. *See* (DE 1 at 3-8). Thus, Selene admitted that Plaintiffs have standing in the Southern District of Florida. Moreover, even if the Court were to agree the Plaintiffs lacked standing, the correct relief is to remand the case back to Florida state court, where the Plaintiffs would then move to certify a class pursuant to Rule 1.220 of the Florida Rules of Civil Procedure.
[2] Plaintiffs' claims have a close relationship to misrepresentation claims; in fact, Plaintiffs assert a negligent misrepresentation claim in their Second Amended Complaint. *See* (DE 15).

consequences from doing so; whether through emotional distress from the representations in the Letters which lead reasonable borrowers to believe that borrowers are *far* closer to foreclosure than they really are (*See* R. Martin Tr. 62:16–20; K. Martin Tr. 44:3–23, 47:2–48:1; Cruz Tr. 73:2–7, 74:3–17); or from reliance on the deadlines leading to borrowers making different financial decisions than they would otherwise (such as taking a loan from their retirement plan). (Cruz Tr. (74:11-20)). Thus, based upon their testimony, Plaintiffs have standing for violations of the FDCPA and FCCPA, and this action should be certified as a class.

### A.   Selene's Violations of the FDCPA and FCCPA Confer Article III Standing Because They Gave Rise to Plaintiffs' Concrete Injuries.

Standing is a low bar in matters involving violations of the FDCPA. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 927 (11th Cir. 2020) (explaining "very nearly any level of direct injury is sufficient to show a concrete harm"); *Salcedo v. Hanna*, 936 F.3d 1162, 1167 (11th Cir. 2019) ("A concrete injury need be only an identifiable trifle.") (internal citations omitted). "[A]n FDCPA violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit or otherwise alters a plaintiff's response to a debt." *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021).

Selene relies heavily on *Trichell*, 964 F.3d at 997, but its reliance is misplaced. *Trichell* is simply an early version of *Ramirez*, where plaintiffs "received debt collection letters that they say were *misleading*, but neither of them claims to have been *misled*." *Trichell* at 994 (emphasis in original). That is, the plaintiffs in *Trichell* could not point to any real-world impact from the letter in any way. *Id.*

Here, Plaintiffs relied on Selene's misrepresentations and further, this reliance caused harm because they (1) suffered anxiety and stress, and (2) did not understand they would have more time to pay to prevent acceleration of their mortgage and foreclosure of their home.[3] *See* (DE 15, ¶¶ 40, 47, 54; R. Martin Tr. 62:16-20; K. Martin Tr. 44:3-48:25; Cruz Tr. 73:2-7, 74:3-17; 124:08-125:19). While Selene attempts to minimize the significance of these harms, *any* concrete harm is

---

[3] If Plaintiffs had paid one day earlier because of their understanding of the deadlines in the Final Letters, that would be sufficient to confer Article III standing because it is a real-world harm resulting from the Letter. Selene simply ignores the time value of money. *See Markakos*, 997 F.3d at 780 ("[A]n FDCPA violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit or otherwise alters a plaintiff's response to a debt.")

sufficient for Article III standing purposes. Thus, Plaintiffs have standing.

**B.   Plaintiffs Established Standing Because Selene's Notices Misled Them.**

Selene next claims Plaintiffs only alleged a risk of future harm, foreclosing the possibility of standing. (DE 75 at 10). But this is not what Plaintiffs contend; Plaintiffs claim they were harmed based on their reliance on the veracity of the Final Letters. *See supra*. Plaintiffs established a concrete harm accompanying a risk of future harm to consumers because Selene does not accelerate loans in the manner threatened by the Final Letters. (DE 70-1 (124:08-20)).

Moreover, Plaintiffs are requesting injunctive relief, which establishes Article III standing because the risk of future harm gives rise to standing under the FDCPA. (DE 15, ¶¶ 65, 201). *See Dream Defs. v. Governor of the State of Fla.*, 57 F.4th 879, 887 (11th Cir. 2023) ("A threat of future injury is sufficient to establish [Article III] standing when 'the threatened injury is certainly impending or there is a substantial risk that the harm will occur.'"). Selene's usage of false letters— and there is no evidence Selene has modified their letters since this filing—creates a substantial risk that additional consumers will rely on the false representations to their detriment.

Selene further argues it is merely asking borrowers to pay money they legally owe, which does not amount to a concrete injury. (DE 75 at 10). However, again, Selene misrepresents and ignores the fact it *never* accelerates or forecloses on a consumer's loan within the deadline in its Final Letters, and federal law does not permit Selene to foreclose on borrowers in the time frame suggested. (DE 70-1 (124:08-125:19)). As a result, Plaintiffs were deprived of the opportunity to make informed decisions regarding their financial affairs at the time those decisions were of grave importance. (DE 15, ¶¶ 33, 189; R. Martin Tr. 62:16-20; K. Martin Tr. 44:3-48:25; Cruz Tr. 73:2-7, 74:3-17; 124:08-125:19). That Plaintiffs were behind on their loans adds to the significance of the injury suffered; it is crucial to know exactly what is necessary to avoid acceleration and save their homes. Selene's Final Letter is designed to induce consumers to believe their situation is more dire than it really is and harmed Plaintiffs by causing them significant emotional distress and led them to take actions they would not have taken were it not for the Final Letters. (R. Martin Tr. 62:16-20; K. Martin Tr. 44:3-48:25; Cruz Tr. 73:2-7, 74:3-17; 124:08-125:19; *see Rivas v. Midland Funding, LLC*, 842 F.App'x 483, 486 (11th Cir. 2021); *MSPA Claims 1, LLC v. Tenet Fla., Inc*., 918 F.3d 1312, 1318 (11th Cir. 2019) ("compensation for lost time is nothing new"); *Puskarich v. Equian, LLC*, 2024 WL 2273616, at *6 (S.D.Ill. May 20, 2024) (finding Article III standing where the defendant's wrongful conduct prompted the plaintiff to respond in a way that

deprived her of the use of money that belonged to her for a time). It does not matter whether Plaintiffs owed the underlying debt (nearly every FDCPA case involves a debt that is owed); *Markakos,* 997 F.3d at 780 ("[A]n FDCPA violation might cause harm if it … otherwise alters a plaintiff's response to a debt."). Selene's misrepresentations gave rise to injuries separate and distinct from Plaintiffs' duty to pay Selene.

### C.  Plaintiffs' Emotional Harms are Sufficient to Confer Article III Standing.

Selene next argues Plaintiffs' emotional harms are insufficient to confer Article III standing. (DE 75 at 10). Yet, "[t]he Eleventh Circuit 'ha[s] not yet decided in a published opinion whether emotional distress alone is a sufficiently concrete injury for standing purposes.'" *Luce v. LVNV Funding LLC*, 2023 WL 1472582, at *4 (S.D. Fla. Jan. 18, 2023) (quoting *Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc*., 2022 WL 4091738, at *4 (11th Cir. Sept. 7, 2022)). However, numerous cases in this circuit have held that emotional damages are sufficient to confer standing for Article III purposes. *See Mraz v. I.C. Sys., Inc*., 2020 WL 7125629, at *2 (M.D.Fla. Dec. 4, 2020) (plaintiff had Article III standing where debt collection letter caused plaintiff to become "extremely offended and agitated" and to worry over losing licensure for his job "which had strict reporting requirements for defaulted debts"); *Rivas*, 842 F.App'x at 486 ("Rivas's injury here was tangible and his reliance on the information on Credit Management's website had damaging consequences, namely loss of sleep and extreme sleep … [t]hese injuries are sufficiently tangible–and therefore concrete–to confer Article III standing."). Courts around the country have come to the same conclusion. *See Mayfield v. LTD Fin. Servs., L.P*., 2021 WL 4481089 (S.D.Tex. Sept. 30, 2021) (plaintiff had Article III standing where debt collector's letters caused plaintiff to suffer "emotional distress"); *Petrillo v. Pinnacle Servs., Inc*., 2024 WL 95855 (D. Nev. Jan. 9, 2024) (same). Plaintiffs testified to significant emotional injury arising out of Selene's FDCPA and FCCPA violations giving rise to standing. *See* (DE 15, ¶¶ 40, 47, 54; R. Martin Tr. 62:16-20; K. Martin Tr. 44:3-48:25; Cruz Tr. 73:2-7, 74:3-17; 78:3-79:11).

FDCPA cases where emotional distress did not give rise to Article III standing generally involve findings that additional details were required to make the emotional distress claim seem plausible. For example, in *Luce,* 2023 WL 1472582, the plaintiff claimed emotional distress from the failure to remove a dispute notation on a credit report, but provided no additional details to explain why the dispute notation caused such distress. Similarly, the plaintiff in *Preisler v. Eastpoint Recovery Grp.*, 2021 WL 2110794 (S.D. Fla. May 25, 2021) claimed that the word

"enforce" made the document "'threatening and confusing' to him" but did not allege that he otherwise acted in reliance upon the letter. *Id.* at *3.

Here, Plaintiffs plausibly testified that the possibility of **losing their homes** based upon the false timeline outlined in the Final Letter caused considerable stress. This case is not about a particular word or a particular notation; the underline entire purpose of the Final Letter is to induce borrowers to rely upon the deadlines and act in accordance with the false severity of the situation. Plaintiffs have demonstrated Selene's Final Letters were the source of their emotional injuries. (K. Martin Tr. 44:3-48:25; R. Martin Tr. 62:16-20; Cruz Tr. 71:13-19; 74:12-17). Selene's argument to the contrary is a red herring; simply because Plaintiffs had additional stressors in their lives at the time they received Selene's Final Letter, does not mean that Selene's Final Letters could not have been the source of their harm. Selene's assertions are unfounded because sending a letter stating that a borrower is at the edge of the 'foreclosure cliff' would be independently stressful, separate and apart from any other stressors.

Selene also cites *Cooper v. Atl. Credit & Fin. Inc*, 822 F.App'x 951, 955 (11th Cir. 2020) for the proposition that confusion alone cannot give rise to standing under the FDCPA. But Plaintiffs did not testify to simple confusion. (R. Martin Tr. 62:16-20; K. Martin Tr. 44:3-48:25; Cruz Tr. 73:2-7, 74:3-17; 124:08-125:19). The Final Letters are not confusing; the deadline and potential consequences are clear. The Final Letters convey false information designed to induce activity by the borrower in reliance upon the deadlines conveyed therein.

Selene also cites *Trichell* for the erroneous assertion that statutory damages under the FDCPA and FCCPA are reliant on actual damages. (DE 75 at 11). *Trichell* relies on § 1692e(k)(a)(2)(A) of the FDCPA, which provides for actual damages and "such additional damages as the court may allow," subject to statutory caps. *Trichell,* 964 F.3d at 1000. However, this FDCPA section provides only for individual, not class damages. Section 1692e(k)(a)(2)(B) goes further, stating that class members may be awarded "in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery …" The court in *Trichell* relied on *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1245-46 (11th Cir. 2016) to interpret the damages provision of the Real Estate Settlement Procedures Act ("RESPA"), not the FDCPA or FCCPA. In *Renfroe*, the court included a footnote of *dicta* stating that "the use of 'additional' seems to indicate that a plaintiff cannot recover pattern-

or-practice damages in the absence of actual damages." *Id.* at 1247 n.4.[4] This singular footnote on RESPA damages has no bearing on actual and statutory damages under the FDCPA or FCCPA.

Selene simply ignores the numerous cases in this circuit awarding statutory damages without any actual damages. *See Johnson v. Critical Resol. Mediation LLC*, 2017 WL 2590007, at *4 (M.D.Fla. Apr. 24, 2017), *report and recommendation adopted*, 2017 WL 2578705 (M.D.Fla. June 14, 2017) ("The FDCPA allows recovery of actual damages, statutory damages (capped at $1,000) regardless of provable actual damages, reasonable attorney fees, and costs"); *Montgomery v. Fla. First Fin. Grp., Inc.*, 2008 WL 2540374, at *9-10 (M.D.Fla. Aug. 12, 2008) (awarding statutory damages under the FDCPA but declining to award actual damages); *Titus v. Com. Recovery Sys., Inc.*, 2014 WL 55016, at *3 (M.D. Fla. Jan. 7, 2014) (awarding statutory damages under the FDCPA and the FCCPA where no actual damages were found). Thus, statutory damages under the FDCPA and FCCPA are appropriate regardless of a showing of actual damages.

### D.   The Martins Have Article III Standing under the FDCPA and FCCPA.

Finally, Selene attacks the individual harms suffered by Plaintiffs. Selene argues the Martins' only other alleged harm was the considerable time Ms. Martin spent on the phone with Selene, which it claims is not enough to confer standing. (DE 75 at 12). But again, standing is a low bar; wasted time is plainly enough as it shows reliance and a negative real-world consequence stemming from the reliance. *Drake v. FirstKey Homes, LLC*, 439 F. Supp. 3d 1313, 1322 (N.D. Ga. 2020) (May, J.) (plaintiff alleged a concrete injury of wasted time by alleging she received and listened to a prerecorded voicemail lasting more than thirty seconds). Ms. Martin called Selene in reliance on its misrepresentations. (K. Martin Tr. 44:24-45:6). Simply because Ms. Martin called her prior loan servicer, Shellpoint, upon receipt of prior default notices (K. Martin Tr. 28:2-7; 23:20-24:1), does not mean that the time she spent calling Selene is not a concrete harm.[5] *See Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (finding concrete injury based on the fact that the plaintiff's fax machine was unavailable

---

[4] The *Renfroe* court acknowledged that the Eleventh Circuit "has not addressed in a published opinion whether RESPA pattern-or-practice damages are available in the absence of actual damages, and our unpublished opinions have used conflicting language. This question is not now before us …" 822 F.3d at 1247 n.4.

[5] *Spokeo* and *Ramirez* both involved plaintiffs who were unaware that they had been harmed in any way. Here, contrarily, Plaintiffs and class members were required to take affirmative steps to save their homes directly because of Selene's misrepresentations.

for the minute that it took to receive and process a fax message). Moreover, the Martins testified to emotional distress and other harms sufficient to convey Article III standing. (K. Martin Tr. 44:3-48:25; R. Martin Tr. 62:16-20).

>    **E.   Cruz Has Article III Standing under the FDCPA and FCCPA.**

Selene next argues Cruz is unable to prove she withdrew retirement funds in reliance on the Final Letters, and thus does not have standing to sue. (DE 75 at 12). First, as established *supra*, Cruz established significant emotional damages giving rise to standing under Article III Cruz's withdrawals only further demonstrate her reliance on Selene's Final Letters and resulting harm.

Second, Cruz withdrew funds twice from retirement savings in response to Selene's Final Letters. Cruz Tr. 78:16-79:8. Selene makes several bald assumptions – that Cruz could not have withdrawn money in reliance on the Final Letters because she made  payments after the cure date and paid only a partial amount. (DE 75 at 12-13). This is not the standard for determining Article III standing because it only matters that Cruz withdrew money from her retirement account or even contemplated withdrawing money in response to the Final Letters. Thus, Cruz's actions are sufficient to convey standing. *Markakos,* 997 F.3d at 780 ("[A]n FDCPA violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit or otherwise alters a plaintiff's response to a debt.").

## II.   PLAINTIFFS ESTABLISHED TYPICALITY AND ADEQUACY UNDER RULE 23(A).

Selene next contends Plaintiffs do not have standing and thus do not satisfy the typicality requirement of Rule 23(a). (DE 75 at 13). Not so. Plaintiffs have standing to sue under the FDCPA and FCCPA, as discussed at length *supra*. Even assuming *arguendo* that Selene's FDCPA and FCCPA violations did not confer standing, Plaintiffs also have standing under CAFA, as Selene conceded in its Notice of Removal. *See* (DE 1 at 8 ("this Court has original jurisdiction over the Instant Action pursuant to CAFA")).

>    **A.  Selene's Pre-Suit Notice Provision Supports Class Certification.**

As set forth below, the notice and cure provision in Plaintiffs' Mortgages is irrelevant for claims asserted against Selene. But even if relevant, it supports class certification because Plaintiffs' Mortgages are uniform instruments with materially identical terms as those of all other class members. *See* (DE 39-3, Florida Single Family-Fannie Mae/Freddie Mac Uniform Instrument). Because Plaintiffs do not dispute that they or Class Members sent pre-suit notices,

this is simply another common factual and legal issue supporting class certification. Selene's arguments are both substantively flawed and merits-based, making it appropriate for resolution at summary judgment. *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.")

### i. *Selene, as a loan servicer, is not entitled to pre-suit notice.*

Even if Selene's merits-based arguments could be addressed at class certification, which they cannot, Selene cannot enforce the notice and cure provision. Selene is merely the servicer of Plaintiffs' Mortgages—it was not a party to the contracts nor a party through assignment or power of attorney executed by the holder of Plaintiffs' Mortgages, U.S. Bank Trust National Association ("U.S. Bank"). The plain-language of Plaintiffs' Mortgages <u>entirely detaches</u> the rights and obligations of the Lender from any "Loan Servicer" like Selene. For example:

- "Borrower" is defined as the individual mortgager. (DE 39-3 (the "Mortgages") at p. 1, ¶ (B)).
- "Lender" is exclusively refers to the entity that originated the loan. (DE 39-1 and DE 39-3 at p. 1, ¶ (C)).
- "Loan Servicer" is exclusively defined as the entity "that collects Periodic Payments due under the Note and [] Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law." (DE 39-3 at p. 13, ¶ (20)).

The Mortgages' plain language clearly separates the servicing responsibilities from the ownership and assignment of the Security Instrument and Note. For example, the Mortgages explicitly state that all or part of the original Lender's interest in the Note may be sold "together with [the] Security Instrument," resulting in a new holder of the Note and only *possibly* resulting in a new Loan Servicer; and borrowers may experience "changes of the Loan Servicer unrelated to the sale" of their Note. (*Id.*, ¶ 20). If, following such a sale, the mortgage "is serviced by a Loan Servicer other than the purchaser of the Note, the [servicing obligations] are <u>not</u> assumed by the Note purchaser." (*Id.*). Therefore, the Mortgages' pre-suit notice provision—which refers <u>only</u> to each Mortgage's "Lender" and "Borrower," and never to any other party—does not apply to Selene as the "Loan Servicer" and does not bar Plaintiffs' claims. (*Id.*, ¶ 22).

Recognizing this fact, Selene misrepresents the language in the Mortgages, asserting "Plaintiffs' mortgages require that they provide pre-suit notice and an opportunity to cure before filling a lawsuit that arises from [Selene's] actions pursuant to this Security Instrument." (Martin Dep. Ex. 4 ¶ 20; Cruz Dep. Ex. 12 ¶ 20)." (DE 75 at 19). Neither Plaintiffs' Mortgage mandates a notice and cure requirement to Selene—the contractually defined Loan Servicer—for violating the FDCPA or the FCCPA, and Selene's statement is a misrepresentation of the mortgage instrument. Cruz Dep. Ex. 12 ¶ 20. The Mortgages only mention that the **<u>Borrower</u>** or <u>**Lender**</u> must provide notice to the other party for actions arising out of the security instrument. (DE 75-3 at 146 ¶ 20). This is a stark misrepresentation.

Indeed, courts interpreting identical language in Mortgages have found loan servicers like Selene are not entitled to pre-suit notice. *See, e.g., Schmidt v. Wells Fargo Home Mortg.*, 2011 WL 1597658, at *3 (E.D. Va. Apr. 26, 2011), *aff'd*, 482 F. App'x 868 (4th Cir. 2012) ("The notice-and-cure provisions in the deeds of trust bind the borrower and the lender, not the borrower and the loan servicer."); *Johnson v. Specialized Loan Servicing, LLC*, 2017 WL 4877450, at *2 (M.D. Fla. Oct. 24, 2017) (finding "the 'notice-and-cure' provision applies only to disputes between Plaintiff and her lender concerning acts relating to the mortgage contract. The clause imposes no such obligations regarding disputes Plaintiff has with SLS, which services the loan secured by the mortgage."); *Giotta v. Ocwen Fin. Corp.*, 2015 WL 8527520, at *5-6 (N.D.Cal. Dec. 11, 2015) (finding where "[n]othing on the fact of the complaint or in the deed of trust itself suggests that the lender has transferred property rights to [the servicer] … under the plain language of the contract it does not appear that the notice-and-cure provision in paragraph 20 may be extended to loan servicers via paragraph 13"); *Patrick v. Teays Valley Trustees, LLC*, 2012 WL 5993163, at *9 (N.D.W.Va. Nov. 30, 2012) ("[T]he Notice-and-Cure Provision in the Plaintiffs' Deed of Trust expressly bind the borrower and lender – not the borrower and a loan service provider or substitute trustee.").

Moreover, the recorded assignments and limited power of attorney mentioned by Selene do not entitle it to invoke the pre-suit notice provision. The relevant assignments of Plaintiffs' Mortgages states that U.S. Bank <u>alone</u> is the assignee of each Mortgage. (*See* DE 39-2 p. 2; DE 39-4 p. 9). Selene is merely an intermediary for U.S. Bank; it has never had any interest in or entitlement to the benefits of the Mortgages via the assignment; it only has the responsibility to handle the communications and payments intrinsic to servicing a mortgage loan. The limited

power of attorney merely grants Selene authority "to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks" outlined in just <u>twelve enumerated responsibilities</u>, none of which expressly or impliedly include any term granting Selene the power to enforce the pre-suit notice provision.

Finally, even if such power to enforce the notice provisions was intended, the limited power of attorney was not executed until November 2, 2023—more than one year after the Martins received their Final Letter, and nearly six months after Cruz received her Final Letter. (DE 10; DE 10-1; and DE 10-2). Thus, neither the recorded assignments nor the limited power of attorney provide support for Selene's assertion that the pre-suit notice provision is applicable.

### ii. *The Notice and Cure Provision is also Inapplicable Because Plaintiffs' Claims Do Not Arise Under the Mortgages.*

Moreover, even if Selene could establish that the pre-suit notice provision is applicable, Plaintiffs' claims simply do not arise under their Mortgages. Selene cites to several cases to argue Plaintiffs' individual claims are barred by the notice and cure provision. (DE 75, p. 13-14). These cases are extremely light on analysis but nonetheless distinguishable.[6] For example, in *Kurzban v. Specialized Loan Servicing, LLC*, 2018 WL 1570370, at *2 (S.D. Fla. Mar. 30, 2018), the Court found that the notice-and-cure provision applied to an action against a servicer where the servicer was "not a party to the Mortgage." *Id.* at 3. Here, however, Selene is <u>specifically</u> identified and defined in the Mortgages as a "Loan Servicer", which is wholly separate from the party authorized to enforce the notice-and-cure provision—the Lender. *See supra*, p. 9. The other case cited by Selene, *Sotomayor v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 3163074, at *3 (S.D. Fla. Feb. 5, 2016), did not consider the contractual authorization issue analyzed in Section i and cursorily addressed in *Kurzban*, but instead solely analyzed whether plaintiff's claims "arise" under the mortgage loan. *Id.* In *Sotomayor*, the plaintiffs challenged the property inspection fees that were

---

[6] Selene curiously cites *Franze v. Equitable Assurance*, 296 F.3d 1250, 1254 (11th Cir. 2002) for the proposition that named plaintiffs whose own claims were barred by the statute of limitations could not represent the class. Yet, *Franze* has nothing to do with a pre-suit notice and cure requirement. Instead, it deals with statute of limitations issues, but there has been no allegation that Plaintiffs' claims are barred by the statute of limitations. Regardless, if the defense applies on the statute of limitations, its application is subject to common proof. *Camafel Bldg. Inspections, Inc. v. Bellsouth Advert. & Publ'g Corp.*, 2008 WL 649778, at *9 (N.D. Ga. Mar. 7, 2008) is similarly irrelevant because it dealt with whether the voluntary payment doctrine applied to bar claims. There is no mention of a notice and cure provision in *Camafel Bldg. Inspections, Inc.*

charged, assessed, and collected pursuant to the mortgage. *Id.* at *1. The court found that because the mortgage provided the specific basis for both conducting property inspection and charging fees, the claims "relate[d] to" the mortgage. *Id.* at *2. In doing so, however, the *Sotomayor* court noted that courts in the Southern District of Florida reject the notice-and-cure requirement when the claims allege <u>violations of duties owed by other statutory provisions rather than the mortgage</u>. *Id.* (citing to *St. Breux v. U.S. Bank, Nat. Ass'n,* 919 F. Supp. 2d 1371, 1374 (S.D. Fla. 2013) (notice and cure provision did not apply to the plaintiff's TILA claim because the violation related to a duty owed by reason of TILA, not the mortgage). That is exactly what is happening here.

Plaintiffs are not challenging Selene's authorization to service the debt or assess any fees pursuant to a contractual provision of the Mortgages, nor are they asserting Selene's debt collection activities giving rise to Plaintiffs' claims derive from an incorrect or unlawful interpretation of any contract provision within the Mortgages. Instead, Plaintiffs claim Selene's false representations in its Final Letters violate the FDCPA and FCCPA. Plaintiffs' claims arise solely from Selene's debt collection activities, all of which implicate an independent statutory duty outside the duties owed within the mortgage itself and are therefore not subject to any notice and cure provision in the underlying mortgage contracts.

*Belcher v. Ocwen Loan Servicing, LLC*, 2016 WL 7243100 (M.D. Fla. Dec. 15, 2016) is also instructive on this issue. In *Belcher*, the defendant argued the plaintiff failed to comply with the notice and cure provision of the underlying mortgage contract. *Id.* at *4. The court held that "because the causes of action arise directly from alleged deceptive business practices that are prohibited by the FDCPA and FCCPA, rather than the mortgage itself . . . the notice-and-cure provision is inapplicable. Belcher has a statutory right of action that is independent from the requirement under the mortgage agreement to give pre-suit notice." *Id.* (internal citations and quotations omitted). The majority of courts similarly concluded that the notice-and-cure provision are inapplicable when the claims exist independent of any terms in a mortgage.[7] *See e.g., Foster*

---

[7] *Harrington v. Fay Servicing, LLC* surveyed a variety of courts holding notice-and-cure provisions are inapplicable "where purely statutory rights are being enforced." 2019 WL 4750140 at *5 (N.D.Ill. Sep. 30, 2019). When claims "could be characterized as breach of a contractual provision in the mortgage agreements" themselves, the notice-and-cure provision may be implicated. But they are inapposite when the claims involve state statutes rather than contracts, deceptive business practices, or attempts by a party to contract around consumer protection statutes. *Id. Harrington* also noted the absurdity of enforcement in situations, as here, where the unlawful conduct is unrelated to a breach of a mortgage provision. Selene's deceptive conduct arises not from the

*v. Green Tree Servicing, Inc.*, 2017 WL 5151354, at *3 (M.D. Fla. Nov. 3, 2017) (denying summary judgment upon finding plaintiff's claims "arise from alleged violations of consumer protection statutes," the FCCPA and FDCPA); *Garay v. Select Portfolio Servicing Inc.*, 2020 WL 10823745, at *3 (S.D. Fla. Aug. 7, 2020), *report and recommendation adopted,* 2020 WL 10823759 (S.D. Fla. Aug. 31, 2020) (holding pre-suit notice and cure provisions in a mortgage do not apply to FCCPA claims when the servicer charged a "processing fee"); *St. Breux,* 919 F. Supp. 2d at 1374 (notice and cure provision did not apply to a TILA claim).

In arguing that compliance with the notice-and-cure provision is a condition precedent to certifying Plaintiffs' FDCPA and FCCPA claim, Selene truncates the provision by isolating the broad language "arises from the other party's actions pursuant to this Security Instrument" and asserts that these allegations required Plaintiffs to provide Selene notice prior to commencement because Selene's actions in attempting to collect the debt arose from and were pursuant to the Mortgage. However, the provision as a whole does not align with Selene's parsing. In *Mills v. Select Portfolio Servicing, Inc.*, 2018 WL 5113001, at *5 (S.D. Fla. Oct. 19, 2018), the court held the notice and cure provision "is circumscribed to breaches of provisions, and duties owed, within the mortgage itself, and the defendant did not identify any provision of the mortgage that was allegedly breached giving rise to plaintiff's claims", not to actions arising out of the FCCPA or FDCPA. *See further*, *Colon v. Nationstar Mortg. LLC*, 2015 WL 7422598 at *2 (S.D.Fla. Nov. 17, 2015) (holding that, where the defendant never "highlighted any provision in the Mortgage that relates to the use of an automatic dialing system in collecting the underlying debt," the plaintiff's claims under TCPA "exclusively relate to a violation of the TCPA and not a concomitant breach of the Mortgage, which forecloses any compliance with the notice and cure provision[;]" thus, "even if the [provision] relates to the mortgage," the plaintiff "was not contractually obligated to comply with such provision before initiating his TCPA claim"); *Lopez v. Nationstar Mortg. LLC*, 2021 WL 4990958 at *4 (S.D.Fla. Jan. 19, 2021) ("The Court agrees with Plaintiff's primary argument—that Defendant was not entitled to notice" because "the pre-suit notice provision applies specifically to claims arising out of 'the other party's actions pursuant to' the Mortgage,

---

mortgage, but from Selene's internal business practices, the Fannie Mae Servicing Guidelines, and the Code of Federal Regulations—all of which restrict Selene from accelerating and foreclosing as threatened. Put simply, had Plaintiff reviewed her mortgage with a fine-tooth comb she would have been unable to notify and provide Selene with an opportunity to cure its unlawful conduct.

or a breach of the Mortgage, [and] Plaintiff does not allege a breach of any provision of the Mortgage"). Plaintiffs' FDCPA and FCCPA claims are wholly independent from those in the Mortgages because Selene's misrepresentations in the Final Letters are simply not within the scope of the Mortgages or the pre-suit notice provisions.

### B. Mr. Martin is an adequate class representative.

Selene next argues Mr. Martin is not an adequate class representative because he could not recall reading Selene's Final Letter. (DE 75 at 14). This is simply not the FDCPA standard. For an FDCPA claim, "the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the 'least sophisticated consumer' would have been misled." *Swanson v. Mid Am, Inc*., 186 F.R.D. 665, 668 (M.D.Fla. 1999) (citing *Jeter v. Credit Bureau, Inc*., 760 F.2d 1168, 1175 (11th Cir. 1985)). It matters only Selene was engaged in the uniform practice of sending out misleading Final Letters threatening acceleration and/or foreclosure to establish liability under the FDCPA. (DE 70-1 (160:14-21; 161:16-24)). Under the FDCPA, an individual authorized to sue does *not* have to suffer any actual harm from the debt collector's failure to abide by the strictures of the Act. *See Harper v. Better Business Services, Inc.*, 961 F.2d 1561, 1563 (11th Cir. 1992) (allowing statutory damages where no proof of actual damages shown). Further, Mr. Martin stated he reads all of his mail, and he read Selene's Final Letter in or after August 2022. (R. Martin Tr. (14:16-18; 48:5-10)

### C. Ms. Cruz is an adequate class representative

Cruz is not, as Selene argues, subject to a unique defense, because her loan was taken for "personal, family, or household purposes" under the FDCPA and FCCPA. *See* 15 U.S.C. § 1692a(5); Fla. Stat. Ann. § 559.55(6). Selene provides no support for this other than the fact that Cruz did not move into her property until eleven months purchasing it. (DE 75, p. 14). Selene does not allege for what other purpose Cruz acquired her loan. Simply because Cruz did not move into the property for a few months following has no bearing on whether her loan was secured for "personal, family, or household purposes." Regardless, "[a]ny disputes regarding whether a particular class member's debt is consumer or commercial can be remedied through proper drafting of the claim form, and at the damages phase of this case." *Collins v. Erin Cap. Mgmt., LLC*, 290 F.R.D. 689, 700 (S.D. Fla. 2013) (internal citations omitted).

### III.    PLAINTIFFS SATISFY THE ELEMENTS OF RULE 23(b)(3).

### A. Common Questions Predominate Over Individualized Questions.

It is not necessary for "each element of plaintiff[s'] claims [to be] susceptible to classwide proof," but only for "common questions [to] predominate over any questions affecting only individual class members." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) (cleaned up). This is a prototype class action with obvious common issues predominating over any alleged individual issues. Selene's Final Letters were materially identical and sent pursuant to common processes and policies. (DE 70-1 (52:14-53:07; 76:25-77:3; 87:14-88:04; 89:01-12; 89:24-90:07)). Selene's collection policies are identical and were applied consistently to all class members. (*Id*. (98:25-99:12)). Selene intended for the false and misleading representations to be relied upon by consumers and were, in fact, relied upon by the Plaintiffs and Class Members. (DE 15, ¶¶ 188, 222-224). The common questions of law and fact hinge on identical facts and law central to the resolution of all claims of Plaintiffs and all Class Members.

Contrary to Selene's arguments, Plaintiffs demonstrated that liability and damages in this instant case are susceptible to class wide resolution. Plaintiffs' legal theory relies on objective standards rather than individualized analysis such as causation or reliance. The relevant consumer protection statutes protect consumers from unlawful threats and misrepresentations contained within the Final Letters and prescribe statutory penalties such as threats and misrepresentations. The same evidence will be used to establish Selene's liability for both the Florida State Law Class and the FDCPA sub-Class.

    *i.*    **Standing is a Class-wide Question.**

Selene argues that whether class members have standing is an individualized question because each putative class member must individually demonstrate he or she has Article III standing. (DE 75, p. 15). First, as discussed *supra*, the named Plaintiffs have standing, giving rise to standing for the remainder of the class. Individual class members' standing need not be determined at the certification stage. *See TransUnion*, 141 S.Ct. at 2207-08, 2208 n.4 ("We do not here address the distinct question whether every class member must demonstrate standing before a court certifies a class.") Moreover, the Eleventh Circuit has held that only "at least one named class representative [have] Article III standing for each class subclaim." *Weiss v. General Motors LLC*, 418 F.Supp.3d 1173, 1179 (S.D.Fla. 2019) (citing *Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)); *Collins v. Quincy Bioscience, LLC*, 2020 WL 3268340, at *15 (S.D.Fla. Mar. 19, 2020) (named plaintiff had standing to represent other class members who purchased other product varieties containing the same active ingredient).

Second, as articulated above, each Class Member has standing because Selene intends for the false representations in the Final Letters to be read and relied upon by consumers in making their financial decisions. (DE 15, ¶ 188). When class member standing must be determined, which again is not at certification, a jury could find that all borrowers would read Selene's letters, rely on its contents and act accordingly. Further, typically for FDCPA and FCCPA purposes, "the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the "least sophisticated consumer" would have been misled." *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D.Fla. 1999) (citing *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985)). Courts in this circuit and across the country have certified FDCPA classes where misleading debt collection letters were sent to the class. *See Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 698-99 (M.D.Fla. 2000) (FDCPA claims certified where defendant sent collection letters to class members: (1) failing to state the amount of the debt; (2) contradicting and overshadowing the validation notice; (3) falsely representing a remedy available to the creditor, and (4) using false representation or deceptive means in an attempt to collect the debt.); *Rivera v. Amalgamated Debt Collection*, 462 F.Supp.2d 1223 (S.D.Fla. 2006) (class certification granted against debt collector under FDCPA and other state statutes relating to two standard form letters that debt collector sent to consumer plaintiff); *West v. Costen*, 558 F.Supp. 564, 572-573 (W.D.Va. 1983) (class certified regarding failure to provide required "validation" notices; *Can v. TransUnion Corp.*, 1995 WL 20865 (E.D.Pa. 1995) (FDCPA class certified regarding defendant's transmission of misleading collection notices to consumers); *Colbert v. TransUnion Corp.*, 1995 WL 20821 (E.D.Pa. 1995) (same); *Brewer v. Friedman*, 152 F.R.D. 142 (N.D.Ill. 1993) (FDCPA class certified regarding transmission of misleading collection demands). Because Selene sent the same misleading Final Letters in violation of the FDCPA and FCCPA (DE 70-1 (52:14-53:07; 76:25-77:3; 87:14-88:04; 89:01-12; 89:24-90:07)), a court need only determine whether a least-sophisticated consumer would be misled, not whether each individual putative class member was misled. *See Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir.1996) (plaintiff need not present evidence that consumers were actually misled by the notice, but merely that the notice itself was misleading and contradictory).

### ii.   *Class Damages are Susceptible to Class-wide Proof.*

Selene next argues that the calculation of damages calls for an individualized inquiry. (DE 75, pp. 16-17). This is not true. As the Eleventh Circuit explained, "the presence of individualized

damages issues does not prevent a finding that the common issues in the case predominate," and "even if courts must confront some individualized damages issues, common issues predominate if liability can be determined on a class-wide basis." *Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 Fed.App'x 930, 936 (11th Cir. 2016). For example, the fact that the amount of damages to be awarded might vary with each individual class member "is not enough to defeat class certification." *Moreno-Espinosa v. J & J Ag. Prods.*, 247 F.R.D. 686, 689 (S.D.Fla. 2007).

Further, Selene is incorrect, as discussed *supra*, that actual damages are required for the award of statutory damages. *See Johnson*, 2017 WL 2590007, at *4 ("The FDCPA allows recovery of actual damages, statutory damages (capped at $1,000) regardless of provable actual damages, reasonable attorney fees, and costs"); *Montgomery*, 2008 WL 2540374, at *9-10 (awarding statutory damages under the FDCPA but declining to award actual damages); *Titus*, 2014 WL 55016, at *3 (awarding statutory damages under the FDCPA and the FCCPA where no actual damages were found). Here, all class members are entitled to statutory damages resulting from Selene's FDCPA and FCCPA violations, which are provided pursuant to 15 U.S.C. §§ 1692(a) and (b); Fla. Stat. § 559.77(2). Plaintiffs demonstrated that liability and damages in this instant case are susceptible to class wide resolution because the Class has damages that can be decided formulaically without any individualized inquiry, as those who received multiple letters will simply receive the same statutory damages. *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999) ("As Plaintiff has shown that approximately 1200 letters of the type received by Plaintiff were mailed between August 1996 and August 1997, Plaintiff has satisfied the requirement of commonality.") To the extent any putative Class Member does not wish to receive statutory damages, they may simply opt out. Selene cannot impose an actual damages requirement that does not exist simply to foreclose on a possible Class-wide resolution.

### iii.    *The Purpose of the Loans is a Class-wide Question.*

Selene next argues that determining whether putative class members' loans were for personal, family, or household purposes is an individualized inquiry that defeats predominance. (DE 75, p. 17). All FDCPA claims require consumer debt and Courts have continuously certified similar classes, finding that they are specifically well-organized for class-actions. *See, e.g., Agan* at 692; *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 700 (M.D.Fla. 2000); *Swanson,* 186 F.R.D. at 668; *Stewart v. Slaughter*, 165 F.R.D. 696, 700 (M.D.Ga.1996). *Collins v. Erin Capital Mgmt., LLC*, 290 F.R.D. 689, 700 (S.D. Fla. 2013) ("[A]ny disputes regarding whether a particular

class member's debt is consumer or commercial can be remedied through proper drafting of the claim form, and at the damages phase of this case.") (internal citations omitted).

"In cases seeking relief for conduct involving form collection letters alleged to violate the FDCPA[,] certification of a class action is not unusual." *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp*., 2008 WL 3850657 at *2 (M.D.Fla. Aug. 14, 2008t). Whether the alleged standard actions violate "the FDCPA is a legal question common to all members of the putative class and requires proof of the same material facts." *Roundtree v. Bush Ross, P.A.,* 304 F.R.D. 644, 659 (M.D. Fla. Feb. 18, 2015); *see also Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 515 (S.D. Fla. 2013). "[T]he need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action[ ]. If that need alone precluded certification, there would be no class actions under the FDCPA." *Hicks v. Client Servs., Inc.,* 2008 WL 5479111, at *6 (S.D. Fla. Dec. 11, 2008) (citation omitted). As *Hicks* concluded, "there are means for making such determinations" and "proper drafting of the claim form may help exclude non-consumer debts." *Id.* Moreover, questions regarding Selene's status as a debt collector and alleged violations of the FDCPA and FCCPA do not require individual determinations since it testified it treated everyone in a common way. (DE 70-1 (52:14-53:07; 76:25-77:3; 87:14-88:04; 89:01-12; 89:24-90:07)). Selene also provided no evidence it sent Final Letters to individuals whose loans were for purposes other than personal, family, or household. To the extent Selene knows which recipients of its Final Letters did not withdraw loans for this purpose – which could be identified through the applications on the consumers' loans – these individuals could be excluded.

In *Muzuco*, Judge Scola of the Southern District of Florida considered a motion to certify a class of all persons from whom the defendant, Re$ubmitIt, collected an insufficient funds fee during the applicable statutes of limitations, and a subclass of all persons from whom Re$ubmitIt collected an insufficient fund fee whose returned checks were deposited in an account with BankAtlantic within the applicable statutes of limitations. 297 F.R.D. at 511. The *Muzuco* plaintiff sought to certify classes for several common law claims. In certifying the proposed unjust enrichment class, Judge Scola noted, " Defendants' business operations are the same to all members of the putative class. The Plaintiff's claim is that the manner in which Defendants collected the [Insufficient Funds] Fees is improper. Predominance is satisfied here because the [Insufficient Funds] Fees were collected in the same manner for all class members." *Muzuco*, 297 F.R.D. at 521. Because the claims in this case challenge Selene's uniform policies regarding the

representations in its Final Letters, common issues will necessarily predominate and class certification on Plaintiffs' claims is warranted. *See Jones v. Advanced Bureau of Collections LLP*, 317 F.R.D. 284, 291 (M.D. Ga. 2016) (commonality satisfied in FDCPA class action where class members were subjected to a common course of conduct by the defendant); *Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 615-16 (S.D. Fla. 2009) (same).

     **iv.**    ***Plaintiffs Are Not Required to Provide Pre-Suit Notice.***

As discussed in detail *supra*, Plaintiffs and class members are not required to plead compliance with the purported "notice-and-cure" provision because 1) As the loan servicer, Selene is not entitled to notice; and 2) the claims do not arise under the mortgage contract where they arise from an independent statutory violation of the FDCPA and FCCPA. See *Johnson*, 2017 WL 4877450, at *2. Moreover, the notice-and-cure provision is inapplicable because absent class members are not parties "joined" to a class action. Indeed, a requirement for maintaining a class action is that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1) (emphasis added). Because no absent class member is being "joined" as an additional class representative, none is required to give pre-suit notice.

Selene again relies on inapplicable cases—this time the cases are not FDCPA/FCCPA cases. Instead, Selene relies upon product liability cases where the uniform commercial code required pre-suit notice. For instance, in *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 625 (S.D. Fla. 2008), the class was pursuing a claim for implied warranty regarding a defective dental implant product. Pursuant to the breach of implied and express warranty claim, each class member was required to show reliance and notice to the defendant dental product manufacturer based upon the uniform commercial code. Therefore, *Cohen* is irrelevant. Similarly, *Sanchez-Knutson v. Ford Motor Co.*, 2016 WL 11783302, at *4 (S.D. Fla. July 25, 2016), the court denied class certification based upon the pre-suit notice requirements regarding a defective product warranty under Florida's Uniform Commercial Code which specifically had a notice and cure requirements. *Oginski v. Paragon Properties of Costa Rica, LLC*, 282 F.R.D. 672, 678 (S.D. Fla. 2012) is also irrelevant because it dealt with the purchase of properties in Costa Rica against defunct real estate corporations where there was a notice requirement. These cases just do not apply.

    **B.  A Class Action is Superior.**

Finally, Selene argues individual lawsuits are superior to a class action because the FDCPA and FCCPA contain mechanisms allowing individual plaintiffs to assert actions that are not simply

"low-dollar disputes." (DE 75, p.19). On the contrary, the FDCPA and FCCPA provide specifically for class-wide resolution with the inclusion of special damages provisions for class actions. *See* 15 U.S.C. §§ 1692(a) and (b); Fla. Stat. § 559.77(2); *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983)) ("[S]eparate [FDCPA] actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts.") In fact, Florida courts certified numerous FDCPA and FCCPA class actions. *See Agan,* 222 F.R.D. at 696 (S.D.Fla. 2004); *Fuller*, 197 F.R.D. at 700. Again, this action arises out of Selene's materially identical Final Letters, which were sent pursuant to common processes and policies. (DE 70-1 (52:14-53:07; 76:25-77:3; 87:14-88:04; 89:01-12; 89:24-90:07)). Selene's collection policies are identical and apply consistently to all Class Members. (*Id.* (98:25-99:12)). Selene intended the false and misleading representations in the Final Letters to be relied upon by consumers and were, in fact, relied upon by the Plaintiffs and Class Members. (DE 15, ¶¶ 188, 222-224). The uniform nature of Selene's policies and practices make a class action the obvious superior choice for resolution of this matter.

Further, all other factors of superiority weigh in favor of class treatment. There is no evidence that individual class members have an interest in controlling prosecution of this case or have commenced a previous suit against Selene for sending Final Letters. It is far more desirable to concentrate the litigation as a class action in this case. Given the uniformity of Selene's collection policies applied to all Florida loans, the duplication of effort from individual trials would increase burdens on all parties, create uncertainty for Selene and waste judicial resources. There are no unique difficulties in managing this case as a class action. As such, superiority has been established.

## **CONCLUSION**

Based on the foregoing, Plaintiffs affirmatively satisfy the requirements of Rule 23(a) and 23(b)(3) for the Class; class certification is therefore appropriate, and Plaintiffs respectfully request that the Motion for Class Certification be granted in its entirety.

Respectfully submitted, this the 22nd day of July, 2024.

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**

*s/ Scott C. Harris*
Scott C. Harris
Fla. Bar No. 103905

900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
sharris@milberg.com

Jonathan B. Cohen
Fla. Bar No. 27620
3833 Central Ave.
St. Petersburg, FL 33713
Telephone: (813) 699-4056
jcohen@milberg.com

**MAGINNS HOWARD**

Edward H. Maginnis
Admitted Pro Hac Vice
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Telephone: 919-526-0450
Telephone: 919-882-8763
emaginnis@maginnishoward.com
kgwaltney@maginnishoward.com

*Counsel for Plaintiffs*