UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 2:23-cv-14297-Cannon/McCabe

CLARISSA CRUZ, ROBERT ALLAN
MARTIN, and KATRINA MARTIN,
individually and on behalf of all others
similarly situated,

       Plaintiffs,

v.

SELENE FINANCE, LP
a Texas Corporation,

       Defendant.

_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint ("Motion"), which was referred to the undersigned by United States District Judge Aileen M. Cannon.  (DE 17, DE 78).  For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **DENIED as to Counts 1, 2, 3, 4 and 5, but GRANTED as to Count 6.**

## I.    BACKGROUND

This is a putative class action brought by a group of residential mortgage holders against a mortgage loan servicer.  The Court accepts the following facts as true, taken from the Second Amended Class Action Complaint ("SAC").  (DE 15).  The Defendant, Selene Finance, LP, operates a mortgage servicing company that services residential mortgages in Florida.  (DE 15 ¶¶ 10, 13).  As a mortgage servicer, Defendant contracts with lenders to, among other things, collect payments owed by homeowners and send delinquency notices to homeowners in default.  (DE 15 ¶¶ 13-15, 43).

At some point in the past, Defendant acquired the servicing rights to Plaintiffs' mortgages. (DE 15 ¶¶ 43, 50).  Also at some point in the past, each of the Plaintiffs defaulted on their respective mortgage obligations. (DE 15 ¶¶ 43-44, 50-51; DE 15-1 at 2; DE 15-2 at 2).  According to Plaintiffs, when a homeowner becomes 45 days delinquent on his or her mortgage, Defendant sends a standard default notice to the homeowner titled "Notice of Default and Intent to Accelerate" (hereafter "Default Notice").  (DE 15 ¶ 15).  The Default Notices contain identical language, apart from calculation of the individual homeowner's payment amount owed and due date.  (DE 15-1 at 2, DE 15-2 at 2).  The Default Notices set a deadline for the homeowner to cure the default and warn the homeowner of the potential consequences of failure to cure.  (DE 15 ¶¶ 18-19).

According to the SAC, Defendant sent one of its standard Default Notices to each of the Plaintiffs.  (DE 15 ¶¶ 44, 51).  As an example, the Default Notice for Plaintiff Robert Martin provided as follows:

### NOTICE OF DEFAULT *AND INTENT TO ACCELERATE*

Dear Mortgagor(s):

Selene Finance LP ("Selene"), the servicer of your mortgage loan, and in accordance with the Security Instrument and applicable state laws, provides you with formal notice of the following:

The mortgage loan associated with the Security Instrument is in default for failure to pay the amounts that came due on 07/01/2022 and all subsequent payments.

To cure this default, you must pay all amounts due under the terms of your Note and Security Instruments. As of 08/16/2022, your loan is due for 07/01/2022 and the total amount necessary to cure your default is [REDACTED], which consists of the following….

…

> The total amount you must pay to cure the default stated above must be received by 09/20/2022. *Failure to cure default on or before the date specified may result in acceleration of the sums secured by the Security Instrument, sale of property and/or foreclosure by judicial proceeding and sale of the property.*

(DE 15-1 at 2) (emphasis added).

Plaintiffs allege that the standard Default Notice contains false and misleading threats. (DE 15 ¶¶ 4, 24, 25). In particular, the Default Notice claims that failure to pay the cure amount by the cure date may result in acceleration of the loan and foreclosure. (DE 15-1 at 2, DE 15-2 at 2). In truth, Plaintiffs claim, no such consequences would result because (1) federal law prohibits Defendant from beginning foreclosure proceedings until a homeowner's loan is more than 120 days past due, and (2) Defendant's own internal policies and practices provide that Defendant never accelerates a loan until the loan is more than 120 days past due. (DE 15 ¶¶ 22, 24-25).

Plaintiffs allege that Defendant sends these false and misleading Default Notices in order to scare homeowners into making payments. (DE 15 ¶ 34). The Default Notices cause homeowners to believe Defendant will accelerate their loans and begin foreclosure proceedings immediately unless homeowners pay the cure amount by the cure date. (DE 15 ¶¶ 26-28). In truth, Defendant has no intent to accelerate the loan, and Defendant cannot legally begin foreclosure proceedings until the loan is more than 120 days past due. (DE 15 ¶¶ 21, 24).

Based on the above facts, Plaintiffs allege the following six counts:

| | |
|---|---|
| Count 1 | Violation of Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e |
| Count 2 | Violation of FDCPA, 15 U.S.C. § 1692e(5) |
| Count 3 | Violation of FDCPA, 15 U.S.C. § 1692e(10) |
| Count 4 | Violation of FDCPA, 15 U.S.C. § 1692f |
| Count 5 | Violation of Florida Consumer Collection Practices Act ("FCCPA"), |

Fla. Stat. § 559.72

Count 6[1]       Negligent Misrepresentation

(DE 15 ¶¶ 66-229).

## II.     <u>LEGAL STANDARD</u>

By way of this Motion, Defendant seeks dismissal of all six counts pursuant to Fed. R. Civ. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.     <u>DISCUSSION</u>

The Court will address the first three counts together and the remaining counts individually.

### A.     **Counts 1, 2 & 3 – 15 U.S.C. §§ 1692e, 1692e(5) & 1692e(10)**

Counts 1, 2 and 3 allege overlapping counts for violations of three discrete provisions of the FDCPA.  To state a claim under the FDCPA, a plaintiff must allege facts that show "(1) the defendant is a debt collector; (2) the defendant engaged in an act or omission prohibited by the

---

[1] The SAC erroneously included two Count 5s.  The Court has corrected the numbering for purposes of this Report & Recommendation.

FDCPA; and (3) the challenged conduct is related to debt collection." *Owens-Benniefield v. BSI Fin. Services*, 806 F. App'x 853, 856 (11th Cir. 2020) (cleaned up).   Here, the SAC alleges violations of § 1692e generally (Count 1), § 1692e(5) (Count 2), and § 1692e(1) (Count 3).   These sections provide as follows:

> False or misleading representations
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ...
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> ...
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

For purposes of the FDCPA, courts must evaluate debt collector communications "from the perspective of the least sophisticated consumer." *See e.g.*, *Prescott v. Seterus, Inc.*, 635 F..App'x 640, 644 (11th Cir. 2015).   The Eleventh Circuit describes the least sophisticated consumer standard as follows:

> The least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care. However, the test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness.

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (cleaned up).

The question of whether a particular communication can be deemed "false," "misleading," or "deceptive" from the perspective of the least sophisticated consumer is a question for the jury.

*See Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1274 (11th Cir. 2016) ("Whether a particular communication is false or deceptive is a question for the jury.").  The same holds true for the question of whether a particular communication can be deemed a "threat" from the perspective of the least sophisticated consumer.  *See LeBlanc*, 601 F.3d at 1195 (noting that the question of whether a collection letter "could reasonably be perceived as a threat to take legal action 'under the least-sophisticated consumer standard' ... is best left to jury decision").  The question of whether a given complaint alleges facts sufficient to state a claim under the FDCPA remains a legal question for the court.  *Bishop*, 817 F.3d at 1277-78.

> **1.     Plaintiffs' Claims**

Applying the appropriate standards here, the Court finds that Plaintiffs have alleged plausible claims, for purposes of Counts 1 and 3, that Defendant made "false," "misleading," and "deceptive" statements, when judged from the perspective of the least sophisticated consumer.  Likewise, the Court finds that Plaintiffs have alleged a plausible claim, for purposes of Count 2, that Defendant made a "threat" to take action that could not legally be taken or that Defendant did not intend to take, when judged from the perspective of the least sophisticated consumer.

The Court bases this conclusion on the following language from the Default Notice:

> **<u>NOTICE OF DEFAULT AND INTENT TO ACCELERATE</u>**
>
> …
>
> Failure to cure default on or before the date specified may result in acceleration of the sums secured by the Security Instrument, sale of property and/or foreclosure by judicial proceeding and sale of the property.

(DE 15-1 at 2).  In the Court's view, a reasonable juror applying the least-sophisticated-consumer standard could interpret this language to mean that, unless the homeowner paid the amount demanded by the date specified, the homeowner faced immediate acceleration and foreclosure

proceedings.  In truth, federal law prohibits Defendant from bringing a foreclosure proceeding until a mortgage loan is more than 120 days past due:

§ 1024.41 Loss mitigation procedures.

…

(f) Prohibition on foreclosure referral —

(1) Pre-foreclosure review period. A servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:

(i)      *A borrower's mortgage loan obligation is more than 120 days delinquent;*

(ii)     The foreclosure is based on a borrower's violation of a due-on-sale clause; or

(iii)    The servicer is joining the foreclosure action of a superior or subordinate lienholder.

12 C.F.R. § 1024.41(f)(1) (emphasis added).

The timeline set forth in the SAC and in the standard Default Notice shows that Defendant regularly sets a cure date well before the 120-day mark.[2]  Accordingly, the Court finds the SAC raises a plausible claim, from the perspective of the least sophisticated consumer, that the Default Notice threatens to take legal action that Defendant could not yet legally take.  Likewise, the SAC repeatedly alleges that Defendant's internal policies prohibited it from accelerating loans or initiating foreclosure proceedings on loans less than 120 days past due.  (DE 15 ¶ 24).  Accepting these allegations as true, the Court finds the SAC raises a plausible claim, from the perspective of the least sophisticated consumer, that the Default Notice threatens to take action that Defendant did not, in fact, intend to take.

---

[2] Using X to indicate the date of initial default, Defendant sends the Default Notice at X + 45 days.  (DE 15-1 at 2).  Defendant sets a cure date of X + 81 days.  (DE 15-1 at 2).

Other courts have recognized plausible FDCPA claims based upon debt collector threats to take action that could not legally be taken or that the debt collector did not, in fact, intend to take.  *See Barilla v. Seterus, Inc.*, No. 2:19-cv-46-ftM-38NPM, 2019 WL 6525945 at *3 (M.D. Fla. Dec. 4, 2019) (finding plausible FDCPA claim where "the letter contained a threat that Defendants did not intend to carry out");  *Williams v. Seterus, Inc.*, No. 2:19-cv-000693-ACA, 2020 WL 362874 at * 2 (N.D. Ala. Jan. 22, 2020) (finding plausible FDCPA claim where "[t]aking the facts in the light most favorable to Ms. Williams, Seterus sent a letter threatening action it never intended to take.");  *Fisher v. Seterus, Inc.*, No. 19-cv-01382 (MJD/HB), 2019 WL 5865605, at *4 (D. Minn. Oct. 21, 2019) ("Plaintiff has pleaded a plausible claim that the Letter amounted to a false representation under § 1692e(10) because the unsophisticated consumer could be led to conclude that her loan would certainly be accelerated if she did not pay her balance in full by the expiration date, when in fact that is not Seterus's practice.").  For all these reasons, the Motion should be denied as to Counts 1, 2 and 3.

## 2.    Defense Arguments

Defendant raises a number of arguments which the Court will address for the sake of completeness and for the benefit of the District Court.

### i.    No Threat

First, the Court has considered, but finds unpersuasive, Defendant's argument that its Default Notice cannot reasonably be interpreted as a "threat" because it served as a mere "reality-based reminder of the consequences of failing to cure the default."  (DE 17 at 9).  The FDCPA does not define the term "threat."  In the absence of a statutory definition, the Eleventh Circuit has previously used the Black's Law Dictionary definition of "threat" as "a communicated intent to

inflict harm or loss on another or another's property ...." *See LeBlanc*, 601 F.3d at 1195 (applying Black's Law Dictionary definition to § 1692e(5)).

Here, Defendant communicated its intent, in underlined and bolded language, in the title of the Default Notice itself: "**NOTICE OF DEFAULT *AND INTENT TO ACCELERATE***." (DE 15-1 at 2) (italics added).  In the Court's view, an unsophisticated consumer could reasonably assume that Defendant meant what it said, i.e., that it intended to accelerate the loan unless the default were cured by the date specified.  In the Courts view, this qualifies as a "communicated intent to inflict harm or loss on another's property" within the dictionary definition of "threat."

 The Court has likewise considered Defendant's argument that its use of the word "may" obviated any threat.  Specifically, Defendant argues that the Default Notice merely warned that failure to cure on or before the date specified "may" result in acceleration and/or foreclosure, leaving open the possibility that such consequences might *not* result.  Defendant argues its use of the word "may" distinguishes its Default Notice from the harsher "will accelerate" language used in the collection letters at issue in cases such as *Barilla*, 2019 WL 6525945.  (DE 17 at 9-10).

The Eleventh Circuit considered and rejected a similar argument in *LeBlanc*, where a bill collector also warned of the consequences of non-payment using the word "may."  601 F.3d at 1188 (letter warning that, unless the bill was paid, "we may refer this matter to an attorney in your area for legal consideration").  The Eleventh Circuit rejected the argument, reasoning as follows:

> Unifund mistakenly relies on the use of conditional language such as "if" and "may" in an effort to safeguard the letter from being construed as "threatening." Despite the conditional language, a reasonable juror could read the dunning letter as intimating that a lawsuit will follow immediately after the end of the 35 day "grace" period.

*Id.* at 1196.  The same logic applies here.

The Court has also reviewed the cases cited by Defendant and finds them distinguishable based on the language used in the collection letters at issue in those cases. In *Wise v. Cach, LLC*, No. 09-80972-CIV, 2010 WL 1257665, at *4 (S.D. Fla. Mar. 26, 2010), for example, a judgment creditor sent a letter to the debtor that included the following language:

> You are now a judgment debtor. As such, you may have problems buying and selling a home. Under Florida law, our client can execute upon a judgment as follows:
>
> ...
>
> B. Foreclose your real estate—which means having the sheriff sell your property in order to pay off the judgment (unless said property is homestead or tenancy by the entireties).

2010 WL 1257665 at *3 (italics removed).

Based on this language, the debtor brought an FDCPA claim, arguing that the foreclosure reference was false because the creditor had not yet recorded the judgment in the public records, a necessary precondition to execution. *Id.* The district court dismissed the FDCPA claim, noting that the letter itself never threatened to take *any action*. *Id.* As such, the court found the letter to be a mere "reality based reminder, not as a threat to take action that cannot legally be taken." *Id.* at *4. The court also reasoned that "[t]he fact that all conditions precedent to foreclosure on the judgment had not been completed does not render the statement false or misleading to the least sophisticated consumer." *Id.*

The Court finds the Default Notice here to be different than the collection letter at issue in *Wise*. Unlike the letter in *Wise*, the Default Notice announced its intent in the very title, i.e., "**INTENT TO ACCELLERATE**." In the Court's view, this went beyond a reality-based reminder of the consequences of failing to cure. Rather, an unsophisticated homeowner could

reasonably interpret the letter as a threat to take specific legal action unless the homeowner paid the amount demanded by the date demanded.

### ii.    Timing

Similarly, the Court rejects Defendant's argument that the word "may" obviated any falsity.  Defendant again draws a distinction between its use of the phrase "may accelerate" and the harsher "will accelerate" language used in the collection letters at issue cases such as *Barilla*, 2019 WL 6525945.  (DE 17 at 8-10).  Defendant argues that the conditional term "may" merely communicates that acceleration and/or foreclosure might take place *at some unspecified date in the future*.  Defendant points out that, although the Default Notice sets a date certain to cure the default, it does not set a date certain for acceleration and/or foreclosure.  As such. Defendant argues, the Default Notice cannot reasonably be interpreted to threaten *immediate* acceleration and/or foreclosure.

The Court finds this argument unpersuasive for three reasons.  First, after reviewing the Default Notice multiple times, the Court finds that a reasonable juror applying the least sophisticated consumer standard could conclude that it threatens *immediate* acceleration and/or foreclosure absent payment by the date specified.  In other words, a homeowner reading the Default Notice, especially an unsophisticated one, could easily come to the conclusion that, on the day following the expiration date, he or she would be in immediate risk of acceleration and/or foreclosure.  In truth, per federal law, Defendant could not initiate foreclosure proceedings until the homeowner was more than 120 days delinquent.  *See* 12 C.F.R. § 1024.41(f)(1)(i).

Second, the word "may" has multiple definitions.  One definition – the one advocated by Defendant – means "used to indicate possibility or probability" as in "you *may* be right."  *May*, MERRIAM-WEBSTER.COM,  https://www.merriam-webster.com/dictionary/inspection  (last  visited

August 20, 2024).  Another definition – the one advocated by Plaintiffs – means "have permission to," as in "you may go now."  *Id.*  In the Court's view, a reasonable homeowner could apply the second definition.  In other words, a reasonable homeowner, especially an unsophisticated one, could interpret the Default Notice to assert that Defendant had legal permission to foreclosure immediately unless the default were cured.  For the reasons previously discussed, federal law prohibited immediate foreclosure proceedings.

Third and finally, in many of the cases cited by the parties, bill collectors inserted standard language into collection letters to address the timing of potential foreclosure proceedings.  In *Moore v. Seterus, Inc*, for example, a loan servicer sent a default notice warning:

> IF THE DEFAULT IS NOT CURED ON OR BEFORE THE EXPIRATION DATE, THE LOAN OWNER AND WE INTEND TO ENFORCE THE LOAN OWNER'S RIGHTS AND REMEDIES AND MAY PROCEED WITHOUT FURTHER NOTICE TO COMMENCE FORECLOSURE PROCEEDINGS.

711 F. App'x 575, 578 (11th Cir. 2017).  Based on this language, the plaintiff in *Moore* brought a § 1692e(5) claim, arguing the language was misleading because the mortgage documents required the lender to provide written notice to the borrower prior to invoking "the power of sale"; hence, the lender could not commence foreclosure proceedings "without further notice."  *Id.* at 580.

The district court entered summary judgment for the loan servicer, and the Eleventh Circuit affirmed, because the default notice also included the following language concerning the timing of foreclosure:

> FORECLOSURE PROCEEDINGS WILL NOT BE COMMENCED UNLESS AND UNTIL ALLOWED BY APPLICABLE LAW.

*Id.* at 578.  The Eleventh Circuit agreed that even the least sophisticated consumer would read the default notice in its entirety and realize that "foreclosure proceedings would not begin contrary to

the contract's terms." *Id.* at 580.  Accordingly, the default notice could not be deemed false for purposes of the FDCPA.  *Id.*

Other courts have likewise rejected FDCPA claims where bill collectors included standard language to address the timing of potential foreclosure proceedings.  *See, e.g.*, *Fisher v. Seterus, Inc.*, No. 19-cv-01382 (MJD/HB), 2019 WL 5865605 at *6 (D. Minn. Oct. 21, 2019) (dismissing portion of FDCPA claim where notice advised that "foreclosure proceedings will not be commenced unless and until allowed by applicable law"); *see also Savage v. Seterus, Inc.*, No. 2:20-cv-32-FtM-38NPM, 2020 WL 2219194, at *3-5 (M.D. Fla. May 7, 2020) (dismissing FCCPA claim where notice advised that "FORECLOSURE PROCEEDINGS WILL NOT BE COMMENCED UNLESS AND UNTIL ALLOWED BY APPLICABLE LAW.").

The allegations here are different.  Unlike *Moore* and other cases, Defendant's Default Notice failed to include any language to clarify the timing of potential foreclosure proceedings. For this reason as well, the Court finds the SAC plausibly alleges that the Default Notice left unsophisticated homeowners with the false and misleading impression that foreclosure proceedings could begin immediately following expiration of the cure date.

For similar reasons, the Court rejects Defendant's related challenge to materiality.  (DE 17 at 12).  The FDCPA requires plaintiffs to prove materiality in addition to falsity.  *See Miljkovic v. Shafritz & Dinkin, P.A.*, No. 8-14-CV-635-T-33TBM, 2014 WL 3587550, at *8 (M.D. Fla. July 18, 2014).  A materially misleading statement is one that "would tend to mislead or confuse the reasonable unsophisticated consumer."  *Wallace v. Washington Mut. Bank, F.A.*, 683 F. 3d 323, 326–27 (6th Cir. 2012); *see also Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010) ("In assessing FDCPA liability, we are not concerned with mere technical falsehoods that

mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response.").

The Court finds the misrepresentations at issue here to be material from the perspective of the least sophisticated consumer. As stated, the SAC plausibly alleges that the Default Notice left unsophisticated homeowners with the false impression that foreclosure proceedings could begin immediately following expiration of the cure date. The Court finds this falsity to be more than technical and of the type that would frustrate a consumer's ability to intelligently choose his or her response.

### iii.    Compliance with Mortgage Documents and TILA

Next, the Court has considered, but finds unpersuasive, Defendant's argument that it cannot be held liable under the FDCPA because it sent the Default Notice in compliance with the homeowners' mortgage documents and in compliance with the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*. (DE 17 at 4-5). Specifically, Defendant points out that TILA requires lenders, upon a 45-day delinquency, to send a letter to homeowners notifying them, among other items, of the length of the delinquency, the total payment amount needed to bring the account current, and a "notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured…." 12 C.F.R. § 1026.41(d)(8)(ii).

Likewise, per the terms of the Plaintiffs' respective loans, upon default, "the Note Holder may send [ ] a written notice ... that if [borrower does] not pay the overdue amount by a certain date, the Note Holder may require [the borrower] to pay immediately the full amount of Principal which has not been paid and all the interest that [borrower] owe[s] on that amount." (DE 17-1 ¶

6).[3]  The mortgages likewise provide that the lender "shall give notice to the Borrower prior to acceleration" and the notice "shall specify" the "action required to cure the default" and "a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured." (DE 17-2 ¶ 22).  Furthermore, the notice shall advise that "failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured" thereby. (DE 17-2 ¶ 22).

The Court appreciates that Defendant sent the Default Notices in compliance with TILA and the parties' mortgage documents.  These facts do not obviate a potential FDCPA violation, however, as bill collectors can simultaneously comply with TILA yet violate the FDCPA.  *See Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260, 1274 (11th Cir. 2022) (noting that TILA communication  can violate FDCPA if sent "in connection with the collection of a debt"); *Lear v. Select Portfolio Servicing, Inc.*, 309 F.Supp.3d 1237, 1240 (S.D. Fla. 2018) ("the mere fact that a periodic [mortgage] statement complies with TILA does not exonerate the sender because a communication can have more than one purpose, for example, providing information to a debtor as well as collecting a debt.") (cleaned up).

In this case, the Court finds that the SAC alleges plausible FDCPA violations even though Defendant complied with TILA and the relevant mortgage documents.  Specifically, even though Defendant sent its Default Notice at the 45-day mark and warned of possible foreclosure risks as

---

[3] Defendant attached copies of relevant promissory notes and mortgage documents to its Motion. (DE 17-1, DE 17-2).  At oral argument, Plaintiffs' counsel conceded he did not contest the authenticity of these documents, so the Court will consider them in connection with this Motion. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("Our Rule 12(b)(6) decisions have adopted the "incorporation by reference" doctrine under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed.") (cleaned up).

required by § 1026.41(d)(8)(ii) of TILA, Defendant communicated that warning in a manner that raises plausible FDCPA claims.  Likewise, even though the mortgage documents authorized the payment deadlines and repercussions set forth in the Default Notice, these documents do not override the federal prohibition against beginning foreclosure proceedings until the borrower is more than 120 days delinquent.  *See* 12 C.F.R. § 1024.41(f)(1)(i).  To the extent the Default Notice communicated that foreclosure could proceed along a faster timeline, the Court finds plausible FDCPA claims.

> **B.    Count 4 – 15. U.S.C. § 1692f**

Count 4 alleges a violation of 15 U.S.C. § 1692f, a catch-all provision that prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt."  Although the FDCPA does not supply definitions for "unfair" or "unconscionable," the Eleventh Circuit has previously looked to the common usage of those terms in applying this subsection.  *See Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1308-09 (11th Cir. 2015).  "Unfair" means "marked by injustice, partiality, or deception."  *Id.* at 1308 (citing Merriam Webster's Collegiate Dictionary 1290 (10th ed.1996)).  "Unconscionable" means "shockingly unfair or unjust."  *Id.* (citing Merriam Webster's Collegiate Dictionary 1290 (10th ed.1996)).

Defendant moves to dismiss, arguing that Plaintiffs cannot use the same conduct to simultaneously support a § 1692f violation and a § 1692e violation.  (DE 17 at 12-13).  In support, Defendant cites *Miljkovic*, 791 F.3d at 1308, where a plaintiff simultaneously alleged a § 1692f violation and a § 1692e violation.  The Eleventh Circuit affirmed dismissal of the § 1692f count, noting that the plaintiff had failed "to specifically identify how Appellees' conduct here was either unfair or unconscionable *in addition to* being abusive, deceptive, or misleading."  *Id.* at 1308 (emphasis in original).

In the Court's view, the *Miljkovic* decision did not announce a per se ban on using the same conduct to support both a § 1692f claim and a § 1692e claim.  Instead, the case merely stands for the proposition that, when a plaintiff attempts to do so, he or she must identify how the conduct satisfies the elements of each subsection, i.e., how the conduct is "unfair or unconscionable," for purposes of § 1692f, in addition to being "deceptive or misleading," for purposes of § 1692e.  *See Barilla*, 2019 WL 6525945, at *3 (rejecting similar argument based on *Miljkovic*).

In this case, the Court has reviewed the allegations of Count 4 and finds them sufficient to state a plausible violation of § 1692f.  The SAC alleges conduct that, when judged from the perspective of the least sophisticated consumer, qualifies as "unfair and unconscionable" in addition to being "deceptive or misleading."  Specifically, Plaintiffs allege that the Default Notice was not merely false, but that it created a "false sense of urgency," intending to "scare and intimidate" homeowners.  (DE 15 ¶¶ 31, 34, 47).  Further, the misrepresentations were "frightening and unnerving" and were knowingly and intentionally calculated to intimidate homeowners. (DE 15 ¶ 35).  The Court finds these allegations sufficient to survive dismissal at this stage of the case.  *See Barilla*, 2019 WL 6525945, at *4 (finding § 1692f claims sufficient to survive dismissal).  Accordingly, the Motion should be denied as to Count 4.

### C.    Count 5 – Fla. Stat. § 559.72

Count 5 alleges a violation of the FCCPA, Fla. Stat. § 559.72, the Florida state analogue to the federal FDCPA.  (DE 15 ¶¶ 166-201).  To state a claim under the FCCPA, Plaintiffs must allege facts that show (1) Defendant is a debt collector; (2) Plaintiffs were "the object of collection activity arising from consumer debt;" and (3) Defendant engaged in an act or omission prohibited by the FCCPA.  *Garrison v. Caliber Home Loans, Inc.*, 233 F. Supp. 3d 1282, 1290 (M.D. Fla.

2017).   Here, Plaintiffs allege that Defendant violated subsection (7) of the FCCPA, which

provides as follows:

> 559.72   Prohibited practices generally.—In collecting consumer debts, no person
> shall:
>
> …
>
> (7)   Willfully communicate with the debtor or any member of her or his family
> with such frequency as can reasonably be expected to harass the debtor or her or
> his family, *or willfully engage in other conduct which can reasonably be expected
> to abuse or harass the debtor or any member of her or his family*.

Fla. Stat. § 559.72(7) (emphasis added).

In determining whether a communication can be deemed abusive or harassing for purposes

of the FCCPA, courts look to numerous factors, including:

> (1) the volume and frequency of attempts to contact the debtor, (2) the volume and
> frequency of contacts with the debtor, (3) the duration of the debt collector's
> attempted communication and collection, (4) the debt collector's use of abusive
> language, (5) the medium of the debt collector's communication, (6) the debtor's
> disputing the debt or the amount due, (7) the debtor's demanding a cessation of the
> communication, (8) the debt collector's leaving a message, (9) the debt collector's
> calling at an unreasonable hour, (10) the debt collector's calling the debtor at work,
> *(11) the debt collector's threatening the debtor, (12) the debt collector's lying to the
> debtor,* (13) the debt collector's impersonating an attorney or a public official, (14)
> the debt collector's contacting a friend, co-worker, employee, employer, or family
> member, and *(15) the debt collector's simulating or threatening legal process.*

*Boullosa v. Wells Fargo Bank, N.A.*, No. 8:22-cv-2642-CEH-CPT, 2023 WL 3584074, at *3 (M.D.

Fla. May 22, 2023) (emphasis added).   Generally, the question of whether a communication can

be deemed abusive or harassing presents a factual issue for the jury to decide.   *See McCaskill v.

Navient Sols., Inc.*, 178 F. Supp. 3d 1281, 1296 (M.D. Fla. 2016) ("[T]he question of whether

conduct is harassing or abusive is ordinarily an issue for the factfinder."); *Ortega v. Collectors

Training Inst. of Ill., Inc.*, No. 09-21744-CIV, 2011 WL 241948, at *9 (S.D. Fla. Jan. 24, 2011)

("Florida courts have determined that whether calls are willful and harassing are factual issues for the jury's determination.").

In this case, the Court has reviewed the allegations of Count 5 and finds them sufficient to state a plausible violation of Fla. Stat. § 559.72(7).  In particular, the SAC alleges that the Default Notice contained false and misleading statements intended to create a false sense of urgency and scare homeowners.  (DE 15 ¶¶ 34-36).  The SAC further alleges that Defendant knew about the falsity and intended to mislead and deceive Plaintiffs into paying more quickly.  (DE 15 ¶¶ 194-96).  The Court finds these allegations sufficient to survive dismissal.

The Court has considered Defendant's citation to *Savage*, 2020 WL 2219194, at *4, but the Court finds this case distinguishable.  In *Savage*, a loan servicer sent a default notice warning that, unless payment was received, "we will accelerate the maturity date of your loan," and that "failure to cure may result in foreclosure by judicial proceeding." *Id.*  As in this case, the plaintiff claimed a violation of § 559.72(7) because the loan servicers' internal policies and federal law prohibited foreclosure until the homeowner was more than 120 days delinquent. *Id.*

In contrast to this case, however, the loan servicer in *Savage* also included the following language on its default notice: "FORECLOSURE PROCEEDINGS WILL NOT BE COMMENCED UNLESS AND UNTIL ALLOWED BY APPLICABLE LAW." *Id.* at *3.  Given this language, the court in *Savage* found that the default notice could not be deemed misleading, abusive or harassing because it accurately disclosed that foreclosure proceedings would not take place until allowed by applicable law. *Id.* at *5.  As, such, the court dismissed the § 559.72(7) claim. *Id.*

As previously discussed, the allegations here are different.  Unlike in *Savage*, Defendant's Default Notice failed to include any language to clarify the timing of foreclosure proceedings.

19

The Court therefore finds *Savage* distinguishable.  For all of these reasons, the Motion should be denied as to Count 5.

###    D.        Count 6 – Negligent Misrepresentation

Count 6 alleges common law negligent misrepresentation.  To state a cause of action for negligent misrepresentation in Florida, a plaintiff must allege facts that show (1) the defendant made a misrepresentation of material fact that he or she believed to be true but which was in fact false, (2) the defendant was negligent in making the statement because he or she should have known the representation was false, (3) the defendant intended to induce the plaintiff to rely on the misrepresentation, and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.  *Specialty Marine & Indus. Supplies v. Venus*, 66 So. 3d 306, 309 (Fla. 1st DCA 2011).  Critically, the tort of negligent representation requires actual injury as a necessary element.  *See Soltero v. Swire Dev. Sales, Inc.*, No. 08-20260, 2010 WL 11506701, at *2-3 (S.D. Fla. Apr. 19, 2010) (entering post-trial judgment based upon plaintiff's failure to prove actual injury in a negligent misrepresentation case).

After careful review, the Court finds that Count 6 fails to allege facts showing a plausible injury.  The SAC alleges that Plaintiffs suffered unspecified "financial damage and injury."  (DE 15 ¶ 229).  At most, however, the Default Notices would have caused Plaintiffs to pay past-due sums they admittedly owed by virtue of their mortgage obligations.  In *Barilla*, the court dismissed a similar claim, observing that it was "aware of no case law to support [the notion] that contractually owed payments are actionable losses within the meaning of Florida negligent misrepresentation."  2019 WL 4060154, at *5.  This Court agrees that Plaintiffs cannot claim injury or damages based on making mortgage payments they undeniably owed.

20

The Court has also considered whether Plaintiffs might be able to claim nominal damages, but the case law does not support that theory. *See Soltero*, 2010 WL 11506701, at *13 n.8 ("Nominal damages cannot be awarded under Florida law to a fraud plaintiff who fails to prove actual harm.") (citing *Kent v. Sullivan*, 793 So.2d 1027, 1028 (Fla. 5th DCA 2001)). For all of these reasons, the Motion should be granted as to Count 6.

## IV.    RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion (DE 17) be **DENIED** as to Counts 1, 2, 3, 4 and 5, but **GRANTED** as to Count 6. Given that Plaintiffs have had multiple past opportunities to amend their pleadings, the Court **RECOMMENDS** that Count 6 be **DISMISSED WITH PREJUDICE** with no further opportunity to amend.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.** RESPECTFULLY SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this 21st day of August 2024.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE