**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION**

CLARISSA CRUZ, ROBERT ALLAN
MARTIN and KATRINA MARTIN,
individually and on behalf of all others
similarly situated,,

        Plaintiff,

vs.

                                  Case No. 2:23-CV-14297-AMC

SELENE FINANCE, LP, a Delaware
Limited Partnership,

        Defendants.

_____/

## DEFENDANT SELENE FINANCE, LP'S OBJECTIONS TO REPORT & RECOMMENDATION DATED AUGUST 21, 2024

### I. INTRODUCTION

Defendant Selene Finance, LP ("**Selene**") respectfully submits that the Report & Recommendation of the United States Magistrate Judge issued on August 21, 2024 ["**Report**"; ECF No. 89] should be reviewed de novo pursuant to 28 U.S.C. § 636(b) and FED. R. CIV. P. 72(b), and that the Court should sustain the objections set forth below.

Respectfully, the Court should decline to adopt the Report because it was issued presumably in reliance on misrepresentations or omissions made on behalf of Plaintiffs Robert Allan Martin, Katrina Martin (the "**Martins**") and Clarissa Cruz ("**Cruz**") (collectively, the "**Plaintiffs**") and, in any event, erred in recommending that the Second Amended Class Action Complaint [ECF No. 15] (the "**Second Amended Complaint**") should not be summarily dismissed.  Selene respectfully suggests that the Court should sustain Selene's objections and dismiss, or (at minimum) return the matter to the Magistrate Judge for further proceedings.

## II. Brief Factual Background and Report Specifics

Plaintiffs' Second Amended Complaint brought claims against their mortgage servicer, Selene, for alleged violations of the Fair Debt Collection Practices Act (the "**FDCPA**"), the Florida Consumer Collection Practices Act (the "**FCCPA**"), and Florida common law negligent misrepresentation.[1]  Plaintiffs asserted their claims individually and on behalf of purported putative classes. Plaintiffs claimed that default letters—which Selene was required to send under the terms of the Plaintiffs' mortgages—constitute violations of the FDCPA and FCCPA.  Plaintiffs attach, however, ***only the first page*** of a letter sent to the Martins on August 16, 2022 [ECF No. 15-1] and the ***first page*** of a similar letter sent to Cruz on May 17, 2023.  [ECF No. 15-2.]  Both exhibits reflect that they include three pages, but Plaintiffs failed to attach all pages to the Second Amended Complaint.

Plaintiffs claimed Selene's default letters—sent to Plaintiffs due to their failure to make required monthly mortgage payments—amounted to a false and misleading threat to accelerate and foreclose.  They allege that because both federal law and Selene's own internal policies do not allow a foreclosure to commence until a mortgage loan has been delinquent for 120 days, the default letters are deceptive, false, and misleading because they "threaten[] to accelerate the entire indebtedness of a consumer's loan if the total amount is not received on or before the date which is 35 days from date of the Final Letter."  [ECF No. 15, ¶ 21.]  Of course, Selene's default letters do not actually make this direct threat.  In fact, Plaintiffs concede that any "threat" is implied—Plaintiffs' mental impressions—and not expressly set forth in the letters: "The Final Letters cause [Plaintiffs] to believe they are at risk of acceleration and foreclosure if all arrearages to Selene are not paid within the time period identified in the Letter.  [*Id* at ¶ 27.]  This is a perceived concern

---

[1] Selene does not object to those portions of the Report which recommend dismissal of Plaintiffs' Negligent Misrepresentation Claim (Count 6), and that portion of the Order is therefore not further addressed herein.

about timing only.  Having failed to make timely mortgage payments, acceleration and foreclosure are a real "risk."  This case centers on Plaintiffs' alleged belief that Selene might move up the precise timing of these proceedings, which is baseless in light of the law and the specific requirements of the mortgages each Plaintiff signed.

Selene moved to dismiss the Second Amended Complaint.  [ECF No. 17.]  Plaintiffs filed a Memorandum in Opposition [ECF No. 22], and Selene filed a Reply.  [ECF No. 25.]  The Magistrate Judge set the matter for hearing on August 14, 2024, and a transcript of that hearing is attached as **Exhibit 1**.

The Magistrate Judge expressed a valid concern at the outset of the hearing on the Motion to Dismiss: he was only provided the first page of Selene's default letters by Plaintiffs, as opposed to the letters in their entirety.  [Ex. 1, at 3.]  Plaintiffs validated that concern stating, "I can tell you that page two does have text that is relevant" and conceded that the complete letters should have been attached.  [*Id.*]  Critically, when the Magistrate Judge inquired about the existence of any disclaimer as to the effect of applicable law in the incomplete letters, Selene noted that although not identical to the case law before the Magistrate Judge, relevant and substantially similar language **did** appear on the missing second pages of the default letters.  [*Id.* at 12.]  Nevertheless, the Magistrate Judge issued his Report without the benefit of the complete letters argued by both parties at the hearing.

The Magistrate Judge issued the Report on August 21, 2024. The Report first addressed Counts 1-3, all overlapping and brought under FDCPA subsection 1692e.  [Report at pgs. 4-15.]  The Magistrate Judge denied Selene's Motion to Dismiss these Counts by concluding that Plaintiffs plausibly alleged the letters made false, misleading, and deceptive statements, and that

Selene threatened Plaintiffs with action[2] that could not be legally taken or that Selene did not intend

to take.  [*Id*. at 6.]  The Report pointed to the following language as the basis for its conclusions:

> **NOTICE OF DEFAULT AND INTENT TO ACCELERATE**
> …
> Failure to cure default on or before the date specified may result in acceleration of
> the sums secured by the Security Instrument, sale of property and/or foreclosure by
> judicial proceeding and sale of the property.

[*Id*.]

The Report acknowledged that this exact "threatening" language was required by the face

of the mortgages agreed to and signed by Plaintiffs.  [Report at 15.]  In fact, the mortgages

uniformly state as follows with the language found to be actionable listed alongside for

comparison's sake:

| Mortgage Requirement | Language in Letters |
|---|---|
| "The notice shall specify … that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property" [ECF No. 17-2 ¶ 22.] | "Failure to cure the default on or before the date specified may result in acceleration of the sums secured by the Security Instrument, sale of property and/or foreclosure by judicial proceeding and sale of property." [ECF no. 89 at p. 6.] |

Notably, however, the Report makes no mention of Paragraph 16 of the mortgages, which provide

in part:

> This Security Instrument shall be governed by federal law and the law of the
> jurisdiction in which the Property is located.  All rights and obligations contained
> in this Security Instrument are subject to any requirements or limitations of
> Applicable Law."

---

[2] It bears mentioning that the Report conflates acceleration and foreclosure as the potentially
threatened unauthorized "action" that could be inferred from the default letters.  However, the two
concepts are distinct.  While foreclosure is a common means of acceleration in Florida—and
foreclosure is prohibited before the loan is 120-days delinquent, *see* 12 C.F.R. § 1024.41(f)(1), the
law does not prohibit a separate non-foreclosure acceleration inside of the 120 days.  Acceleration
may be accomplished via foreclosure, yes, but can also be accomplished by taking any "affirmative
action" that informs the borrower that the lender has exercised its optional right to accelerate.  *See
Snow v. Wells Fargo Bank, N.A.*, 156 So. 3d 538, 541 (Fla. 3d DCA 2015).

[ECF No. 117-1, ¶ 16.]  That Paragraph goes on to provide: "As used in this Security Instrument

…  (c) the word "may" gives sole discretion without any obligation to take action."  [*Id*.]

The Report also found that this quoted "false, deceptive, misleading, and threatening"

language was required by the Truth in Lending Act's Mortgage Servicing Regulations, 12 C.F.R.

§ 1026.41(d)(8).  [Report at 14.]    Nevertheless, the Report determined that Selene's recitation of

this required language could be plausibly construed as a collection-practices violation.  To do this,

the Report made the following recommended findings:

- "In the Court's view, a reasonable juror applying the least-sophisticated-consumer standard could interpret this language to mean that, unless the homeowner paid the amount demanded by the date specified, the homeowner faced immediate acceleration and foreclosure proceedings." [Report at 6.]

- "Accordingly, the Court finds the SAC raises a plausible claim, from the perspective of the least sophisticated consumer, that the Default Notice threatens to take legal action that Defendant could not yet legally take."  [Report at 7.]

- "Likewise, the SAC repeatedly alleges that Defendant's internal policies prohibited it from accelerating loans or initiating foreclosure proceedings on loans less than 120 days past due. (DE 15 ¶ 24). Accepting these allegations as true, the Court finds the SAC raises a plausible claim, from the perspective of the least sophisticated consumer, that the Default Notice threatens to take action that Defendant did not, in fact, intend to take."  [Report at 7.]

The Report proceeded to address the reasons that it found Selene's arguments for dismissal

to be unavailing.

- In the absence of a direct threat to foreclose within 120 days of the Plaintiffs' delinquency on the face of the default letters, the Report determined that such a threat could be imagined or "assumed" in the minds of Plaintiffs, and this was sufficient for a plausible FDCPA claim: "In the Court's view, an unsophisticated consumer could reasonably assume that Defendant meant what it said, i.e., that it intended to accelerate the loan unless the default were cured by the date specified."  [Report at 9.]

- The Report rejected Selene's argument that the default letters' use of the word "may" made the letter non-threatening.  In doing this, the Report relied on the logic of *LeBlanc*, a distinguishable decision as discussed below.  At the same time, the Report rejected the logic of the *Wise* decision as distinct, a case very similar to the instant action in which the court held that plaintiff failed to state an FDCPA claim even though the letter stated that

the lender "can" foreclose at an unspecified time.  The Report pointed to the title of the default letter as the key distinction—even though the Wise decision says nothing about whether it had a title or not.  [Report at 9-11.]

- The Report also rejected Selene's argument centered on how the word "may" eliminates any falsity or deception.  The Report did not once address the contractual definition in Paragraph 16 of the Mortgages.  Instead, the Report found: "First, after reviewing the Default Notice multiple times, the Court finds that a reasonable juror applying the least sophisticated consumer standard could conclude that it threatens *immediate* acceleration and/or foreclosure absent payment by the date specified."  [Report at 11.]

- "Second, the word "may" has multiple definitions. . . . . In the Court's view, a reasonable homeowner could apply the second definition. In other words, a reasonable homeowner, especially an unsophisticated one, could interpret the Default Notice to assert that Defendant had legal permission to foreclosure immediately unless the default were cured."  [Report at 11-12.]

- The Report focused intensely on the express disclaimer that appeared in the letters at issue in the *Moore* decision and other district court decisions cited by the parties.  That disclaimer read "FORECLOSURE PROCEEDINGS WILL NOT BE COMMENCED UNLESS AND UNTIL ALLOWED BY APPLICABLE LAW."  [Report at 12-13.]  Although Plaintiffs here only attached a partial copy of two of the default letters received by Plaintiffs, the Report made the sweeping conclusion that "Defendant's Default Notice failed to include any language to clarify the timing of potential foreclosure proceedings."  [*Id.*at 13.]  The Report does not address Paragraph 16 of the Mortgages in its analysis, either.  [*Id.*]

- The Report rejected Selene's argument that leaving the date of a future foreclosure unspecified was immaterial, as an unsophisticated consumer could be left with a "false impression that foreclosure proceedings could begin immediately following expiration of the cure date."  Again, the Report reached this conclusion without considering Paragraph 16 of the Mortgages or the entirety of the default letters. [Report at 13-14.]

- The Report found "that the SAC alleges plausible FDCPA violations even though Defendant complied with TILA and the relevant mortgage documents."  [Report at 15.]

With these findings, the Report recommended the Motion be denied as to Counts 1 through 3.

Next, the Report recommended denial of the Motion to Dismiss Plaintiffs' FDCPA claim under subsection 1692f.  The Magistrate Judge rejected Selene's argument based on the Eleventh Circuit's decision in *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291 (11th Cir. 2015) that Plaintiffs failed to allege conduct that was unfair and unconscionable in a separate/independent manner from that alleged in support of Plaintiffs' claims under subsection 1692e.  The Report

found that Selene was arguing for a "per se ban" on bringing claims under those two subsections, sided with contradictory, non-binding district court decisions elsewhere, and found the allegations in Count 4 plausible as additional standalone grounds for recovery. [*See* Report at 16-17.]

Last, the Report concluded that the contractually required, TILA-compliant language used by Selene in the default letters could plausibly be considered abusive and harassing, violating subsection 559.72(7) of the FCCPA. The Report concluded the language could be plausibly construed as false, or a threat to proceed with unauthorized legal process. [Report at 17-18.] As it did with respect to Counts 1 through 3, the Report found that the partial default letters attached to the Second Amended Complaint did not contain a specific disclaimer as to the timing of the commencement of foreclosure proceedings and therefore summarily cast aside case law that rejected substantially similar allegations to the ones made by Plaintiffs here. The Report did not recognize or address paragraph 16 of the Mortgages or consider whether the complete letters might provide a limitation as to the effect of applicable law. Instead, the Report found "[Selene's] Default Notice failed to include any language to clarify the timing of foreclosure proceedings." [*Id*. at 19.] With that, the Report recommended that the Court deny the Motion to Dismiss as to Count 5. [*Id*. at 20.] These timely Objections follow.

### III. STANDARD OF REVIEW

Specific written objections which identify the specific portions of a magistrate judge's report/recommendations are required to invoke this Court's review. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc*., 208 F. App'x 781, 784 (11th Cir. 2006). Upon those objections, this Court may review the Report de novo, and may accept, reject, or modify in whole or in part, the findings within the Report. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to any part of the Report, the Court may accept the recommendation in the absence of clear error on the face of the record. *Macort*, 208 F. App'x at

784. Legal conclusions are reviewed de novo, even in the absence of an objection. *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994). This Court may also receive further evidence or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C.§ 636(b)(1)(c).

## IV. SELENE'S OBJECTIONS TO THE REPORT

### A.     The Report Erred by Speculating About the Content of the Entire Default Letters

The Report cannot stand because it fails to consider the totality of the default letters—indeed it is premised solely and completely on the first page of a three-page document.  At oral argument, both Selene and Plaintiffs stated that a review of the complete letters would benefit the Court's analysis, and essentially proffered those pages' contents. [Ex. 1 at 3, 12.]  Plaintiffs even offered to e-mail the complete default letters for consideration.  [*Id*. at 4.]  Nevertheless, the Court issued its ruling with incomplete letters.  This was error, as the Report's sweeping conclusions about Selene's letters—for example the finding that "Defendant's Default Notice failed to include any language to clarify the timing of potential foreclosure proceedings" [Report at 13]—was necessarily speculative and counter to Selene's oral argument.  Pages 2 and 3 of the letters could refute this finding in total, as Selene argued at the hearing.  [Ex. 1 at 12.]  Therefore, Plaintiffs' allegation of any FDCPA violation does not satisfy federal pleading requirements.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

This does not appear to be an example of shoddy pleading.  Plaintiffs—or more accurately their counsel—file a host of cases similar to this one in courts around the country.  This is not the first time they have failed to include a complete copy of the subject default notices and it is not unreasonable to glean that this omission is designed to escape dismissal by proceeding with incomplete default letters.  For example, counsel exhibited the same tactic five years ago.  *See*

*Fordham v. Seterus, Inc*., No. 18-cv-13808, 2019 WL 3451738 at (D.N.J., July 31, 2019).  In that case, Plaintiffs' same counsel here filed an amended class complaint alleging that language in default letters received by Ms. Fordham, a New Jersey plaintiff, were "materially the same" to those sent to Ms. Hager—a separate person located in North Carolina.  *Id*. at *1.  But, Plaintiffs' failed to attach the letters sent to Ms. Fordham.  *Id*.  The Fordham court dismissed the complaint, finding: "Indeed, to ascertain whether Seterus's letters violate the FDCPA, the Court must analyze the actual language of the letters, which it cannot do at this time."  *Id*. at *4.

As a result, this Court should consider complete copies of the two letters involved here in its review.  Complete copies are attached hereto as **Exhibits 2 and 3.**  It will not escape the Court's attention that the language on page 2 of the letters undercuts Plaintiffs' claims by stating in no uncertain terms that the only remedies Selene will pursue are those "permitted by applicable law, and/or as provided within your Security Instrument."  Thus, the Report's conclusion that Selene's letters "failed to include any language to clarify the timing of potential foreclosure proceedings" [Report at 13] is demonstrably false and warrants dismissal per the Report's own logic.

The Court should therefore sustain this Objection, reject the Report's speculative conclusions, and dismiss the Complaint in its entirety and with prejudice, or as an alternative minimum, refer the matter back to the Magistrate Judge to reconsider its decision in light of the complete default letters.

**B.      The Report Erred by Replacing the Definition of "Threat" with "Implication"**

The gravamen of the Second Amended Complaint was that the default letters constituted a threat to accelerate and foreclose before Plaintiffs' accounts were 120 days delinquent which is barred by federal law and Selene's own internal policy.  This argument is flawed, however, because even though Selene rejects any implication that it would defy federal law or its internal policies, the letters contain no such threat and, therefore, cannot sustain a cause of action.  As the Report

recognized, Selene's letters did not specify the timing of *when* foreclosure proceedings would commence—it was left open-ended.  [*See, e.g.*, Report at 12 ("Defendant's Default Notice failed to include any language to clarify the timing of potential foreclosure proceedings.").]  Having acknowledged this, the Magistrate Judge had to rely on the notion that any threat conveyed to Plaintiffs was imagined, interpreted, or implied.   As the Court will see, this defines an implication—not a threat—a distinction with a meaningful difference under the FDCPA.

The Report rightly noted that the FDCPA does not define a "threat" which is the term used in FDCPA subsection 1692e5 at the heart of this case, so it applied the Black's Law Dictionary definition.  [*See* Report at 8-9.]  However, the Report overlooked and failed to consider a critical distinction in the FDCPA subsection at issue—the statute draws a stark contrast between a "threat" and an "implication."   FDCPA subsection 1692e expressly states that a debt collector commits actionable misconduct when it leaves the "implication" in the mind of a consumer that something is going to happen.  The word is used eight different times, and is set forth in subsections (1), (3), (4), (6), (7), (12), (15), and (16).  *See generally* 15 U. S. C. § 1692e.

Black's Law Dictionary defines an "implication" as "[a]n inference drawn from something said or observed."   However, the word is glaringly absent from 1692e subsection (5), which provides only that debt collectors are forbidden to make a "<u>threat</u> to take any action that cannot legally be taken or that is not intended to be taken."  If Congress wanted to outlaw leaving the implication that illegal or unintended action might occur it could have.  But, it did not, leaving  the word "threat" out of subsection (5) intentionally.  *See, e.g., U.S. V. Vereen*, 920 F.3d 1300, 1307 (11th Cir. 2019) (applying doctrine of "*expressio unius est exclusio alterius*" to find that "Congress knew what it was doing"). Likewise, Congress knew what it was doing by leaving the word "implication" out of subsection (5), and the Report should not have found a "threat" where the Second Amended Complaint alleged no more than—at best—an "implication."

The Report is replete with examples of conflating an "implication" with a "threat." Selene respectfully suggests this was error:

- *See* Report at 3, noting Plaintiffs alleged only that the "Default Notices **cause homeowners to believe** Defendant will accelerate their loans and begin foreclosure proceedings immediately . . . ."

- *See* Report at 6-7 finding "a reasonable juror applying the least-sophisticated-consumer standard **could interpret this language to mean** that, unless the homeowner paid the amount demanded by the date specified, the homeowner faced immediate acceleration and foreclosure proceedings."

- *See* Report at 9 finding "an unsophisticated consumer **could reasonably assume** that Defendant meant what it said . . . ."

- *See* Report at 10-11 finding "an unsophisticated homeowner **could reasonably interpret** the letter as a threat to take specific legal action . . . ."

- *See* Report at 11 finding "a reasonable juror applying the least sophisticated consumer standard **could conclude** that it threatens *immediate* acceleration and/or foreclosure absent payment by the date specified."

- *See* Report at 12 finding a reasonable homeowner "**could interpret** the Default Notice to assert that Defendant had legal permission foreclose immediately . . . ."

(Bold emphasis added).

The highlighted terms reflect that the Report converted alleged impressions left in Plaintiffs' minds by the letters—or "implications"—into actionable "threats" under subsection (5). This was error. As a result, at minimum, Counts 2, 4, and 5 (which depend on the finding of an actionable "threat" to survive) should have been dismissed, and the Court should reject the Report's recommendation that those counts may proceed.

## C.    The Report Improperly Relied on Distinguishable Authority

In reaching the conclusion that a plausible "threat" appeared on the face of the letters, the Report relied in large part on the Eleventh Circuit's decision in *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010), finding that the "same logic" of that case applies to this case. [Report at 9.]  This was error because the *LeBlanc* case is wholly distinguishable.

*LeBlanc* is a credit card case and does not involve a mortgage loan. *LeBlanc*, 601 F.3d at 1188. The plaintiff had a charged off unsecured open-ended credit card account, making any collection efforts questionable, but the *LeBlanc* communication specifically came from a new purchasing entity—not an existing mortgage servicer like Selene was to Plaintiffs here. *Id*., at n.2; Report at 2. And, that entity had no right to file suit in Florida as an unregistered collection agency. *Id*. at 1189. The *LeBlanc* case involved a dunning letter, and nothing in the opinion suggests the specific language in question within the letter was required by law or the parties' card agreement. *Id*. Conversely, the language Plaintiffs claim violated the FDCPA in this case has been agreed to in their mortgage contracts and is expressly required. Moreover, TILA's mortgage servicing regulations—to which Selene is bound—require similar language. This rendered the *LeBlanc* decision so distinguishable as to be inapplicable.

While the Eleventh Circuit found the *LeBlanc* dunning letter to be threatening enough to survive dismissal, this case presents a completely different factual situation. The debt collector in *LeBlanc* was not limited in how it could craft the language of its letter—it was not subject to TILA's mortgage-servicing regulations and specific contractual provisions. The *LeBlanc* debt collector chose to threaten that it might hire an attorney and sue, even though it was not registered to collect debts and could not legally sue in the state of Florida. *Id*. at 1189. Conversely, caught between federal law and the strictures of the mortgages, Selene had no breathing room to choose its words. When it sent the default letters, Selene could not deviate from the law and the required notice under the mortgages. The language was preordained and specifically agreed-to by Plaintiffs. That is not threatening. The Court can and should find that plausible allegations of a direct threat—not an implied one—is required to find an FDCPA violation under these circumstances. *Le Blanc* is simply different.

While the Report embraced *LeBlanc* despite its glaring distinctions, it erred by distinguishing and rejecting the reasoning of district decisional law like Judge Marra's opinion in *Wise v. Cach, LLC*, No. 09-cv-80972, 2010 WL 1257665 (S.D. Fla. March 26, 2010). In *Wise*, the debt at issue had been reduced to a judgment, securing the creditor and enabling it to enforce a lien on real property. The Lender sent a letter to the plaintiff that stated, "you may have problems buying and selling a home" and that the lender could foreclose and "sell your property in order to pay off the judgment." *Id*. at *3. Like this case, the timing of that potential, referred-to foreclosure action was not specified. *Id*. Judge Marra held that this letter was not a threat (or false and deceptive) under the FDCPA. This analysis presented a far more compatible factual situation than *LeBlanc*. But the Report cast it aside. Why? Because of the title of the letter in this case. Nothing more. [*See* Report at 10 (dispensing with *Wise* due to lack of information on title of letter at issue in that decision.] Of course, the *Wise* decision says nothing about the title of the letter—it is focused on the substantive language in the letter. The Report erred by casting aside the factually square and well-reasoned decision based on something as trivial as the title. This was error. The Report's recommendation that the default letters sent to Plaintiffs constituted plausible "threats" or were otherwise deceptive or misleading should be rejected. This Court should therefore dismiss Counts 1 through 5 as a result.

## D.    The Report Erred by Entertaining an Extra-Contractual Definition of "May"

Underpinning the Report's conclusion that the default letters were threatening or false, deceptive, misleading, unfair, or unconscionable was its rejection of Selene's arguments on the effect of the word "may" in the default letters. Selene's position was and remains that the use of the word "may" or "can" in place of words like "shall" or "must" has an important, dispositive effect. Doing so makes the communication informational as opposed to potentially threatening or misleading. It expresses possibilities or options (not action) to the Plaintiffs and does not violate

the FDCPA or FCCPA as expressed in the *Wise* decision.  *See Wise*, 2010 WL 1257665, at *4.

The Report rejected these arguments and gave no effect to the default letters' use of the word

"may."  [*See* Report 9-12.]

> On this point, the Report culminated in the finding that:
>
> Second, the word "may" has multiple definitions.   One definition – the one advocated by Defendant – means "used to indicate possibility or probability" as in "you *may* be right." *May,* MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/inspection (last visited August 20, 2024).   Another definition – the one advocated by Plaintiffs – means "have permission to," as in "you may go now." *Id.*   In the Court's view, a reasonable homeowner could apply the second definition. In other words, a reasonable homeowner, especially an unsophisticated one, could interpret the Default Notice to assert that Defendant had legal permission to foreclosure immediately unless the default were cured.

[Report at 11-12.]  Respectfully, this finding was clear error.  The Report overlooked the fact that

the parties agreed to the precise definition of the word "may" on the face of the mortgages

considered by the Magistrate Judge.  That precise definition is set forth in paragraph 16 of the

Mortgages: "As used in this Security Instrument . . . (c) the word 'may' gives sole discretion

without any obligation to take action."  [ECF No. 17-2, ¶ 16.]  Plaintiffs initialed the mortgages

on that very page and signed the documents at the end.

As discussed above, Selene did not create the language used in the default letters arbitrarily.

To the contrary, Selene was required by contract and law to parrot the language in the mortgages,

and place it directly in the letters.  This includes the word "may."  Thus, the only definition of the

word "may" that could be used is the one advocated by Selene, and not the one chosen by the

Magistrate Judge.  The one that underscores how no obligation to take action on a date certain can

be implied.  The one that is informational and provides options.  The instructive "you may go"

version argued by Plaintiffs and adopted by the Report on pages 11-12 should be rejected as

contrary to the contracts they signed.

As a final point on this issue, the fact that Plaintiffs' mortgages provide a precise definition of "may" further distinguishes this case from *LeBlanc*. The Report relied on *LeBlanc*, in part, to reject Selene's arguments on the effect of the word "may." [*See* Report at 9.] This reliance was misguided for all the reasons above, as well as the fact that this case—unlike *LeBlanc*—provided an agreed-upon definition of the word which the Magistrate did not consider in issuing the Report.

The Report's reliance on an extra-contractual definition of "may" compels dismissal of Counts 1-5, and the Court should reject the Report's findings to the contrary.

**E.      The Report Erred by Requiring a Specific Foreclosure-Timing Disclaimer**

In rejecting Selene's Motion to Dismiss, the Report erred by reading a non-existent foreclosure-timing disclaimer requirement into the law, and reading a presumption that Selene was going to break the law into the default letters. The Report found the language used in the letter at issue in *Moore v. Seterus, Inc.*, 711 F. App'x 575, 578 (11th Cir. 2017) preferable, which read: "FORECLOSURE PROCEEDINGS WILL NOT BE COMMENCED UNLESS AND UNTIL ALLOWED BY APPLICABLE LAW." The Report then found that, because Selene's default letters did not contain that language, Plaintiffs' allegations should survive dismissal without any additional analysis. [*See* Report at 12-13, 19.] Upon a review of just one page of two Plaintiffs' default letters (ignoring what might be and actually was included on the second page as discussed *supra*), the Report found that, "Defendant's Default Notice failed to include any language to clarify the timing of potential foreclosure proceedings." [*Id*. at 13.] And, because of the lack of a specific disclaimer with those magic words, the Report recommended Plaintiffs' claims under the FDCPA and FCCPA survive dismissal. This was error for several reasons.

***First***, by finding that an FDCPA claim premised on the default letters will survive dismissal as a blanket proposition because it does not contain a foreclosure-timing disclaimer, the Report was legislating from the bench and writing a non-existent disclaimer requirement into the law.

This finding was not only error, it violated principles of separation of powers. *See, e.g. Lofton v. Sec. of Dep't of Children and Fam. Servs.*, 377 F.3d 1275, 1282 (11th Cir. 2004) (Birch, J. concurring). The mortgage servicing industry is one of the most highly regulated in the land. If Congress or the industry's regulators want to add required language to a mandated notice, they can. But, they have not, and no specific words are required to express that the parties' relationship will be governed (and their actions will be limited) by applicable law. The Report erred in concluding otherwise.

**Second**, the Report ignored language in the default letters and the Plaintiffs' mortgages which satisfied any putative disclaimer requirement. Page 1 of the default letters provided a reminder of the effect of applicable laws in the letter when it stated: Selene Finance LP ("Selene"), the servicer of your mortgage loan, and in accordance with the Security Instrument, **and applicable state laws**, provides you with formal notice of the following:" [ECF No. 17-3 at 2, 3 (emphasis added).] Moreover, the mortgages themselves provide in Paragraph 16 as follows:

> This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements or limitations of Applicable Law.

[ECF No. 117-1, ¶ 16.] The Report failed to address either the statement in the letter, or the mortgage provisions that were under consideration with the Motion to Dismiss. This was error. The default letter's over-arching limitation based on applicable *state* law would apply to the FCCPA which, as the Report correctly noted, outlaws any threats, false statements, or unauthorized legal process. [*See* Report at 18 (quoting *Boullosa v. Wells Fargo Bank, N.A.,* No. 8:22-cv-2642-CEH-CPT, 2023 WL 3584074, at *3 (M.D. Fla. May 22, 2023)).] In the same vein, the mortgage reinforces that any rights to be exercised with respect to Plaintiffs would be "subject to any requirements or limitations of Applicable Law." [ECF No. 117-2, ¶ 16.] This includes the right to accelerate and to foreclosure. But, the Report failed to consider this language in its analysis,

opting instead to find a valid claim just because Selene's letter does not contain the same language contained in some of the case law found non-violative under the FDCPA.  This was error, and the Report should be rejected because it presumes Selene would take action in violation of the law while ignoring contradictory language in both the letters and the mortgages actually before the Magistrate Judge, and the complete letters that Plaintiffs kept from view.  The Report erred by presuming Selene would violate the law instead of relying on the clear contrary language before it that said Selene's actions at all times would be limited by the law.  *See, e.g., Martinez v., Integrated Capital Recovery, LLC*, 513 F. Supp. 3d 1219, 1228 (E.D. Cal. 2021) ("[T]he Court sees no reasonable basis to infer from the statement that ICR would collect a service fee for credit card or debit card usage if it were unlawful to do so.").  Selene cannot expressly disclaim all potential violations of law that can arise in a borrower's mind.  Nor is it required to.

**Third**, the Report rejected all of the reasoning within the following decisions, *see Moore v. Seterus, Inc.*, 711 F. App'x 575, 578 (11th Cir. 2017); *Fisher v. Seterus, Inc.,* No. 19-cv-01382 (MJD/HB), 2019 WL 5865605 at *6 (D. Minn. Oct. 21, 2019); *Savage v. Seterus, Inc.,* No. 20-cv-32, 2020 WL 2219194, at *3-5 (M.D. Fla. May 7, 2020) (the "Disclaimer Cases") once it concluded that the disclaimer language in the letters at issue in those cases was not present in Selene's default letters.  [*See* Report at 12-13, 19.]  The Report considered the Disclaimer cases entirely distinguishable.  By eliminating the Disclaimer cases from consideration, the Report lost the benefit of other findings within those cases that could aid in the analysis of Plaintiffs' claims but have nothing to do with the disclaimer.  For example, in *Moore*, the Eleventh Circuit held that facts including the servicer's authority to collect, the validity of the asserted default, and the accuracy of the amounts due listed in the demand cut against a finding of false, deceptive, or misleading conduct.  711 Fed. App'x at 579-80.  Similarly, in *Fisher*, the court reiterated the importance of reviewing the letter as a whole before reaching a decision on an FDCPA claim.

2019 WL 5865605 at *4.  In *Savage*, the Middle District also concluded that wholistic view of the letters at issue as well as the mortgage contract is appropriate before a ruling is made.  2020 WL 2219194 at *4.  The Report erred by eliminating this analysis—which cut in favor of dismissal—from its decision.

The Report essentially concludes that including a foreclosure-timing disclaimer similar to the one used by the servicer in *Moore* was a best practice.  However, it erred when it elevated that precise disclaimer language into a requirement and failed to consider whether other statements within the letter and/or on the face of the parties' mortgage contract could convey the same message by different means.  The Court should reject the Report's recommendation that Selene's Motion to Dismiss Counts 1 through 5 should be denied.

### F.   The Report Erred by Rejecting Selene's Materiality Argument

One of Selene's dismissal arguments was that Plaintiffs failed to sufficiently allege that the default letters included any materially false representations.  [ECF Nos. 17; 5.]  This centers on the fact that no false information was sent to Plaintiffs.  There is no dispute that Selene was the authorized servicer, the debt was valid, Plaintiffs defaulted on that debt, and the default letters were required by and compliant with the terms of the mortgages.  There is no dispute that the letter does not threaten to foreclose on a date within 120 days of the loans becoming delinquent.  Therefore, at most, Plaintiffs' Second Amended Complaint alleged that Selene's letters allowed Plaintiffs to fabricate an unreasonable fear that the timing of the inevitable foreclosure might possibly commence inside the 120 days.

Such an allegation of a perceived concern as to timing is patently immaterial, manufactured by counsel, and hyper-technical.  This is insufficient.  *See Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010) ("In assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that

may frustrate a consumer's ability to intelligently choose his or her response."). The Court rejected this argument, falling back on the unsophisticated consumer standard and finding that this alleged non-specific timeline concern was more than technical. [Report at 14.] On *de novo* review, the Court should sustain Selene's objection and reject this finding as implausible.

**G.      The Report Erred by Failing to Recommend Dismissal of Count 4**

Section 1692f of the FDCPA generally prohibits using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Selene argued for dismissal because the "alternative" Count 4, did not allege any conduct by Selene separate and independent from the conduct that forms the basis for Plaintiffs' deficient Section 1692e claim. *See Miljkovic v. Shafritz & Dinkin, P.A.*, No. 14-CV-635, 2014 WL 3587550, at *8 (M.D. Fla. July 18, 2014) ("A complaint will be deemed deficient under [§ 1692f] if it 'does not identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA.'"). Selene sought dismissal because Count 4's section 1692f claim is indistinguishable from the Section 1692e claim. [ECF No. 17.]

The Report rejected this argument finding that "the *Miljkovic* decision did not announce a per se ban on using the same conduct to support both a § 1692f claim and a § 1692e claim." [Report at 16-17.] This mischaracterizes Selene's argument. More importantly, in light of the provisions of this Objection both above and below, Plaintiffs failed to plead any conduct that could plausibly be considered unfair or unconscionable. On *de novo* review, this Court should sustain Selene's objection to the Report, and dismiss the alternative Count 4.

**H.      The Report Erred by Failing to Recommend Dismissal of Count 5**

As set forth above, particularly in Objections A through D, Plaintiffs Count 5—alleging violation of the FCCPA—cannot withstand the scrutiny of this Court's *de novo* review. The Report finds that Plaintiffs' allegation of a perceived, potential, and non-specific concern as to the timing of their inevitable foreclosure could be perceived as an actionable threat, or false statement

under the FCCPA.  [Report at 17-19.]  The Court should sustain Selene's Objections, make a contrary finding in light of the above, and Dismiss Count 5.

WHEREFORE, Defendant Selene Finance LP requests that the Court (i) sustain Selene's Objections to the Report; (ii) reject the Report to the extent challenged by Selene's Objections; (iii) dismiss Plaintiffs' Complaint with prejudice; (iv) award Selene its attorneys' fees and costs pursuant to § 559.77(2) and any other applicable provision of contract or law; and (v) award Selene such other and further relief as the Court deems proper.

Dated:  September 4, 2024                          Respectfully submitted,

*/s/ Brendan I. Herbert*
Brendan I. Herbert
Florida Bar No. 76925
Henry H. Bolz, IV
Florida Bar No. 043350
**POLSINELLI PC**
315 S. Biscayne Blvd, Suite 400
Miami, Florida  33131
T.:  305-921-1820 / F:  305-921-1801
hbolz@polsinelli.com
bherbert@polsinelli.com
cmoreno@polsinelli.com

-AND-

Sara D. Accardi, Esq.
Fla. Bar No. 106923
**BRADLEY ARANT BOULT CUMMINGS, LLP**
1001 Water Street, Suite 1000
Tampa, FL 33602
T: (813) 559-5500 | F: (813) 229–5946
Primary email: saccardi@bradley.com
Secondary email: jbrandt@bradley.com
*Counsel for Defendant, Selene Finance, LP*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify on September 4, 2024, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF electronic filing system which will automatically send a copy to all counsel of record in this case registered on the CM/ECF system.

<u>/s/ Brendan I. Herbert</u>
Brendan I. Herbert
