## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT PIERCE DIVISION

CLARISSA CRUZ, ROBERT ALLAN
MARTIN and KATRINA MARTIN,
individually and on behalf of all others
similarly situated,,

        Plaintiff,

vs.

                                Case No. 2:23-CV-14297-AMC

SELENE FINANCE, LP, a Delaware
Limited Partnership,

        Defendants.

_____/

### DEFENDANT SELENE FINANCE, LP'S RESPONSE IN OPPOSITION TO PLAINTIFFS' OBJECTION TO THE REPORT & RECOMMENDATION ON DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' JURY TRIAL DEMAND

### I. INTRODUCTION

The Report & Recommendation of the United States Magistrate Judge issued on August 23, 2024 ["**Report**"; ECF No. 90] is error free and should be adopted in all respects. Defendant Selene Finance, LP ("**Selene**") respectfully submits that the Objection to the Report [ECF No 97] submitted by Plaintiffs Robert Allan Martin, Katrina Martin (the "**Martins**") and Clarissa Cruz ("**Cruz**") (collectively, the "**Plaintiffs**") should be overruled and rejected. If any trial is necessary, that trial should proceed before the Court—not a jury—as Plaintiffs clearly waived their right to a trial by jury.

### II. BRIEF FACTUAL BACKGROUND AND REPORT SPECIFICS

Plaintiffs allege that after they failed to pay their respective Mortgages, Selene violated state and federal law by sending them letters to notify them of the default. [ECF No. 15.] These default letters were contractually required—Paragraph 22 of both the Martin and Cruz Mortgages spell out the mandatory default notice that must be sent. [ECF Nos. 39-1 at 11; 39-3 at 14.]

Plaintiffs' Mortgages also contain a waiver of the right to trial by jury applying to all actions "arising out of or in any way related to" the Mortgages.  [*Id.* ¶ 25.]  The Martin Mortgage is signed on the same page as the waiver, immediately below it.  [ECF No. 39-1 at 12.]  Cruz initialed the Mortgage directly below the waiver and signed on the next page.  [ECF No. 39-3 at 14-15.]  Despite these waivers, Plaintiffs demanded a trial by jury in their operative Second Amended Complaint.  [ECF No. 15 at 35.]

Selene filed a Motion to Strike Plaintiffs' Jury Trial Demand on May 13, 2024.  [ECF No. 39.]  Attached to the Motion (in order) are the Martin Mortgage, an assignment of the Martin Mortgage to the investor, U.S. Bank, the Cruz Mortgage, an assignment of the Cruz Mortgage to the investor, U.S. Bank, and a power of attorney from U.S. Bank to Selene dated November 2, 2023.  [ECF No. 39-1 thru 39-5.]  Plaintiffs opposed the Motion [ECF No. 65], and Selene lodged a Reply.  [ECF No. 71.]  Importantly, Selene's Reply included an earlier copy of the power of attorney from U.S. Bank—dated May 2, 2023, more than four months before the inception of this case.  [ECF No. 71-1.]  Both powers of attorney assign U.S. Bank's rights to enforce the Martin Mortgage and the Cruz Mortgage to Selene.  [*Id.*]

The Magistrate Judge held a hearing on Selene's Motion on August 14, 2024, and a copy of the transcript is attached hereto as **Exhibit 1**.  The Magistrate Judge noted that both powers of attorney were before the Court at the hearing—not just the one dated in November 2023.  [Tr. at 50.]  And, the Court stated that it would carefully read the language in Paragraph 1 of the powers of attorney in rendering its decision.  [Tr. at 53.]

The subject Report recommending that Plaintiffs' jury trial demand be stricken was issued on August 23, 2024.  [ECF No. 90.]  The Report specifically found that Plaintiffs' waivers were conspicuous, knowing, and voluntary.  [Report at 3-4.]  The Report found that Selene's standing to enforce the waiver was evident based on the following:

- Paragraph 13 of both Mortgages binds and benefits successors and assigns [Report at 4];

- Both Mortgages were duly assigned to the investor, U.S. Bank, which stood in the shoes of the original lenders [*id*. at 4-5];

- The powers of attorney (both from May 2023 and November 2023) effectively assigned U.S. Bank's rights and obligations under the Mortgages to Selene [*id*. at 5]; and

- Selene could enforce the waivers despite being a non-signatory to the Mortgages [*id*. at 5-6.].

The Report concluded with the finding that "Plaintiffs' claims fall within the scope of paragraph 25's waiver provision." [Report at 6.]

The Report recommended that Selene's Motion to Strike be granted and Plaintiffs' jury demand be stricken. [Report at 7.] Plaintiffs' Objections followed. [ECF No. 97.]

### III. STANDARD OF REVIEW

Selene does not quarrel with Plaintiffs' statement of the standard of review applicable to this non-dispositive Report. Under Federal Rule of Civil Procedure 72(a), the Court must adopt the Report unless its findings are clearly erroneous or contrary to law. As the Court will see, the instant Report is well-reasoned and makes an apt, error-free recommendation. Accordingly, the Report should be adopted in full.

### IV. SELENE'S OPPOSITION TO PLAINTIFFS' OBJECTIONS

#### A.    Selene's Standing to Enforce the Waivers is Evident

The Report based its finding of standing on the facts and the law. There was no error. The Report started with Paragraph 13 of both Mortgages and found that language to be critical. [Report at 2.] Paragraph 13 uniformly states: "The covenants and agreements of this Security Instrument shall bind . . . and benefit the successors and assigns of Lender." [ECF No. 39-1; 39-3, ¶ 13.] The Report went on to state that given this language, because the Mortgages were duly assigned to U.S. Bank, and the powers of attorney effectively assigned U.S. Bank's mortgage enforcement rights (including the sending of default letters) to Selene, Selene had standing to enforce the waiver.

[Report 4-5.]   The Report then went on to cite a host of case law providing that in these circumstances where the servicer is clearly acting as the agent or assignee of the original lender or its successors, the servicer can enforce the waiver.  [Report at 5-6.]

Plaintiffs fail to suggest that the Report's analysis was faulty, let alone clearly erroneous. Plaintiffs do not address the effect of Paragraph 13 of the Mortgages—that paragraph is not even mentioned in the Objection.  [*See generally* ECF No. 97.]  Nor do they take issue with the cases cited within the Report.  Instead, Plaintiffs advocate for an across-the-board rule that a non-party should never be able to enforce a jury trial waiver on the face of a mortgage.  [ECF No. 97 at 2-3; 4-5.]  In support, they primarily rely on the decisions in *Shallenburg v. PNC Bank N.A.*, No. 16-cv-810, 2016 WL 3525203 (M.D. Fla. June 28, 2016), and *Thompson v. Caliber Home Loans, Inc.*, No. 15-cv-21616, 2016 WL 278731 (S.D. Fla. Jan. 22, 2016).  [ECF No. 97 at 2-3.]

Those case are entirely distinguishable.  A cursory review of the *Shallenburg* decision is instructive.  In that case, there is no question that the servicer defendant failed to submit any evidence of its standing to the Court.  *Id.* at *2 ("PNC Bank does not allege any facts or supply any documentation affirming this assertion.")  Similarly, in *Thompson*, the servicer's motion did not address the effect of paragraph 13 or provide any documentation (like the powers of attorney before this Court) connecting the servicer to the original lender or one of its assignees.  *Id.* at *1-*2.  These cases provide a different fact pattern, and do not show a clear error, given the materials discussed in the Report entered by the Magistrate Judge.

Plaintiffs' second assertion of error with respect to the Report's standing conclusion is that the power of attorney (singular) does not provide Selene with standing—principally because it was not executed until November 2, 2023, after this case was filed.  [ECF No. 97 at 3-4.]  This argument is intentionally evasive unless Plaintiffs failed to read Selene's Reply or review the hearing transcript.  As Plaintiffs are aware, the record addressed in the Report contained not only the

November 2023 power of attorney, but also one dated May 3, 2023, which was attached to Selene's Reply. [ECF No. 71-1.] Both powers of attorney were before the Magistrate Judge and discussed at the hearing on the Motion. [*See, e.g.*, Tr. 50, 53.] As the May 2023 power of attorney was in effect more than four months before Plaintiffs filed this lawsuit, Plaintiffs' argument that the November power of attorney should not be considered is baseless and subject to immediate rejection.

As to standing, the remainder of the Objection argues that the power of attorney should be disregarded and the waiver deemed inapplicable because it did not specifically grant Selene the right to enforce the waiver, and the rights of the Lender and servicer could potentially diverge if the two instruments were sold separately—a possible contingency that has not occurred here. [ECF No. 97 at 4-5.] Tellingly, Plaintiffs cite no authority in support of this argument, but more importantly, the Report squarely addressed it. The Report states:

> U.S. Bank executed a Power of Attorney for the express purpose of appointing and designating [Selene] for specific duties, namely, executing documents necessary to enforce U.S. Bank's rights under its mortgage agreements. (DE 71-1). This necessarily included issuing the default notices at issue in this lawsuit. (DE 15-1; DE 15-2). Because U.S. Bank contractually appointed [Selene] to handle the matters at issue in the lawsuit, the Court finds that [Selene] qualifies as an "assign" within the meaning of paragraph 13 of the Cruz and Martin Mortgages. Because Plaintiffs also agreed that "assigns" would enjoy the benefits of all covenants in the mortgages, the Court finds that [Selene] has standing to invoke the jury trial waiver included in paragraph 25.

[Report at 5.] At the hearing, Plaintiffs conceded that their arguments against mortgage loan servicers' ability to enforce the waiver and the effect of the powers of attorney were regularly subject to rejection. [*See* Tr. 50 ("I'm not saying that we win this – that the plaintiffs have won this a hundred times out of a hundred. It's a mixed bag . . . .").] And, the Objection does no more than disagree with the Report—Plaintiffs provide no legal authority exposing the Report's findings as erroneous.

The Report was proper in every way. More to the point, Plaintiffs failed to demonstrate clear error or a decision contrary to law. The Objections should be summarily overruled and the Report adopted in full.

**B.     Contractually Required Default Notices are Within the Scope of the Waivers**

Unsurprisingly, the Report found that Plaintiffs' claims centered on the default notices—which Selene sent to Plaintiffs pursuant to the language required on the face of the Mortgages in paragraph 22 and in order to enforce its rights under the Mortgages—are claims that "arise out of and relate to the Cruz and Martin Mortgages." [Report at 6.] The Report supported this logically unassailable statement with citations to case law arriving at the same conclusion. [*Id.* at 6-7.] This finding was proper as a matter of common sense and a matter of law.

Plaintiffs' Objection seeks to challenge this finding. The Objection asserts that the act of sending a contractually required default notice resulting from an admitted breach of that contract is wholly unrelated debt collection activity that is independent from Plaintiffs' Mortgage contracts. [ECF No. 97 at 6-9.] Plaintiffs' Objection does not address the cases cited in the Report. Plaintiffs only previously mention those cases in a passing footnote contained in their Opposition to the Motion by claiming that the cases should be ignored because they are "extremely light on analysis." [ECF No. 65 at 10.] Regardless, in place of the case law cited in the Report, Plaintiffs primarily urge that three decisions should be considered instead: *Willis v. Carrington Mortgage Servs.*, 2016 WL 7494477 (M.D. Fla. May 4, 2016), *Brinegar v. Ditech Fin., LLC*, No. 16-cv-432, 2016 WL 6681377 (M.D. Fla. Nov. 14, 2016), and *Lynch v. Wells Fargo Bank, N.A.*, No. 18-cv-23560, 2019 WL 13202780 (S.D. Fla. June 19, 2019). [ECF No. 97 at 6-7.] Not one of these cases involves the sending of a contractually required default notice. Thus, neither these cases nor the similar cases cited in the Objection cast any doubt on the Report's conclusions.

The *Willis* and *Brinegar* cases can be dispensed with offhand as red herrings.  Both of those decisions involved a series of telephone calls made to the respective plaintiffs' cell phone having only a most attenuated (if any) connection to the underlying mortgages—not default notices required by the same mortgage containing the waiver itself—making these cases wholly inapplicable.  *See Willis*, 2016 WL 7494477 at *1; *Brinegar*, 2016 WL 6681377 at *1.  The *Lynch* case, too, is distinct and Plaintiffs' citations to that decision are inapposite.

In *Lynch*, the plaintiff's attorney sent the loan servicer a series of information requests under the Real Estate Settlement Procedures Act seeking clarification as to why a prior loss mitigation application had been denied.  *Id*. at *1-*4.  The servicer sought dismissal, in part, on the grounds that the plaintiff had failed to provide it with pre-suit notice and an opportunity to cure under mortgage paragraph 20.  *Id*. at *5.  For paragraph 20 to apply, the servicer had to establish that plaintiff's claims "arise[] from the other party's actions pursuant to this Security Instrument or that allege[] that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument."  *Id*.  The *Lynch* court held that the plaintiff's RESPA/loss mitigation claims were not sufficiently tied to the mortgage, finding "as Plaintiff has not alleged a breach of the mortgage, the Court finds that paragraph 20 of the Mortgage inapplicable to the allegations in this case and Plaintiff's claims arise exclusively under RESPA."  *Id*. at 6.  The court then denied an accompanying motion to strike the jury demand on the same basis.  *Id*. at 18-19.

The *Lynch* decision is inapplicable because the communications involved in that case involved duties that were created and governed by RESPA's loss mitigation and error resolution regulations.  *See generally* 12 C.F.R. §§ 1024.30-1024.41.  The parties' obligations to one another in that case were extra-contractual.  Conversely, in this case, Plaintiffs' claims against Selene arise out of a purely contractual obligation—the servicer's duty to send a Paragraph 22-compliant default letter with specific language required on the face of the mortgage loan instrument itself.

While Plaintiffs here spill a great deal of ink discussing *Willis*, *Brinegar*, *Lynch*, and like cases [ECF No. 97 at 6-9] those efforts are akin to forcing a round peg into a square hole, and do not suggest error.  The situation here—centered on conduct squarely governed by the Mortgages—is different.

The Report correctly held that the act of sending a contractually required default notice is conduct "arising out of or in any way related to" the Mortgages and well within the Paragraph 25 waivers.  Plaintiffs' Objections should be overruled and the Report should be adopted in whole.

**C.    The Report Properly Found the Waivers to be Conspicuous, Knowing & Voluntary**

The Report considered all required legal factors, noted that no single factor is determinative and that the Court's duty is to consider whether the waiver is unconscionable, contrary to public policy, or unfair.  [Report at 3.]  The Report then sided with the decisions in *Martorella v. Deutsche Bank Nat'l Trust Co*., No. 12-cv-80372, 2013 WL 1136444 (S.D. Fla. March 18, 2013) and similar decisions in the Southern and Middle Districts, finding:

> All of the court's observations in *Martorella* hold equally true for the identical jury waiver located in paragraph 25 of the Cruz and Martin Mortgages.  Like the *Martorella* court, this Court finds the Plaintiffs' waiver to be valid and enforceable.

[Report at 4.]  This finding was well reasoned and legally proper in all aspects.

Once again, Plaintiffs use their Objection to express the depths of their disagreement with the Report—not to demonstrate clear error.  Plaintiffs first claim that "the waiver is on the last page of the mortgages, it is the last provision of the mortgages, is the same font and size as the rest of the document and does not include space for Plaintiffs to initial."  [ECF No. 97 at 9.]  While some of these statements are true, not all of them are.  Plaintiffs ignore or hide from the following undeniable facts:

- Both waivers have bold-face headings [ECF No. 39-1 at 12; ECF No. 39-3 at 14];

- Both waivers are set apart in separately numbered paragraphs [*id*.];

- Both waivers are stated in unambiguous plain English [*id*.];

- The Martin Mortgage signatures appear on the same page as the waiver, immediately below it [ECF No. 39-1 at 12]; and

- The Cruz Mortgage **does** contain room for initials and **is** initialed immediately below the waiver.  [ECF No. 39-3 at 14.]

Plaintiffs go on to contend that the waiver can be disregarded because it does not specifically say that it might be enforceable by a non-party.  [ECF No. 97 at 10.]  The Objection cites no authority for this argument—beyond rehashing its arguments that non-parties should be barred from enforcing jury waivers across the board.  [*Id*.]  The Objection does not address that the Report considered this argument and found it wanting.  [*See* Report at 5 (concluding that Selene has standing to enforce the waiver despite Plaintiffs contrary arguments).]

In light of the above, the Report's conclusion that the waivers here were conspicuous, knowing, and voluntary is a conclusion with ample support in the record facts and the law.  It is correct throughout.  Plaintiffs failed to demonstrate the requisite clear error, and therefore, the Objection stands to be overruled and rejected, with the Report adopted in all respects.

WHEREFORE, Defendant Selene Finance LP requests that the Court (i) overrule Plaintiffs' Objections to the Report; (ii) adopt the Report as the ruling of the Court in all respects; and (iii) award Selene such other and further relief as the Court deems proper.

[*Signatures appear on following page*]

Dated:  September 16, 2024                    Respectfully submitted,

*/s/ Brendan I. Herbert*
Brendan I. Herbert
Florida Bar No. 76925
Henry H. Bolz, IV
Florida Bar No. 043350
**POLSINELLI PC**
315 S. Biscayne Blvd, Suite 400
Miami, Florida  33131
T.:  305-921-1820 / F:  305-921-1801
hbolz@polsinelli.com
bherbert@polsinelli.com
cmoreno@polsinelli.com

-AND-

Sara D. Accardi, Esq.
Fla. Bar No. 106923
**Bradley Arant Boult Cummings, LLP**
1001 Water Street, Suite 1000
Tampa, FL 33602
T: (813) 559-5500 | F: (813) 229–5946
Primary email: saccardi@bradley.com
Secondary email: jbrandt@bradley.com
*Counsel for Defendant, Selene Finance, LP*

## CERTIFICATE OF SERVICE

I hereby certify on September 16, 2024, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF electronic filing system which will automatically send a copy to all counsel of record in this case registered on the CM/ECF system.

*/s/ Brendan I. Herbert*
Brendan I. Herbert