# Exhibit 1

```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                     CASE NO. 23-CV-14297-AMC
 3

 4    SALLY ARGONA, et al.,              Ft. Pierce, Florida

 5              Plaintiffs,              August 14, 2024
      vs.
 6
      SELENE FINANCE, LP,                Pages 1 to 66
 7
                   Defendant.
 8    _____

 9
                    MOTION HEARING VIA TELECONFERENCE
10           BEFORE THE HONORABLE RYON M. McCABE
                UNITED STATES MAGISTRATE JUDGE
11           (TRANSCRIPT OF DIGITAL AUDIO RECORDING)

12    APPEARANCES:

13    FOR THE PLAINTIFFS:      SCOTT C. HARRIS, ESQ.
                               MILBERG COLEMAN BRYSON PHILLIPS
14                             GROSSMAN, PLLC
                               900 W. Morgan Street
15                             Raleigh, North Carolina 27603
                                    -and-
16                             EDWARD H. MAGINNIS, ESQ.
                               MAGINNIS HOWARD
17                             7706 Six Forks Road, Suite 101
                               Raleigh, North Carolina  27615
18

19    FOR THE DEFENDANT:       SARA DUNN ACCARDI, ESQ.
                               BRADLEY ARANT BOULT CUMMING LLP
20                             100 North Tampa Street
                               Suite 2200
21                             Tampa, Florida 33602

22    TRANSCRIBED BY:

23                             PATRICIA DIAZ, FCRR, RPR, FPR
                               Official Court Reporter
24                             United States District Court
                               400 North Miami Avenue, 11th Floor
25                             Miami, Florida 33128
                               (305) 523-5178
```

1          (PROCEEDINGS TRANSCRIBED FROM DIGITAL AUDIO RECORDING.)

2          THE COURT:  I am calling the case of Cruz versus Selene

3     Finance, 23-CV-14297.

4          Let me have appearances, starting with the plaintiff,

5     please.

6          MR. MAGINNIS:  Good afternoon, Your Honor, Edward

7     Maginnis for the plaintiff, along with my co-counsel, Scott

8     Harris and Katherine Ann Robinson.

9          THE COURT:  All right.  Defense.

10         MS. ACCARDI:  Good afternoon, Your Honor, Sara Accardi

11     on behalf of the defendant Selene Finance, and I've also got my

12     client here on the Zoom, Christopher Bass.

13         THE COURT:  All right.  Scott Harris, you are -- who is

14     the other one there, Katherine?

15         MR. HARRIS:  She is an associate with our firm, Your

16     Honor.

17         THE COURT:  Okay.  Excellent.

18         So, we are here on two motions.  We have a motion to

19     dismiss, and there is also a motion to strike a demand for jury

20     trial.

21         Defense, I'll turn it over to you, but I have a few

22     questions first.  I'm going to let everyone make all the

23     arguments they want to make, but I do have some questions.  So

24     I want to start with those, and I will sort of bounce the

25     questions back and forth between you.

```
 1              I guess this is first a question for the plaintiff.

 2              I have searched the record and every version of the

 3     default letter that I find claims to be page one of three, and

 4     yet, I never find a page two or a page three.

 5              Am I correct about that?

 6              MR. MAGINNIS:  I would have to look, Judge, and see if

 7     we've improperly not included an entire document.  I can tell

 8     you that page two does have text which is relevant.

 9              Page three is just the end of a disclaimer, but we

10     could get that to the Court immediately if the Court is not

11     able to see a version of the letter that has all three pages,

12     and specifically page two, because page two does have some text

13     which is at issue.

14              THE COURT:  Yeah.  I am going to ask -- I am going to

15     instruct my law clerk who's on the line right now go back -- it

16     should be attached to the amended complaint.  Right?

17              MR. MAGINNIS:  It should be, yeah.

18              THE COURT:  Go to the amended complaint, Izzie, and

19     look again.

20              THE CLERK:  I'm here right now.  I mean, I'm looking at

21     is it right now, DE 15.  There is Exhibit A.  Exhibit A is --

22     like the text of Exhibit A is page one of two.  Page two of two

23     is just the first page of the notice of the letter, and it goes

24     straight to Exhibit B, and that's the same thing, so there is

25     no page two or page three.
```

```
 1            MR. MAGINNIS:  What would be the best way to get that
 2    to you, Judge?
 3            We could e-mail you a copy of the letter right now.
 4            THE COURT:  Well, let me ask the defense.
 5            Defense, did you also put it in?  I thought you may
 6    have attached the letters in something in some of the papers
 7    you submitted to me.
 8            MS. ACCARDI:  I, did Your Honor, yes.  They are
 9    exhibits to, I believe our motion to dismiss, and we only also
10    attached the first page since that was all that the plaintiff
11    had attached to their complaint.
12            I didn't want to bring in something that is external
13    since it's a motion --
14            THE COURT:  All right.  Which is an issue, because I am
15    bound by what's on the complaint, unless the defense agrees
16    that I can look at it.
17            Defense, do you agree?
18            Do you consent to that?
19            I'm not going to look at anything that's not within the
20    four corners of the complaint, quite frankly.  Although, in
21    fairness, you did give me the mortgage notes, which were not
22    attached to the complaint either.
23            MS. ACCARDI:  That's true, Your Honor.  I think an
24    exception for that is that those are also publicly available.
25    They were available because they were recorded in the official
```

1    records.  I think those could be judicially noticed.  The

2    default notices could not, and I don't think we would consent

3    to anything that wasn't attached and incorporated on the

4    complaint.

5         I know Mr. Maginnis had mentioned additional language

6    on page two.  I don't know of any that was referenced in the

7    complaint, so if there is additional language that he wants to

8    base his claims off of, I think then we would need to, you

9    know, include the full document.

10        THE COURT:  Not that I'm going to allow it but,

11   Mr. Maginnis, what is the language?

12        What's the gist of the language that's on page two?

13        MR. MAGINNIS:  It's not dissimilar -- ultimately,

14   Judge, I see where you're coming from, and we're not asking to

15   convert this outside of the pleadings, but there is three

16   similar contentions that we contend violate the statute and the

17   one that's on the second page, which may not be in front of the

18   Court, is a phrase that says, "If you send an amount less than

19   the full amount due, Selene can apply the amount received to

20   your account and proceed with the applicable foreclosure

21   proceedings without further notice to you."

22        We believe that's false in the same way that some of

23   the phrases on page one are false and for the same reasons.

24   So, ultimately -- obviously, we would prefer to have the Court

25   relying on a full document, but ultimately, if what we have is

1    page one, it has the same similar statements that we contend to

2    be false based upon the restrictions from RESPA.

3            THE COURT:  Okay.

4            I don't know that that additional language you are sort

5    of proffering to me is really immaterial to the way I'm

6    thinking about the case, but as we proceed through this

7    argument, if I think it is, I will alert you and then you

8    can -- well, I don't know what you'll have to do about that,

9    quite frankly, because it's not on the record right now.

10           All right.  My next question is this; as I read the

11   case law -- and I will give this question first to the

12   defendant, and then I will let the plaintiff have a response.

13           As I read the case law, the issue of whether or not

14   this letter -- whether or not the letter constitutes a threat

15   and whether or not it's false or misleading are both jury

16   issues, and my job would be to determine, whether based upon

17   the allegations on the complaint, could a reasonable jury who

18   has been -- who has been instructed to use the least

19   sophisticated consumer standard, would such a reasonable juror

20   with that instruction in front of him or her, would they be

21   able to find this to be a threat or would they be able to find

22   it to be false or misleading.

23           Do you disagree that that's sort of the analysis that I

24   should be making?

25           MS. ACCARDI:  I don't think so, Your Honor.  I do think

1    it is -- ultimately, it would be a fact question.  I think it's

2    still a fact question that could be resolved, honestly, on a

3    motion to dismiss and has been by the Southern District in the

4    Wise case, obviously, and actually, also by the Eleventh

5    Circuit in Madura.

6            So, it's not something that is prohibitive of

7    determination on a motion to dismiss, Your Honor.

8            THE COURT:  Okay.  Plaintiff, do you take a different

9    view?

10           MR. MAGINNIS:  Judge, yeah.  We agree with your

11   position.  Ultimately, we think it is a question of fact for

12   the jury or perhaps summary judgment.  We believe that it's

13   plainly a threat, plainly misleading, but certainly not

14   something that could be resolved against us on a motion to

15   dismiss taking our allegations as true.

16           The Wise case is an example that counsel has used in

17   their brief, and I think what the theory of the Wise case is

18   ultimately -- it's almost a truism.  They say that the

19   communication is a truism because they say, well, we haven't

20   recorded the judgment, but we could at any moment.  All of the

21   conditions of precedent have been met and so the letter is not

22   technically false because you could record a judgment at any

23   moment.

24           Whereas, we contend not only does Selene not act

25   according to the letter, they can't.  They haven't met any of

1   the conditions precedent associated with doing the things that

2   they contend they do in the letter.

3        So, it's certainly not something that we think is a

4   motion to dismiss question.  The question for us is can we

5   ultimately show the Court at a summary judgment standard that

6   on a liability basis it's plainly a threat, but if the Court is

7   inclined to think it's a jury question, we certainly wouldn't

8   disagree with that.

9        THE COURT:  All right.  Let me move to my next

10  question, and then, again, I'm going to give you all a chance

11  to say whatever you want to say.

12       As I understand one of the defense arguments, the

13  defense argument essentially is, we are required by TILA to

14  send out a notice at the 45-day mark, doing, among other

15  things, warning the homeowner of the possible risks, and one of

16  those is foreclosure.

17       So, they are under a statutory obligation to send out

18  this letter of warning that a foreclosure may result if they

19  don't cure this thing.  They're also obligated by their note

20  and mortgage documents to send this to establish a cure date

21  and that they've done it.  That's what this letter does.

22       This letter is in compliance with their mortgage

23  document and with TILA, which requires them to send the letter

24  warning of the possible risks.  And I understand your argument

25  as to why it's false, but my question to you, plaintiff, is

1    what would you have them say?

2         How could they have written this letter and comply with

3    what they are supposed to do?

4         MR. MAGINNIS:  Well, yeah, and the case that was cited

5    by both parties in this was -- Ms. Accardi certainly knows

6    about it more than I do.  It's her case, and ultimately, the

7    Court found that you can have a TILA disclosure, you can follow

8    the rules of TILA and still violate the FDCPA if it's also an

9    effort to collect debt and you make a misrepresentation.  I

10   think in that case it was the amount.

11        So, our problem is not with sending a letter, and our

12   problem is not with the usage of the plain text of the mortgage

13   documents or what TILA would have them do.  And what the

14   mortgage document says is you've got to give them a deadline

15   and it's got to be not less than 30 days.

16        So, the problem with the letter is they could fix it by

17   moving that deadline to something greater than 30 days that

18   puts them on the line with Fannie Mae's obligations.

19        There is additional language in there that we contend

20   -- talking about the reality of the situation.  We have no

21   problem with notifying customers of the potential for

22   acceleration of the foreclosure if they continue to default,

23   but that's not what it says.  It says, you have to pay this by

24   this date or else -- essentially, your head is on the

25   guillotine and you're at our mercy for acceleration of

1    foreclosure, and we have the ability to do that.

2         And the fact is that borrowers have far greater

3    protections than that based upon federal law.

4         So, they could include the text from the mortgage and

5    use a language that's consistent with 120 days if they actually

6    accelerate and foreclose, or they can use additional text to

7    make the letter true.

8         THE COURT:  By the way, you agree that, obviously,

9    accelerating and foreclosing are two different things, and

10   although the Regulation X, I guess, prohibits them from

11   starting a foreclosure until 121 days, but it doesn't prohibit

12   them from accelerating.  Right?

13   MR. MAGINNIS:  Well, in Florida law -- typically,

14   acceleration under Florida law comes with the foreclosure, and

15   I know we're here on a motion to dismiss and not on the

16   evidence, but ultimately that's what we really anticipate the

17   evidence is going to show, given how far along we are on the

18   case.

19        Yeah, we've plead that Selene does not accelerate in

20   line with the letter, that they do it in context with the

21   filing of a foreclosure lawsuit.  So, actually acceleration

22   takes place after foreclosure in Florida.

23        The referral of foreclosure comes at 120, and the

24   acceleration comes when they file a lawsuit, but they are two

25   different things.

1          THE COURT:  All right.  Defense, I will give you a

2    chance to respond to what he said, if you want to.

3          MS. ACCARDI:  Sure, Your Honor, I think the distinction

4    here is a couple of things.  The immediacy, I think, is the

5    number one important distinction there, is that plaintiffs read

6    into the language which is literally, at least from what is

7    attached to the complaint now, a single line, that says, "We

8    may accelerate if payment is not due," and they read into it

9    this immediacy that we will accelerate the next day.

10         And that is nowhere present in any of the notices that

11   are at issue.  There is no deadline prescribed as to when we

12   will take that step.  Nor is -- I mean, considering the

13   language made, nor is even that Selene will take any action at

14   all, right, definitely equivocal language there.

15         So, I would think, to comply with the plaintiffs'

16   reading of this, in the 120 days, you know, assuming again

17   since we have to, since that's what's plead in the complaint

18   that Selene, you know, doesn't move forward with acceleration

19   until 120 days, assuming that is correct, then we would have to

20   include in this notice something to the effect of, you know,

21   your deadline is at the 120-day mark, and then we will

22   immediately accelerate and foreclose the very next day, you

23   know, which is just not practical under the circumstances, and

24   is not required under the mortgage and would create a whole

25   other host of other issues, I think, Your Honor.

1          And you had mentioned and teed up my first argument

2     that I would make, really, is that based on TILA and the

3     expressed terms of the mortgage, these letters do comply with

4     what is required of Selene.  And plaintiffs' interpretation

5     would place a whole load of additional burdens and expectations

6     on something that is just not required by either federal law or

7     the terms in the mortgage.

8          THE COURT:  Some of the case law in some of the default

9     letters referenced in cases that I've read, which is one of the

10    reasons I was interested in what's on the other pages of this

11    letter, there is sort of a catchall provision that says, but we

12    will not foreclose you in violation of the contract terms or

13    the law, something like that.

14         And a lot of courts have relied upon that, but this

15    letter doesn't seem to have that.

16         And is that an issue for you, to the defense?

17         Does that -- in other words, does that distinguish this

18    letter from the letters in those other cases?

19         MS. ACCARDI:  I think there is a few distinguishable

20    points, and I do think, to Your Honor's credit, the entire

21    letter needs to be read in conjunction with each other, right.

22    It's not just singular terms.  There is a provision, I believe,

23    on the second page, saying something to the fact that we will

24    pursue, you know, options available to us pursuant to the law,

25    basically, and to the terms of the security agreement.

1          I don't think it's exactly on point or identical to the

2     language you're referencing, but there is a reference to that.

3     And I think the distinguishing factor from a lot of these

4     cases, Your Honor, is the language that is cited, right, the

5     threat, the purported threat.  And, again, going back to this

6     immediacy argument is that you have to kind of compare the two

7     letters and say -- I know a lot of the line of case law that

8     the plaintiffs rely on heavily is the Seterus line of questions

9     that Mr. Maginnis' firm was involved in, and those letters

10    particularly have much more immediacy elements in them.

11         They literally make the statement that if, you know,

12    the default is not cured, we intend and will accelerate, and we

13    -- I can quote the exact language to Your Honor, but it says,

14    you know, immediate is in that language.

15         That is one of the most distinguishing factors,

16    honestly, is this immediacy key, and the fact that that

17    immediacy language is included in a lot of these default

18    notices and it is expressly not included in Selene's.

19         THE COURT:  All right.  Those are my questions.

20         So, defense, we will start with you.

21         What else do you want to tell me?

22         MS. ACCARDI:  Sure, Your Honor.

23         So, you kind of really hit on my first argument which

24    is going to be the default notice is complying with the

25    mortgage terms and TILA, so I will kind of skip that one since

1    it seems like have you a fairly good understanding of that.

2         I will go straight to kind of the heart of the

3    argument, which is the FDCPA claims and whether they constitute

4    a threat, and if so, a threat that cannot be taken, basically,

5    a legally impermissible threat.

6         So, the case law on that -- I had previously mentioned

7    the Wise case, Your Honor.  I think that one is particularly

8    instructive, where it basically said that a warning that a

9    servicer could have a sheriff sell a debtor's property in order

10   to pay off the judgment was a reality-based reminder and not a

11   threat to take action that it could not take.

12        I think similarly here, Your Honor, again, at this

13   point I think we've narrowed things at least based on the

14   current allegations of the complaint to a single line in the

15   default notice that states failure to clear the default on or

16   before the date specified may result in acceleration.

17        That is what we're talking about.

18        So, to me, reading that is very akin to the Wise case

19   were it's just providing you a reminder of what is going to

20   occur.  Right?

21        It "may" occur, not even will occur, shall occur, we

22   intend to take this action immediately, none of that language

23   is present.

24        THE COURT:  I think one of the things I have to

25   consider is would an unsophisticated person who reads that

1  believe that on the day following the expiration date they

2  could get a foreclosure suit filed against them, and you take

3  the position that even an unsophisticated person who reads that

4  would not come to that conclusion?

5        MS. ACCARDI:  I would, Your Honor.  I think -- to that

6  conclusion, it's -- you have to give meaning to the words there

7  included, and I think under the least sophisticated consumer

8  standard, even -- I think it's the -- I think it's the Clomon

9  case out of the Second Circuit states that, "The least

10 sophisticated consumer is presumed to have a rudimentary amount

11 of information about the world, and a willingness to read a

12 collection notice with some care."

13       I think that's what it comes down to, is they have to

14 read it with some care.  Some care, if you read it, even just

15 that one singular line, it's going to say, we may take this

16 action, or we may not.  I think both of those are equally

17 available, and understanding terms, it doesn't state a present

18 intention to do anything is really the key thing there, Your

19 Honor.

20       THE COURT:  Okay.  Thank you.

21       MS. ACCARDI:  Sure.

22       Then I also wanted, and I think I also previously

23 mentioned, the Madura case.  That is an Eleventh Circuit case,

24 and in that one the Court held that indicating a matter may be

25 referred to an attorney if payment is not made is not a

1    deceptive practice.

2           And I think that one is -- well, I know the Eleventh

3    Circuit hasn't, obviously, ruled on this specific issue.  That

4    is pretty close in the fact of the unequivocal or the

5    distinction between equivocal and unequivocal language, right,

6    that may refer to an attorney was not actionable under the

7    FDCPA.

8           Additionally, I think that kind of probably covers my

9    argument with regards to whether there was a threat made.

10           I will say the default notices, like I said, simply

11    state an intention that, you know, acceleration may result,

12    which is very -- will result, honestly, if the default was not

13    resolved within the time period allowed for, that would happen.

14    That's, obviously -- you know, unfortunately, Selene does

15    foreclose on borrowers to the extent that they don't bring

16    their loans current.  That is legally permissible, you know,

17    under the terms of the mortgage, a step that Selene can take if

18    certain conditions, obviously, are not met by the borrower.

19           I think that would cover that, Your Honor.

20           I would move to the false representation.  So, really,

21    under the FDCPA this would be 1692(e)(10), excuse me, and that,

22    again, I think -- the plaintiffs, I think, rely on a host of

23    cases, none of which are really in the persuasive authority,

24    none of which are in Florida.

25           Most of them are, it looks like, Seventh District,

1    Seventh Circuit and Ninth Circuit, going to whether the

2    threats, purported threats included are legally cognizable, so

3    whether Selene could actually accelerate these loans.

4          And most of the case law I think relied upon by the

5    plaintiffs state the opposite.  Really, it's -- a lot of these

6    cases -- the Ruth case out of the Seventh Circuit threatened to

7    share plaintiffs' information when the creditor was barred from

8    doing so pursuant to statute.

9          So, objectively, the creditor could not take the action

10   that they were purportedly threatening to take.

11         The same thing in the Gonzalez case, Your Honor, and in

12   that the Ninth Circuit threatened to report on a debtor's

13   credit when it was legally barred from doing so, and then the

14   Haddad case out of the Northern District of Illinois threatened

15   to continue to incur charges when charges were not legally

16   permissible to be added to the account under the contract

17   terms.

18         So, I think that that portion of it, and in terms of

19   the false representation, paragraph 22 of the mortgage

20   specifically provides that if the default is not cured on or

21   before the date specified in the notice, a lender, at its

22   option, may require immediate payment and all in full of all

23   sums secured by the security instrument and may foreclose.

24         And then Section 6C of the note states that, "The note

25   holder may send written notice, and if the borrower does not

1    pay the overdue amount by a certain date, the note holder may

2    require the borrower to pay immediately the full amount of

3    principal which has not been paid, plus interest."

4           So, pursuant to the terms of the mortgage, Selene does

5    have the legal authority to accelerate on loans once they go

6    into default.

7           Then I will skooch on, Your Honor, to Section 1692f of

8    the FDCPA, that's kind of the catchall provision.  That's

9    another cite, I believe the third count of the complaint.

10          Pursuant to that provision, Your Honor, "A debt

11   collector's act in collecting a debt may be unfair if it causes

12   injury to the consumers that is substantial, not outweighed by

13   countervailing benefits to consumers, and not reasonably

14   avoidable by the consumer."

15          A few things to unpack there, Your Honor.

16          I think if it causes -- so, that -- excuse me, I didn't

17   quote.  That's the Bryant case out of the Southern District,

18   Your Honor.

19          First thing I think would be causes injury to the

20   consumer.  That will be brought up and I will talk about that

21   more when we discuss the negligent misrepresentation claim,

22   Your Honor, but there is really no actual damages here that are

23   alleged that are recoverable, so I think that portion of the

24   injury portion would be lacking here.

25          Again, with the substantial in terms of proving this

1    claim, it has to be a substantial injury.  I mean, I think

2    that -- it's alleged in the complaint all these debtors that

3    are at issue allege -- they admit that they were in debt,

4    excuse me in default of their loan obligations, and they don't

5    deny that they owe this money.  So, I think, whether they

6    actually paid as a result of the default notice or did not, I

7    don't know how you're claiming a substantial injury when they

8    were otherwise legally obligated to pay sums.

9         And there have been no allegation that any of the

10    default notices have inaccurate amounts or charges or anything

11    to that effect.

12         THE COURT:  I didn't catch that before, so you're

13    saying 1692f has as an element that there has to be an injury?

14         MS. ACCARDI:  That's -- per the Bryant court out of the

15    Southern District, yes, Your Honor, the Court held that a debt

16    collector's act in collecting a debt may be unfair if it causes

17    injury to the consumer that is substantial, not outweighed by

18    countervailing benefits and not reasonably avoidable by the

19    borrower.

20         THE COURT:  All right.  Bryant, I will go look at that

21    case.

22         MS. ACCARDI:  Sure.

23         I can give you the citation if that's easier, Your

24    Honor.

25         THE COURT:  Do you have it?

1            MS. ACCARDI:  I do, yes.  It's 2017 WL 2955532.

2            THE COURT:  Okay.  Great, thank you.

3            MS. ACCARDI:  And I think wrapping that one up, the

4    third element, not reasonably avoidable by the consumer,

5    obviously, in this situation, had the borrowers remained

6    current on their loan obligations a default notice would have

7    never been sent to them.

8            Then the second portion of the analysis of the 1692f

9    claim would be whether the conduct that is alleged with regards

10   to the 1692e claim is separate and apart from the conduct that

11   is alleged with regard to the 1692f claim.

12           The Miljkovic -- I probably messed that up, sorry, Your

13   Honor -- out of the Middle District -- I will give you the

14   citation since I can't say that name.

15           THE COURT:  That's fine.  I have that one already.

16           MS. ACCARDI:  Thank you.  I probably got it very wrong.

17           The Middle District stated there that a complaint will

18   be deemed deficient under 1692f if it does not identify any

19   misconduct beyond which the plaintiffs assert violate other

20   provisions of the FDCPA.

21           The default notices form the basis for all of the

22   plaintiffs' claim under the FDCPA here, and, so, for that

23   reason, I think the 1692f claim would fail since it doesn't

24   allege this separate conduct.

25           That same court, Your Honor, held that in order to

1   proceed under the 1692f, the appellant is required to allege

2   facts shown that the least sophisticated consumer would or

3   could view the subject conduct as partial and unjust or as

4   unscrupulous and unethical.  So, these additional allegations

5   would need to be present, and additional facts supporting them

6   would also need to be present.

7          THE COURT:  Can you give me an example of -- what type

8   of practice would qualify as a subsection F practice that would

9   not also be a subsection E practice?

10          MS. ACCARDI:  I think, Your Honor, it would have to be

11   -- so, unscrupulous or unethical I think that that could be one

12   where -- if you -- I have seen some of these cases where people

13   would get on the phone and tell them you need to contact your

14   family to pay this debt off, if you don't do that then we're

15   going to immediately foreclose on your home when they have no

16   right to foreclose on their home, so I think the conduct is

17   obviously ratcheted up a bit is what I've seen.

18          THE COURT:  I just want to understand conceptually how

19   the statute works.

20          So take that example, someone writes a -- a bill

21   collector writes a letter saying we are going to foreclose on

22   your home.  They have no right to foreclose on your home.

23   Obviously, that's an E claim.

24          MS. ACCARDI:  Correct.

25          THE COURT:  And then the plaintiff pleads it as an F

1    claim as well and says it's an unfair, unethical practice.  You

2    say the F claim has to be dismissed because it's already plead

3    as an E claim.

4         MS. ACCARDI:  Well, I mean, I think regardless it would

5    be duplicative, right.  So they couldn't recover under both,

6    and I think it would be that additional conduct of what was the

7    manner in which that statement was made, you know, did he call

8    friends and family when he did it, you know, things of that

9    nature that would draw it out of just the E category and kind

10   of make it a separate -- not only was it potentially a false

11   threat, but the manner in which it was provided was unethical

12   or unscrupulous.

13        THE COURT:  Okay.

14        MS. ACCARDI:  I now move on to the FCCPA claim, Your

15   Honor.

16        For that one, under the section alleged, which is 15 --

17   excuse me, 55972, subsection 7, "Courts will consider whether a

18   practice is abusive or harassing as they consider the frequency

19   of the contract, the legitimacy of the claim, the creditor's

20   claim, the plausibility of the debtor's excuse, and the

21   sensitivity or abrasiveness of the personalities.

22        That's the Brown case out of the Middle District tells

23   that.

24        The Middle District in Savage found that that the

25   plaintiffs failed to state a claim under 559.7227, where the

1    subject letter stated foreclosure proceedings would not be

2    commenced until allowed by applicable law.

3         So, I think that would be a key distinction that is not

4    quite before the Court I guess at this point, Your Honor, but

5    something that could come into play.  And I think also for the

6    reasons that we've already discussed regarding the FDCPA, as

7    I'm sure Your Honor knows, they go hand in hand, so I think the

8    FCCPA claim would also fail for -- the separate reason, really,

9    is that the claims alleged are not abusive or harassing because

10   they don't fall within the parameters that are really set forth

11   under the FCCPA claim.

12        There is no claim that, you know, we sent, you know,

13   20 million letters to the borrowers or anything to that effect,

14   or claim, you know, that the debt amounts included in the

15   letters was illegitimate or not founded or things of that

16   nature.

17        THE COURT:  Okay.

18        MS. ACCARDI:  Lastly, the negligent misrepresentation

19   claim, Your Honor, I will go straight to the point for that

20   one.

21        Critical and actual injury is an element of negligent

22   misrepresentation.  The Saltero case out of the Southern

23   District held that if no harm is shown, an action for negligent

24   misrepresentation fails on the merits.

25        In this case, Your Honor, plaintiffs failed to

1    demonstrate that they suffered an actual injury due to the

2    alleged misrepresentations.  They just really boldly assert

3    that they suffered some financial damage and injury or that

4    they had an informational injury.  However, the Court in

5    Barilla held that the plaintiffs were alleged that they were

6    injured by satisfying their contractual obligations.

7            The Court is aware of no case law to support that

8    contractually owed payments are actionable losses within the

9    meeting of Florida negligent misrepresentations law.

10           THE COURT:  What are the damages available under the

11   statute, by the way?

12           When someone wins one of these, under the FDCPA, what

13   do they get?

14           MS. ACCARDI:  I think it depends on the avenue.   In

15   this case, Your Honor, from my understanding, statutory damages

16   is one availability, and then actual damages would be kind of

17   depending on the violation, Your Honor.  So, if they paid

18   amounts that were not due and owing, so in the situation that

19   they are claiming that the default notice had the wrong amount

20   and they claim -- and they paid that amount and then they could

21   have had interest on that amount kind of thing, that, I think,

22   would be an actual loss that would be cognizable under the

23   statute.

24           Pain and suffering to a certain extent is available,

25   obviously difficult to prove I think, Your Honor.

1          And I think that that would be kind of the main ones.

2          Here, again, it's mainly just -- plaintiffs have

3   described their injuries as informational injury, that they

4   might have taken different actions had they had more

5   information, not that they even really definitively took any

6   action on the default notices at all.

7          THE COURT:  Okay.

8          Do you know, does Florida law allow nominal damages for

9   a negligent misrepresentation case?

10          MS. ACCARDI:  Not to my understanding.

11          No, Your Honor, I think based on my understanding of

12   the Soltero case, that's a Southern District case but, again,

13   you have to have harm shown, and I think -- yeah, the Williams

14   case out of the Northern District of Alabama says, "In the

15   absence of an actual injury resulting from the debtor's

16   reliance on the, you know, on the misrepresentations, they

17   cannot establish a prima facie case for negligent

18   misrepresentation."

19          So, I think you would have -- not all damages would be

20   sufficient.  You would have to prove some amount of actual

21   injury, whether it's nominal amount, you know, mailing, if

22   sometimes if you had to send in mailing notices, things like

23   that.  You could recover postage, things of that nature, but

24   you would still have to prove that.

25          THE COURT:  Okay.  All right.  Is that it?

1          MS. ACCARDI:  That's it, Your Honor.

2          THE COURT:  All right.  Mr. Maginnis.

3          MR. MAGINNIS:  Thank you, Judge.  I will try to mirror

4    Ms. Accardi's arguments for ease of the Court.

5          First, starting with what she wrapped up in response to

6    some of your questions, the immediacy piece in the cases

7    involving "may."  The "may" cases -- there are two issues for

8    the Court to be aware of.  One, we have the LeBlanc case in the

9    Eleventh Circuit where the Eleventh Circuit found in a letter

10   that said, if you don't pay -- and I'm paraphrasing, of

11   course -- you may refer this to an attorney to consider whether

12   the attorney would want it.

13         The Eleventh Circuit found exactly what the Court was

14   alluding to in the beginning, which is, the least sophisticated

15   consumer might view that as a threat that they're actually

16   going to file the suit, but it's not just that.  That's one

17   aspect of the matter.

18         With "may," and Ms. Accardi said it, what may has to

19   mean is, we may or may not, and both of those imply that you

20   can.  You can, you just may or you may not.  You can be

21   benevolent or you can make a business decision to do it or not

22   do it, and our whole point is that they can't and they don't.

23         And we believe that the evidence -- we plead that they

24   can't and they don't, and we know the evidence is going to show

25   that they can't and they don't.

1          So, "may" is just as harmful in that because what it

2    does is that it has the borrower think, okay, I'm right on the

3    edge of the cliff.  If I don't meet this deadline, I will have

4    to either come up with this money that I'm struggling to have

5    or I'm going to have to reach out to them and do some sort of

6    loan mod, and the negotiation is really strongly in their favor

7    at this point, when the reality is they are not at the edge of

8    the cliff.  They have time.  They can tread water and remain 30

9    to 60 days behind forever.

10          They can get their act together and get caught up, and

11    they have months to do that because federal law protects them,

12    and Ms. Accardi was very careful to say, "under the terms of

13    the mortgage we can do this," and that's because under federal

14    law they can't.  And they know that.

15          THE COURT:  Because they have to wait for the 120 days.

16    Is that your point?

17          MR. MAGINNIS:  Correct.  Correct, on a federally backed

18    mortgage, RESPA says you cannot refer the matter for

19    foreclosure until you are 120 days past due, which means,

20    mortgage is due on January 1st.  February 1st -- they send the

21    letter out February 15th.  If you make any payment to cover

22    January, you are no longer January past due, now you are

23    starting from February, and you have to be four months straight

24    in arrears before they can refer it to an attorney for

25    foreclosure.  So, this "under the terms of the mortgage" is

 1    false and that's the whole point.  They want to state it's the

 2    reality of the situation, but it's not.

 3         The Moore case is another one that goes into it with

 4    that disclaimer, and, again, we would be fine with the whole

 5    letter coming in, Judge, because it doesn't have that

 6    disclaimer in it.  The Moore -- and, certainly, what's in front

 7    of the Court doesn't have that disclaimer.

 8         The Moore case, it's Eleventh Circuit, and so, we -- I

 9    don't think it's a correct decision.  Basically, what it found

10    was the borrower -- if you put in an as allowed by law, the

11    borrower should have an understanding of what the laws

12    regarding foreclosure are such that they could understand

13    pieces of the letter, which certainly doesn't sound like the

14    least sophisticated consumer to me, but it is the Eleventh

15    Circuit law but it doesn't apply here.  There is no

16    disclaimer --

17         THE COURT:  The only reason it doesn't apply is because

18    this letter doesn't have that extra language.

19         Right?

20         MR. MAGINNIS:  As to the foreclosure piece, and what

21    the Barilla court found in the Seterus case, which obviously

22    Seterus has that language, is they said, well, that disclaimer

23    doesn't apply to acceleration either, so it doesn't apply for

24    two reasons.

25         THE COURT:  By the way, while we are on that point, she

1  gave me the mortgage documents, which are not attached to your

2  complaint.  I can consider them as long as you don't dispute

3  their authenticity.

4       Do you dispute the authenticity of the documents she

5  attached to her motion to dismiss?

6       MR. MAGINNIS:  I don't know of any basis to dispute it.

7  As far as I know, they were pulled from the public records, and

8  counsel is right that they are publicly available, and these

9  are uniform instruments.

10      THE COURT:  All right.  I appreciate the candor.

11      Keep going.

12      MR. MAGINNIS:  Yeah, that would be -- winning that way

13 would not be the way to win because I would just lose next

14 week.  So, no, we are happy for the Court to consider it.

15      So that's the crux of it, right, it's that the

16 statements are misrepresentations regarding their rights.

17 Specifically, just reading from the letter, and I will only

18 stick to the first page, failure to cure the default --

19 "failure to cure the default on or before the date specified

20 may result in acceleration of the sum secured, sale of the

21 property, and/or foreclosure."

22      That statement could be true if the date specified they

23 used was an accurate description of their rights.  They needed

24 to change the date specified for that to be true, because the

25 date that they used, one that leaves you 80 days past due, if

1    you pay nothing would not result in acceleration, would not

2    result in sale, would not result in foreclosure, any of those

3    three.

4         And moreover, if you make a payment during that time

5    period, you're not 80 days past due, you're back to 30 or 60.

6    So the statement that you must pay all the amounts due under

7    the terms of your note and security instrument by this date,

8    that you must cure your default by this date, or else it "may"

9    result in acceleration of the sum secured in the sale of the

10   property and foreclosure, it may not.  They cannot do that.

11        So, you know, that's -- on the same page, again, and it

12   continues, "If you are not cured within 35 days of this notice,

13   Selene, at its option may require immediate payment in full of

14   all sums secured by your security instrument --" a/k/a

15   accelerating, "-- without further demand or notice, and

16   foreclose the security instrument.

17        That's not true based upon the deadline that they

18   provide.  So, that's the crux of the claim.

19        1692e(5), "Actions that cannot legally be taken are

20   false representations."

21        We think if the allegations -- if we prove the

22   allegations that are in our complaint, plainly, they are doing

23   things that cannot legally be taken and they are making false

24   representations regarding their rights.  The's the e(10).

25        The F claim, I'm not -- well, nowadays you have to

1   prove a harm, anyway, because you got to have standing on

2   behalf of the individual plaintiffs, but I am not aware of any

3   sort of implicit additional requirement associated with 1692f.

4         I think the Court hit the nail on the head on what

5   1692f typically is, is it's a catchall, such that if you have a

6   technical problem with your E claim but you have unfair and

7   unconscionable activity such that eventually, if you your E

8   claim is unsuccessful you have to resort to the F claim, that's

9   typically how it plays out.  And that's why it would be

10  inappropriate to dismiss the F claim at a motion to dismiss

11  stage.

12        It may well be that ultimately the F claim is redundant

13  because the E claim moves forward, or it may be, Selene, of

14  course, can defend the case, and there is case law that says,

15  if you lose on the E claim and you don't have anything in

16  addition to that that would support your F claim, well, then

17  you lose the F claim.  That's the motion to dismiss.

18        But what the Court did in Barilla, is they said, that

19  doesn't mean the contrary, which is that the F claim is

20  automatically superfluous at the motion to dismiss, because

21  guess what happens, the F claim loses and then if they find a

22  technical gotcha on E claim, then you don't have the F claim as

23  the backup.  So it may be that down the line this is only

24  litigated based on these misrepresentations, these false

25  misrepresentations, but the catchall is there for a reason.

1        The Miljkovic case that was referenced -- I'm sure I

2   butchered the name too -- the Court rejected that in the

3   Barilla case for exactly that reason.  They said, it does not

4   mean that what it is is that if you have any F claim that

5   relies on the same facts of the E claim the F claim loses.

6   But, the contrary, if your E claim loses, then your F claim

7   doesn't survive, if the facts are the same.

8        And we agree, our basis that it's unfair and

9   unconscionable is because they misrepresent their rights.

10       THE COURT:  Can you give me an example of what would a

11  true F claim be that's really different than an E claim?

12       MR. MAGINNIS:  Like I said, I think it's if you find a

13  technical deficiency.  So, say you're pursuing a false

14  misrepresentation claim and they establish that in some

15  universe it could be perceived as technically true, but it's

16  still unfair and unconscionable and induces borrowers to do

17  things that they would never do if they fully understood it,

18  that could be a claim where the representation is not false but

19  it's still claimed fair.

20       It's like in the state the FDUTPA claims are and the

21  other state law claims where you have an unfair and deceptive

22  trade practice, something can be deceptive but even if it's not

23  deceptive it can be unfair.

24       I can't think of a specific case off the top of my head

25  or fact pattern because usually it's a catchall but that's the

1    situation is if you have some law in your E argument but you

2    have bad behavior.

3              THE COURT:  Okay.

4              MR. MAGINNIS:  The Florida claim -- as counsel noted, a

5    lot of this is because they stand on top of each other and so

6    they believe that if the FDCPA claim survived the FCCPA claim

7    survives.  In the Savage case, which is also a Seterus case,

8    the Court did dismiss the Florida claim but, again, based upon

9    that disclaimer that was from that Moore case.

10             It's important to think about that under 559.727 where

11   it's abuse and harassment, abuse and harassment includes

12   telephone -- it's the situation where you're calling on the

13   phone 20 times a day.  That's inclusive, but that's not all

14   abuse and harassment covers under that statute.  It's a little

15   bit broader than you might think of it using the term in

16   everyday conversation.

17             For example, Weaver versus Wells Fargo, which is in our

18   brief, they violated 559.727 when they contacted plaintiff

19   about a mortgage debt that the plaintiff had no obligation to

20   pay.  We think that's very similar.

21             The Gaalswyk case that we also cite in our brief,

22   allegations met 559.727, where a debt collection notice says

23   misstatements statutory obligations of the debt collector.

24             So, I think the difference between the Florida claim

25   and the FDCPA claim is if we got to a jury on the FDCPA claim,

1    they'd have -- if it's an FDCPA claim, if they did it's

2    (indiscernible) liability.

3          In the Florida claim, they'd have to find that they did

4    it and that it constituted harassment, whatever was proved to

5    have happened.

6          But they largely overlap each other so my arguments are

7    largely the same.  They're misrepresenting what their rights

8    are to the detriment of consumers.

9          Negligent misrepresentation, I think the Court hit the

10   nail on the head regarding potential nominal damages.  This

11   comes up all the time.  Injury and harm are not the same as

12   damages.  That's why you have nominal damages.

13         So, we believe we have properly plead that there are

14   harms, and it's not a situation where, well, you owe the money

15   anyway so you can't be harmed by misrepresentations because you

16   have the time value of money.  Again, these borrowers, if they

17   had been properly informed as to what their rights are, had an

18   opportunity to make optimal decisions regarding their finances

19   instead of optimal decisions regarding their finances.

20         And we believe we will prove and have plead that these

21   individuals were harmed in the sense that they relied upon the

22   information there and they made decisions to their detriment.

23   Emotional distress is also a potential viable claim under that

24   as well, and if ultimately it was determined that they were

25   harmed, but we didn't put a dollar value on it, then you're

```
 1   right, it (indiscernible).

 2        I'm not aware of any case law that went that far.

 3   Ultimately, this case is largely going to be about the

 4   statutory damages because we plead it as a class action, and

 5   individualized damages make it very difficult to do a class

 6   action.

 7        But we do think the claim is viable, well plead, and

 8   honestly, we believe we will have the evidence to get through

 9   summary judgment and move towards a trial on that issue.

10        THE COURT:  This isn't before me today, but how would

11   you get your fraud count into a class?

12        How would you certify on the fraud count, individual

13   issues there?

14        MR. MAGINNIS:  Good question.  So, it depends on our

15   offer of proof.  So, to have a fraud claim you got to show

16   misrepresentation, and that's uniform, and then you do have to

17   show reliance and that's often not uniform.  But what you do --

18   you can show reliance on a class-wide basis through

19   circumstantial evidence, so what we would do is we would ask

20   the trier of fact to say, hey, what happened to Ms. Cruz, what

21   happened to the Martins, they read this letter just like

22   everybody else in the class would.  They understood it just

23   like everybody else in the class would.  They relied on its

24   true veracity just like everyone in the class would, and you

25   are entitled to find that on a class-wide basis the class
```

1    relied on the letter to their detriment.

2         THE COURT:  So you can do it.

3         All right.  That's not really before me.

4         MR. MAGINNIS:  Okay.

5         THE COURT:  All right.  I think that was -- I think

6    that's all the questions I had.

7         Let me bounce it back for rebuttal, if you have any.

8         MS. ACCARDI:  Just very briefly, Your Honor.  I think

9    with regards -- the first kind of argument that Mr. Maginnis

10   started with with regards to just kind of -- whether the

11   language in the notice is fair or not, I think he continues to

12   go back to on day 36, you know, the day immediately after the

13   payment due date, we were not, pursuant to federal law or

14   pursuant to Selene's practices, as it's plead in the complaint,

15   we do not accelerate loans on that day.

16        I think, again, we're reading into the notices

17   provisions this immediacy that is not there.  A, there is no

18   indication as to when we are going to take any action, and

19   certainly not a deadline or prescribed of, you know, we will

20   accelerate it on this day.  That's not there.

21        I think that is the ultimate crux there, Your Honor, is

22   that we are -- and pursuant to the terms of the mortgage and

23   federal law, able to accelerate loans pursuant to the loan

24   terms.  It's just the notices of default -- we are reading into

25   it that this is an immediacy argument, so I think that's the

1    key distinction, Your Honor.

2         I will go back to the Chalik case.  I think that we

3    talked about with regards to separate behavior for subsection

4    F, and in that case, Your Honor, the Court held that the

5    plaintiffs' 1692f claim is indistinguishable from their 1692e

6    claim, and the law is well settled that one cannot rescue a

7    defective 1692e claim through Section 1692f's catchall

8    provision.  So, therefore, they dismissed the 1692f provision.

9         THE COURT:  Which one is that?  Is that the M case?

10        MS. ACCARDI:  I'm sorry, the Chalik 677 F.Supp 2d at

11   1322.

12        THE COURT:  Yeah, I remember that.

13        MS. ACCARDI:  Finally, Your Honor, I think going back

14   to the negligent misrepresentation claim really quickly, Your

15   Honor, I think I had previously mentioned this, but I wanted to

16   mention it if I did not.  The Barilla case that's been

17   mentioned a few times held that the plaintiffs alleged that

18   they were injured by satisfying their contractual obligations,

19   and the Court is aware of no case law to support the

20   contractually owed payments are actionable losses.

21        And, again, injury is an element of negligent

22   misrepresentation, so if you have not alleged an injury, in

23   fact, you are going to fail on that claim, which is the case

24   here, Your Honor.

25        THE COURT:  Where are we on this case procedurally?

```
1    It's not my case, obviously, but this motion has been pending
2    for a while.  You guys have a class motion also pending?
3              Is discovery stayed or is discovery going on?
4              MS. ACCARDI:  Ongoing, Your Honor.
5              THE COURT:  Okay.
6              MR. MAGINNIS:  And almost complete, yeah.
7              MS. ACCARDI:  Excuse me, it's complete.
8              MR. MAGINNIS:  Well, you may recall, Judge, we were
9    before you on the net worth issue where there was discovery
10   relating to that and potentially reopening a 30(b)(6), and
11   that, for the most part, is the last bit of discovery remaining
12   in the case.
13             THE COURT:  I don't mean to hurt your feelings, but I
14   don't recall that.
15             MR. MAGINNIS:  It wasn't a captivating argument?  I'm
16   surprised.
17             MS. ACCARDI:  We are not very memorable.  That's okay.
18             THE COURT:  Tell me about your motion to strike the
19   jury demand.
20             MS. ACCARDI:  Sure, Your Honor, let me pull out my
21   outline on that one.
22             I will try to be brief on this too, as much as I can,
23   since I know we are running out of time.
24             Both mortgages, as Your Honor is aware, have a jury
25   trial waiver provision in them.  The Martins, the plaintiffs
```

1   signed directly under the waiver provision, and then Ms. Cruz,

2   the other named plaintiff, initialed on the page that contains

3   the jury trial waiver.

4        Both loans at issue are owned by the same investor and

5   both are, obviously, serviced by Selene, as the loan servicer

6   and attorney, in fact, for the owner.  And we have submitted to

7   the Court, attached to our motion to strike and then our reply,

8   powers of attorney evidencing that agency relationship.

9        THE COURT:  Let me ask you this; do you believe your

10  client gets the benefit of the jury trial waiver by the mere

11  fact of the agency relationship, or is there something specific

12  in this power of attorney that I should focus on that really --

13  is there some magic language in the power of attorney or is it

14  the mere agency relationship itself?

15        MS. ACCARDI:  I think -- I mean, the powers of attorney

16  does set forth what powers like Selene has pursuant to their

17  power of attorney.  There is some, I guess, if you want to call

18  it magic language in the power of attorney that states that

19  Selene -- excuse me, that U.S. Bank is empowering Selene with

20  the authority to enforce the terms of the security instrument.

21  So I would think, honestly, just pursuant to that, Your Honor,

22  that if we are empowered with the ability to enforce the terms

23  of the security instrument on behalf of U.S. Bank we can

24  enforce the terms of the jury waiver provision.

25        THE COURT:  Where is that?

1          I looked for language like that.  All I see is that

2     they have the power to execute and acknowledge in writing

3     documents customarily used to do the following ten things, and

4     then it gives a list of ten things.  But technically, all this

5     document does is give your client power to sign documents on

6     behalf of the principal, I believe, unless you tell me

7     differently.

8          MS. ACCARDI:  Yeah, I think it sets forth a host of

9     obligations, Your Honor.  I think -- I mean, like, the first

10    paragraph we can demand, sue, recover for fees and things.

11    Basically, really, I mean, it is a pretty exhaustive list and I

12    don't have highlighted in here, you know, I should have, where

13    I took that language from, Your Honor.  But it really empowers

14    Selene to act in U.S. Bank's interest and act in their place as

15    their agent, as you would imagine any agency principal, is any

16    action that U.S. Bank could take on behalf of enforcing the

17    security interest, they are providing that to Selene to act in

18    their stead is really what it is.

19         I will look through here, Your Honor, and I will --

20    after this, if I can, I can highlight it and send it to Your

21    Honor.  I don't think I would have taken it -- I have it in

22    quotes in my notes, so I think I must have pulled it -- I just

23    can't find it at the very present moment.

24         THE COURT:  I'm fine if you find it before the end of

25    the hearing.  If you don't, within 24 hours just do a

1    supplement on what page and where it says that.

2            Do you have any other argument?

3            MS. ACCARDI:  Oh, yes, I do.

4            So, I think going to -- there is a couple of things

5    here, Your Honor.  First would be courts that have upheld the

6    validity of an identical jury trial waiver provision like this.

7            The Acciard case out of the Middle District noted that

8    an identical provision was identified as a bold-faced heading,

9    set forth a separately numbered paragraph contained in the

10   loan, in the mortgage, excuse me.

11           Same thing in the Murphy court, Your Honor, out of the

12   Middle District found an identical jury trial waiver provision

13   to be enforceable.  So I think just the fact that the jury

14   trial waiver was entered into knowingly and conspicuously would

15   say that it is valid in that respect.

16           With regards to whether the claims alleged here relate

17   to the mortgage sufficiently to kind of call that jury trial

18   waiver into issue, the Middle District in the Levinson case

19   held that the defendant's alleged behavior in violation of the

20   FCCPA was due to the plaintiffs' failure to pay as

21   contractually obligated under the mortgage, and found that the

22   waiver applied to actions arising out of debt collection

23   activity because it was foreseeable when the parties executed

24   the mortgage that the defendant would engage in debt collection

25   practices.  Therefore, at least in the Levinson case there,

1    Your Honor, they found the jury waiver provision to apply to

2    FCCPA claims.

3          There is a host of other case law out of Florida that

4    follows suit.  The Newton case out of the Middle District held

5    that a TCPA case fell within the jury trial waiver provision.

6    The Foley case out of the Southern District particularly, Your

7    Honor, held that, "While plaintiffs' claim for violation of

8    TILA likely does not arise out of the loan documents, the Court

9    concludes that the in-any-way-related-to provision of the jury

10   trial waiver does encompass the instant action."

11         Then on the Martorella case, also out of the Southern

12   District, Your Honor, held that the plaintiffs' FCCPA claim

13   arrive from collection activity from amounts due under the

14   mortgage and the note that she executed and, therefore, were

15   applicable to her FCCPA claim.

16         And we cited a bunch of other cases, Your Honor, out of

17   Florida that hold that FDCPA and FCCPA claims do relate

18   sufficiently to the terms of the mortgage to allow the jury

19   trial waiver provision to come into play.

20         THE COURT:  Okay.

21         MS. ACCARDI:  Then -- I think we can turn to the

22   standing issue, Your Honor, which I think is what you had

23   already basically touched on.

24         The case law on this one, I will say, is important to

25   know the details I think is the big thing.

1              So, the first case I'll mention is the Hamilton case

2    out of the Southern District.  In that case, Your Honor, the

3    Court held that an exception to the rule exists for agents of a

4    party to a contract where a principal has signed a contract

5    containing a jury waiver clause, its agents may also enforce

6    the waiver with regard to claims arising from acts taken within

7    the scope of their agency.

8              Again, the Charles case also out of the Southern

9    District, Your Honor, affirms that point, and they said that

10   here, like in Hamilton, the plaintiff alleges that SPS was

11   hired to service the loan and that SPS is an agent of the loan

12   owner.

13             I will note here, Your Honor, that same allegation is

14   included in our complaint that Selene services both of these

15   plaintiffs' loans.  So at a minimum, even with that allegation,

16   taking the allegations of the complaint as true, that Selene is

17   the servicer of these loans.

18             And the Court in Charles also mentions, basically kind

19   of like a circumstantial evidence of the servicing relationship

20   would be the actions that SPS took that were alleged in the

21   complaint, they are loan servicing actions.  Similar loan

22   servicing action are alleged in our complaint, the fact that

23   Selene accepts payments.  We sent the default notices on behalf

24   of the owner of the loan to collect the debt.

25             The same thing, all of this evidence is this agency

1    relationship, even apart from the powers of attorney that we

2    have submitted to the Court, which is, obviously, direct

3    evidence of the agency relationship.

4          Then, finally, the Costello case also out of the

5    Southern District, Your Honor, relied on Hamilton, relied on

6    Charles that I just mentioned, and indicated that in carrying

7    out its obligation to service the loan consistent with the

8    terms of the mortgage, defendant effectively acquired the

9    rights and obligations of the lender.  Indeed, the mortgage

10   contract, itself, contemplates the direct involvement of the

11   loan servicer.  Accordingly, I find that the defendant as an

12   agent of the lender is entitled to avail -- in this situation

13   it's a presuit notice requirement, but basically entitled to

14   avail itself to enforce the terms of the mortgage.

15         So, all of those cases out of the Southern District,

16   Your Honor, stand for the proposition an agent of the loan

17   holder can enforce the terms of the mortgage, including the

18   jury trial waiver, and I will leave it that.

19         THE COURT:  All right.  Mr. Maginnis.

20         MR. MAGINNIS:  So, it's a mixed bag of case law, Judge.

21   We think our cases are more recent and more detailed, and we

22   think that's for a reason.  The cases -- there is even cases

23   where the courts find in favor of the plaintiffs where the

24   Court says, well, I asked the defendant how you might be an

25   assignee or you might be an agent, they couldn't come up with

1    any evidence to support it so I'm going to deny it.

2         I think there is in some instances a fundamental

3    misunderstanding of what loan servicers do.  The Costello case

4    that counsel just mentioned is an example.  The Court right

5    there in carrying out its obligation of servicing the law, they

6    effectively acquired the rights and obligations of the lender.

7    That is not right.

8         Lenders -- a lender lends, makes a loan.  It is a

9    generally securitized and sent in a package to, and purchased

10   by a successor in interest asset, who is a single purpose asset

11   who only owns portfolios of loans, which then assigns the owner

12   a right to a bank like U.S. Bank.

13        So, in this case --

14        THE COURT:  I'm sorry.

15        MR. MAGINNIS:  -- there is an original lender, there is

16   a successor in interest, which is a trust, and then there is an

17   assignee of an owner, which is U.S. Bank.  And Selene is just a

18   contracted party to perform certain tasks.  This is not

19   subrogation, and I think courts often misunderstand that.  They

20   think that they basically are unified and are the same as

21   servicer and owner.  They are not.  That's why they need a

22   power of attorney to do anything.

23        The Hamilton case which they mentioned is doctors

24   working for a hospital.  That's not the same thing as this.

25        So, the mortgage doesn't give them any of this.  The

 1   mortgage talks about lenders, assignees, successor in interest,

 2   and in some cases sounds like that gets it done.  It doesn't

 3   sound like Selene is arguing that.  They even admitted in their

 4   reply that they are not the lender, assignee, or successor

 5   interest.

 6        THE COURT:  Do you agree that the power of attorney

 7   makes the servicer an agent of the contracting party?

 8        MR. MAGINNIS:  Definitely not.  I mean, the power of

 9   attorney -- as the Court noted, I was prepared to point out

10   that I have no idea what they are relying upon in the power of

11   attorney to invoke the jury trial waiver.

12        The power of attorney is for Selene to assist U.S.

13   Bank, not the other way around.  It's not for Selene to get the

14   benefit of U.S. Bank.  That's not what an agency relationship

15   does.  You're acting on behalf of your back.  This isn't the

16   situation where, for example, there is a quiet title case,

17   where they are trying to eviscerate the note and the mortgage

18   and the property interest.  U.S. Bank is not involved in this.

19   If there is a relief against Selene, nothing happens to U.S.

20   Bank and nothing happens to U.S. Bank's mortgage.

21        There is nothing in the power of attorney that provides

22   benefits to Selene to exercise U.S. Bank's rights separate and

23   apart from the contracted job.  An agency -- we always are on

24   the other side of this, Judge.  Plaintiffs -- say in a personal

25   injury case, plaintiff says, defendant employee acting in the

1    course and scope they're the agent, and the defendant says,

2    whoa, whoa, whoa, this is not -- this is far outside of the

3    specific agency rights that they have.

4         If, in fact, they are an agent, agency in Florida

5    requires specific understanding of what rights they have to act

6    on behalf of that, and they don't have it from the mortgage,

7    and the POA doesn't say anything about it.

8         So, we don't agree that they are an agent in a way that

9    they could enforce this jury trial waiver.  They may act on it

10   happening.

11        THE COURT:  When these servicers -- when a servicer

12   files a foreclosure case, is it called Selene versus Homeowner

13   or is it called Bank versus Homeowner?

14        MR. MAGINNIS:  Well, it's actually trustee.  There is a

15   contracted party whose job it is, and I hope I'm not misstating

16   Florida law, but in every state I've been in, the trustee is

17   ostensibly neutral.  And it's the same thing, they are hired

18   pursuant to the mortgage documents to do a job.  They do not

19   represent -- ostensibly, they are not supposed to represent

20   either party.  They're supposed to be neutral, but what this

21   power of attorney does, and you saw it very explicitly in that,

22   Selene can act on behalf of U.S. Bank to make that happen.

23        They can hire the trustee.  They can refer to

24   foreclosure.  They can assist in that participation, because

25   they're acting on U.S. Bank's behalf explicitly and

1   specifically.

2          So, I'd say they have an agency relationship to do

3   that, but there is nothing in that power of attorney that gives

4   them an agency relationship to invoke a jury trial waiver for

5   themselves that has nothing to do with U.S. Bank.  And then it

6   comes back to the issue of waiver in and of itself.

7          So, the language in mortgages, the case law says,

8   that's clear and conspicuous enough to constitute a waiver, but

9   if the Court were to find that the power of attorney creates an

10  agency relationship somehow -- and by the way, a power of

11  attorney that didn't get executed until after this lawsuit was

12  filed -- how on earth could a borrower have clearly understood

13  that they were knowingly and voluntarily waiving their jury

14  rights, waiving their constitutional jury rights not just to

15  the lender, which is what it says in the note, but everybody

16  who does work on behalf of Selene.

17         There is no way that clause says that.  So, the only

18  way you can get to agency is through this back doorway.  Then

19  you can't find that the plaintiffs waived their rights.

20         THE COURT:  You seem to indicate that the Court would

21  need an evidentiary hearing or something.  I mean, is that your

22  position that we would need to put people under oath and get to

23  ask them questions about whether they understood what this

24  meant or are you going --

25         MR. MAGINNIS:  Well, I think the case law as to agency

 1   often is a question of fact.

 2          Now, if we're now using agency for a jury trial, is

 3   that a jury question or a bench trial question, that may be a

 4   legal research thing that everybody has to look into, but

 5   ultimately, courts have found based upon purely the language

 6   that the language, in and of itself, is fine, but if you -- if

 7   the only way you can allow them to enforce that at all is

 8   through this backdoor document that the borrower could never

 9   have known about, how on earth could that be a voluntary waiver

10   of their rights?  It's not in the document.

11          Loan services is a defined term in the mortgage, and if

12   they wanted to waive a jury trial for loan servicers clearly

13   and conspicuously, all they have to do is add the defined term

14   that's already in there.  They don't do it.

15          Then the other piece of this is either arising out of

16   or relating to.  The case law -- the Brinegar case that we cite

17   to relating to in this context does not mean relating to in any

18   way possible.  That would subsume any case regarding a mortgage

19   completely, and that's why in the Shallengburg case, the

20   Thompson case, Williams, Hamid, these are cases where it

21   involves consumer protection claims separate and apart from the

22   mortgage, they found that even if the mortgage servicer had the

23   right to invoke the jury trial waiver, it didn't relate to the

24   mortgagor arise out of.

25          Relate to doesn't mean in any way they connected to.

1   That's not the standard that the Brinegar case talks about.

2           So, we believe that there is a lot of reasons why a

3   jury trial waiver doesn't apply and, again, the agency piece of

4   this, they're basing it on a power of attorney that was filed

5   after the case was filed that doesn't say anything about jury

6   trials.  It's hard to believe that that meets the

7   conspicuousness standard that's required.

8           THE COURT:  Well, she did include another one in the

9   record, I think, that covered the time period.

10          MS. ACCARDI:  Correct, Your Honor.  The one attached to

11  our reply is executed in May of 2023.

12          MR. MAGINNIS:  But not one that the borrower would have

13  ever seen or had any knowledge or had been able to rely upon.

14          I mean, the case law is -- I'm not saying that we win

15  this -- that the plaintiffs have won this a hundred times out

16  of a hundred.  It's a mixed bag, but we believe the analysis --

17  the more deep analysis and more recent cases are in favor of

18  plaintiff, particularly when you are talking about consumer

19  protection cases.

20          And particularly when you are talking about this

21  specific factual case, which has absolutely nothing to do with

22  U.S. Bank, and I don't know how they could rely upon a power of

23  attorney that invites them to act on behalf of U.S. Bank, when

24  U.S. Bank has nothing to do with this case.

25          THE COURT:  Okay.  Rebuttal.

1          MS. ACCARDI:  Sure, Your Honor, I think the first thing

2    I will start with is there is a quite a few sister cases to the

3    instant case, Your Honor, based on very similar, if not

4    identical, default notices all filed against the lien in

5    different jurisdictions also by Mr. Maginnis's law firm, one in

6    the Northern District of Illinois as recently of July 18th,

7    2024.  An order is entered on a motion to dismiss that

8    specifically found that Selene had standing to enforce the

9    notice and cure provision of the mortgage.

10          So, at least the Northern District has found that

11    Selene, as the loan servicer, has the authority and ability to

12    enforce mortgage terms.  So that would be, I think, obviously,

13    a point of big -- we have filed a notice of supplemental

14    authority providing the Court with that opinion since it was

15    issued so recently.

16          And then, I think going to the cases I have previously

17    cited, Your Honor -- I can go back and see if I can find the

18    ones -- but most of them, if not all of them, did not have

19    power of attorneys at issue and still permitted loan servicers

20    to enforce jury trial waivers, despite the fact of not even

21    submitting a power of attorney, just having the circumstantial

22    evidence of the fact that they are the loan servicer and acting

23    on behalf of the owner of the loan.

24          The Costello case that I cited, while I know

25    Mr. Maginnis probably doesn't like it, it is the law in the

 1    Southern District, Your Honor, so it does stand for the

 2    proposition that a loan servicer can enforce jury trial

 3    waivers.

 4           Then going to, I think, the relating to language -- I

 5    wanted to go back to very quickly -- oh, most of the, I think,

 6    authority included in the plaintiffs' response was issued

 7    after, was issued -- some of it pre the Hamilton case that came

 8    out of the Southern District, Your Honor, that I mentioned,

 9    specifically the Hamid case that was brought up, there is no

10    discussion of agency in that.

11           So, most of the case law, I would say, that the

12    plaintiffs rely on do not discuss this agency portion.  They

13    just say, you are not a party to the contract, the mortgage.

14    You don't get to enforce mortgage terms.

15           It's the Hamilton cases and its prodigy that reference

16    and bring up this agency relationship, and the fact that a loan

17    servicer can and does enforce mortgage terms on behalf of its

18    principal every day.

19           I will say, I do a fair amount of foreclosure work in

20    Florida, and I can say that loan servicers do bring

21    foreclosures in their own name all the time.  And so it is also

22    pursuant to these powers of attorney, there is good law in

23    Florida saying that these power of attorneys similar to what's

24    been presented to the Court do provide loan servicers with the

25    authority to foreclose, to collect payments.

 1          And I noted in this power of attorney, Your Honor,

 2   paragraph one it talks about in the beginning that it provides

 3   the authority to demand, sue, recover, and collect sums of

 4   money belonging to and claimed by the owner, trustee or the

 5   trust.  They can send, obviously, notices of default, that is

 6   what's at issue in this case, and any other legal actions in

 7   tort, contract, or otherwise necessary to enforce the terms of

 8   the security instrument and to execute verifications.

 9          So I think that's where that language is coming from,

10   Your Honor, in that first numbered paragraph that Selene could

11   take any other legal actions to enforce the terms of the

12   security instrument on behalf of its principal.

13          THE COURT:  Okay.  I'm going to read that carefully.

14          MR. MAGINNIS:  Your Honor, if I can be less than a

15   minute on the Illinois issue.

16          THE COURT:  Yes.

17          MR. MAGINNIS:  Just so that -- Ms. Accardi may or may

18   not be aware of this.  We had a status conference following the

19   issuance of that order, and we said exactly what I just told

20   you, which is a lot of people don't understand that mortgage

21   servicers and lenders are not the same thing.  They're two

22   different paths and to be (indiscernible) to amend the

23   complaint.

24          So, obviously, we didn't do a good job of explaining

25   that, but that order since it's been vacated, we are amending

 1    the complaint.  So, you know, if we did a poor job of

 2    explaining that in that complaint, hopefully we did a better

 3    job today, but that Costello case is an example of

 4    misunderstanding the roles.

 5              Loan servicers do work for owners.  They are not

 6    lenders.

 7              THE COURT:  Okay.  All right.

 8              Listen, thank you for the good briefing and the good

 9    arguments.  This motion has been pending for a while, so I am

10    trying to get it out as soon as I possibly can, and I will get

11    you something hopefully quickly.

12              Do you have anything else from either side?

13              MR. MAGINNIS:  Nothing from the plaintiff, Judge.

14              MS. ACCARDI:  No, Your Honor.

15              THE COURT:  All right.  Enjoy the rest of the week

16    everybody.

17              MS. ACCARDI:  Thank you, you as well.

18              MR. MAGINNIS:  Thank you.

19              THE COURT:  Thank you all.

20              MR. HARRIS:  Thank you, Your Honor.

21              (Proceedings were concluded.)

22

23

24

25

1

2                          C E R T I F I C A T E

3

4

5              I, Patricia Diaz, Registered Professional Reporter,

6     in and for the United States District Court for the Southern

7     District of Florida, do hereby certify that I transcribed from

8     digital audio recording the proceedings had the 14th day of

9     August, 2024, in the above-mentioned court; and that the

10    foregoing transcript is a correct and complete transcript of

11    said digital audio recording.

12

13

14    September 2, 2024          /s/Patricia Diaz
      DATE                       PATRICIA DIAZ, FCRR, RPR, FPR
15                               Official Court Reporter
                                 United States District Court
16                               400 North Miami Avenue, 11th Floor
                                 Miami, Florida 33128
17                               (305) 523-5178

18

19

20

21

22

23

24

25

## /

**/s/Patricia** [1] - 55:14

## 1

**1** [1] - 1:6
**100** [1] - 1:20
**101** [1] - 1:17
**11th** [2] - 1:24, 55:16
**120** [6] - 10:5, 10:23, 11:16, 11:19, 27:15, 27:19
**120-day** [1] - 11:21
**121** [1] - 10:11
**1322** [1] - 37:11
**14** [1] - 1:5
**14th** [1] - 55:8
**15** [2] - 3:21, 22:16
**15th** [1] - 27:21
**1692(e)(10** [1] - 16:21
**1692e** [3] - 20:10, 37:5, 37:7
**1692e(5** [1] - 30:19
**1692f** [11] - 18:7, 19:13, 20:8, 20:11, 20:18, 20:23, 21:1, 31:3, 31:5, 37:5, 37:8
**1692f's** [1] - 37:7
**18th** [1] - 51:6
**1st** [2] - 27:20

## 2

**2** [1] - 55:14
**20** [2] - 23:13, 33:13
**2017** [1] - 20:1
**2023** [1] - 50:11
**2024** [4] - 1:5, 51:7, 55:9, 55:14
**22** [1] - 17:19
**2200** [1] - 1:24
**23-CV-14297** [1] - 2:3
**23-CV-14297-AMC** [1] - 1:2
**24** [1] - 40:25
**27603** [1] - 1:15
**27615** [1] - 1:17
**2955532** [1] - 20:1
**2d** [1] - 37:10

## 3

**30** [4] - 9:15, 9:17, 27:8, 30:5
**30(b)(6** [1] - 38:10
**305** [2] - 1:25, 55:17
**33128** [2] - 1:25,

55:16
**33602** [1] - 1:21
**35** [1] - 30:12
**36** [1] - 36:12

## 4

**400** [2] - 1:24, 55:16
**45-day** [1] - 8:14

## 5

**523-5178** [2] - 1:25, 55:17
**55** [1] - 1:6
**559.7227** [1] - 22:25
**559.727** [3] - 33:10, 33:18, 33:22
**55972** [1] - 22:17

## 6

**60** [2] - 27:9, 30:5
**677** [1] - 37:10
**6C** [1] - 17:24

## 7

**7** [1] - 22:17
**7706** [1] - 1:17

## 8

**80** [2] - 29:25, 30:5

## 9

**900** [1] - 1:14

## A

**a/k/a** [1] - 30:14
**ability** [3] - 10:1, 39:22, 51:11
**able** [5] - 3:11, 6:21, 36:23, 50:13
**above-mentioned** [1] - 55:9
**abrasiveness** [1] - 22:21
**absence** [1] - 25:15
**absolutely** [1] - 50:21
**abuse** [3] - 33:11, 33:14
**abusive** [2] - 22:18, 23:9
**ACCARDI** [38] - 1:19, 2:10, 4:8, 4:23, 6:25, 11:3, 12:19, 13:22, 15:5, 15:21, 19:14,

19:22, 20:1, 20:3, 20:16, 21:10, 21:24, 22:4, 22:14, 23:18, 24:14, 25:10, 26:1, 36:8, 37:10, 37:13, 38:4, 38:7, 38:17, 38:20, 39:15, 40:8, 41:3, 42:21, 50:10, 51:1, 54:14, 54:17
**Accardi** [5] - 2:10, 9:5, 26:18, 27:12, 53:17
**Accardi's** [1] - 26:4
**accelerate** [11] - 10:6, 10:19, 11:8, 11:9, 11:22, 13:12, 17:3, 18:5, 36:15, 36:20, 36:23
**accelerating** [3] - 10:9, 10:12, 30:15
**acceleration** [12] - 9:22, 9:25, 10:14, 10:21, 10:24, 11:18, 14:16, 16:11, 28:23, 29:20, 30:1, 30:9
**accepts** [1] - 43:23
**Acciard** [1] - 41:7
**according** [1] - 7:25
**accordingly** [1] - 44:11
**account** [2] - 5:20, 17:16
**accurate** [1] - 29:23
**acknowledge** [1] - 40:2
**acquired** [2] - 44:8, 45:6
**act** [11] - 7:24, 18:11, 19:16, 27:10, 40:14, 40:17, 47:5, 47:9, 47:22, 50:23
**acting** [4] - 46:15, 46:25, 47:25, 51:22
**action** [13] - 11:13, 14:11, 14:22, 15:16, 17:9, 23:23, 25:6, 35:4, 35:6, 36:18, 40:16, 42:10, 43:22
**actionable** [1] - 16:6, 24:8, 37:20
**Actions** [1] - 30:19
**actions** [6] - 25:4, 41:22, 43:20, 43:21, 53:6, 53:11
**activity** [3] - 31:7, 41:23, 42:13
**acts** [1] - 43:6
**actual** [7] - 18:22, 23:21, 24:1, 24:16, 24:22, 25:15, 25:20

**add** [1] - 49:13
**added** [1] - 17:16
**addition** [1] - 31:16
**additional** [10] - 5:5, 5:7, 6:4, 9:19, 10:6, 12:5, 21:4, 21:5, 22:6, 31:3
**additionally** [1] - 16:8
**admit** [1] - 19:3
**admitted** [1] - 46:3
**affirms** [1] - 43:9
**afternoon** [2] - 2:6, 2:10
**agency** [21] - 39:8, 39:11, 39:14, 40:15, 43:7, 43:25, 44:3, 46:14, 46:23, 47:3, 47:4, 48:2, 48:4, 48:10, 48:18, 48:25, 49:2, 50:3, 52:10, 52:12, 52:16
**agent** [9] - 40:15, 43:11, 44:12, 44:16, 44:25, 46:7, 47:1, 47:4, 47:8
**agents** [2] - 43:3, 43:5
**agree** [6] - 4:17, 7:10, 10:8, 32:8, 46:6, 47:8
**agreement** [1] - 12:25
**agrees** [1] - 4:15
**akin** [1] - 14:18
**al** [1] - 1:4
**Alabama** [1] - 25:14
**alert** [1] - 6:7
**allegation** [2] - 19:9, 43:13, 43:15
**allegations** [8] - 6:17, 7:15, 14:14, 21:4, 30:21, 30:22, 33:22, 43:16
**allege** [3] - 19:3, 20:24, 21:1
**alleged** [14] - 18:23, 19:2, 20:9, 20:11, 22:16, 23:9, 24:2, 24:5, 37:17, 37:22, 41:16, 41:19, 43:20, 43:22
**alleges** [1] - 43:10
**allow** [4] - 5:10, 25:8, 42:18, 49:7
**allowed** [3] - 16:13, 23:2, 28:10
**alluding** [1] - 26:14
**almost** [2] - 7:18, 38:6

**amend** [1] - 53:22
**amended** [2] - 3:16, 3:18
**amending** [1] - 53:25
**amount** [13] - 5:18, 5:19, 9:10, 15:10, 18:1, 18:2, 24:19, 24:20, 24:21, 25:20, 25:21, 52:19
**amounts** [5] - 19:10, 23:14, 24:18, 30:6, 42:13
**analysis** [4] - 6:23, 20:8, 50:16, 50:17
**Ann** [1] - 2:8
**anticipate** [1] - 10:16
**anyway** [2] - 31:1, 34:15
**apart** [4] - 20:10, 44:1, 46:23, 49:21
**appearances** [1] - 2:4
**APPEARANCES** [1] - 1:12
**appellant** [1] - 21:1
**applicable** [3] - 5:20, 23:2, 42:15
**applied** [1] - 41:22
**apply** [7] - 5:19, 28:15, 28:17, 28:23, 42:1, 50:3
**appreciate** [1] - 29:10
**ARANT** [1] - 1:19
**ARGONA** [1] - 1:4
**arguing** [1] - 46:3
**argument** [13] - 6:7, 8:13, 8:24, 12:1, 13:6, 13:23, 14:3, 16:9, 33:1, 36:9, 36:25, 38:15, 41:2
**arguments** [5] - 2:23, 8:12, 26:4, 34:6, 54:9
**arise** [2] - 42:8, 49:24
**arising** [3] - 41:22, 43:6, 49:15
**arrears** [1] - 27:24
**arrive** [1] - 42:13
**aspect** [1] - 26:17
**assert** [2] - 20:19, 24:2
**asset** [2] - 45:10
**assignee** [3] - 44:25, 45:17, 46:4
**assignees** [1] - 46:1
**assigns** [1] - 45:11
**assist** [2] - 46:12, 47:24

**associate** [1] - 2:15
**associated** [2] - 8:1, 31:3
**assuming** [2] - 11:16, 11:19
**attached** [11] - 3:16, 4:6, 4:10, 4:11, 4:22, 5:3, 11:7, 29:1, 29:5, 39:7, 50:10
**attorney** [28] - 15:25, 16:6, 26:11, 26:12, 27:24, 39:6, 39:8, 39:12, 39:13, 39:15, 39:17, 39:18, 44:1, 45:22, 46:6, 46:9, 46:11, 46:12, 46:21, 47:21, 48:3, 48:9, 48:11, 50:4, 50:23, 51:21, 52:22, 53:1
**attorneys** [2] - 51:19, 52:23
**AUD** [1] - 35:1
**AUDIO** [3] - 1:11, 2:1, 34:2
**audio** [2] - 55:8, 55:11
**August** [2] - 1:5, 55:9
**authenticity** [2] - 29:3, 29:4
**authority** [8] - 16:23, 18:5, 39:20, 51:11, 51:14, 52:6, 52:25, 53:3
**automatically** [1] - 31:20
**avail** [2] - 44:12, 44:14
**availability** [1] - 24:16
**available** [7] - 4:24, 4:25, 12:24, 15:17, 24:10, 24:24, 29:8
**Avenue** [1] - 1:24, 55:16
**avenue** [1] - 24:14
**avoidable** [3] - 18:14, 19:18, 20:4
**aware** [7] - 24:7, 26:8, 31:2, 35:2, 37:19, 38:24, 53:18

**B**

**backdoor** [1] - 49:8
**backed** [1] - 27:17
**backup** [1] - 31:23
**bad** [1] - 33:2
**bag** [2] - 44:20, 50:16

**Bank** [15] - 39:19, 39:23, 40:16, 45:12, 45:17, 46:13, 46:14, 46:18, 46:20, 47:13, 47:22, 48:5, 50:22, 50:23, 50:24
**bank** [1] - 45:12
**Bank's** [4] - 40:14, 46:20, 46:22, 47:25
**Barilla** [5] - 24:5, 28:21, 31:18, 32:3, 37:16
**barred** [2] - 17:7, 17:13
**base** [1] - 5:8
**based** [12] - 6:2, 6:16, 10:3, 12:2, 14:10, 14:13, 25:11, 30:17, 31:24, 33:8, 49:5, 51:3
**basing** [1] - 50:4
**basis** [6] - 8:6, 20:21, 29:6, 32:8, 35:18, 35:25
**Bass** [1] - 2:12
**BEFORE** [1] - 1:10
**beginning** [2] - 26:14, 53:2
**behalf** [15] - 2:11, 31:2, 39:23, 40:6, 40:16, 43:23, 46:15, 47:6, 47:22, 47:25, 48:16, 50:23, 51:23, 52:17, 53:12
**behavior** [3] - 33:2, 37:3, 41:19
**behind** [1] - 27:9
**belonging** [1] - 53:4
**bench** [1] - 49:3
**benefit** [2] - 39:10, 46:14
**benefits** [3] - 18:13, 19:18, 46:22
**benevolent** [1] - 26:21
**best** [1] - 4:1
**better** [1] - 54:2
**between** [3] - 2:25, 16:5, 33:24
**beyond** [1] - 20:19
**big** [2] - 42:25, 51:13
**bill** [1] - 21:20
**bit** [3] - 21:17, 33:15, 38:11
**bold** [1] - 41:8
**bold-faced** [1] - 41:8
**boldly** [1] - 24:2
**borrower** [10] - 16:18, 17:25, 18:2, 19:19, 27:2, 28:10,

28:11, 48:12, 49:8, 50:12
**borrowers** [6] - 10:2, 16:15, 20:5, 23:13, 32:16, 34:16
**BOULT** [1] - 1:19
**bounce** [2] - 2:24, 36:7
**bound** [1] - 4:15
**BRADLEY** [1] - 1:19
**brief** [4] - 7:17, 33:18, 33:21, 38:22
**briefing** [1] - 54:8
**briefly** [1] - 36:8
**Brinegar** [2] - 49:16, 50:1
**bring** [4] - 4:12, 16:15, 52:16, 52:20
**broader** [1] - 33:15
**brought** [2] - 18:20, 52:9
**Brown** [1] - 22:22
**Bryant** [3] - 18:17, 19:14, 19:20
**BRYSON** [1] - 1:13
**bunch** [1] - 42:16
**burdens** [1] - 12:5
**business** [1] - 26:21
**butchered** [1] - 32:2
**BY** [1] - 1:22

**C**

**candor** [1] - 29:10
**cannot** [7] - 14:4, 25:17, 27:18, 30:10, 30:19, 30:23, 37:6
**captivating** [1] - 38:15
**care** [3] - 15:12, 15:14
**careful** [1] - 27:12
**carefully** [1] - 53:13
**Carolina** [2] - 1:15, 1:17
**carrying** [2] - 44:6, 45:5
**case** [99] - 2:2, 6:6, 6:11, 6:13, 7:4, 7:16, 7:17, 9:4, 9:6, 9:10, 10:18, 12:8, 13:7, 14:6, 14:7, 14:18, 15:9, 15:23, 17:4, 17:6, 17:11, 17:14, 18:17, 19:21, 22:22, 23:22, 23:25, 24:7, 24:15, 25:9, 25:12, 25:14, 25:17, 26:8, 28:3, 28:8, 28:21, 31:14, 32:1, 32:3,

32:24, 33:7, 33:9, 33:21, 35:2, 35:3, 37:2, 37:4, 37:9, 37:16, 37:19, 37:23, 37:25, 38:1, 38:12, 41:7, 41:18, 41:25, 42:3, 42:4, 42:5, 42:6, 42:11, 42:24, 43:1, 43:2, 43:8, 44:4, 44:20, 45:3, 45:13, 45:23, 46:16, 46:25, 47:12, 48:7, 48:25, 49:16, 49:18, 49:19, 49:20, 50:1, 50:5, 50:14, 50:21, 50:24, 51:3, 51:24, 52:7, 52:9, 52:11, 53:6, 54:3
**CASE** [1] - 1:2
**cases** [20] - 12:9, 12:18, 13:4, 16:23, 17:6, 21:12, 26:6, 26:7, 42:16, 44:15, 44:21, 44:22, 46:2, 49:20, 50:17, 50:19, 51:2, 51:16, 52:15
**catch** [1] - 19:12
**catchall** [6] - 12:11, 18:8, 31:5, 31:25, 32:25, 37:7
**category** [1] - 22:9
**caught** [1] - 27:10
**causes** [4] - 18:11, 18:16, 18:19, 19:16
**cert** [1] - 34:2
**certain** [4] - 16:18, 18:1, 24:24, 45:18
**certainly** [7] - 7:13, 8:3, 8:7, 9:5, 28:6, 28:13, 36:19
**certify** [2] - 35:12, 55:7
**Chalik** [2] - 37:2, 37:10
**chance** [2] - 8:10, 11:2
**change** [1] - 29:24
**charges** [3] - 17:15, 19:10
**Charles** [3] - 43:8, 43:18, 44:6
**Christopher** [1] - 2:12
**Circuit** [13] - 7:5, 15:9, 15:23, 16:3, 17:1, 17:6, 17:12, 26:9, 26:13, 28:8, 28:15
**circumstances** [1] - 11:23

**circumstantial** [3] - 35:19, 43:19, 51:21
**citation** [2] - 19:23, 20:14
**cite** [3] - 18:9, 33:21, 49:16
**cited** [5] - 9:4, 13:4, 42:16, 51:17, 51:24
**claim** [65] - 18:21, 19:1, 20:9, 20:10, 20:11, 20:22, 20:23, 21:23, 22:1, 22:2, 22:3, 22:14, 22:19, 22:20, 22:25, 23:8, 23:11, 23:12, 23:14, 23:19, 24:20, 30:18, 30:25, 31:6, 31:8, 31:10, 31:12, 31:13, 31:15, 31:16, 31:17, 31:19, 31:21, 31:22, 32:4, 32:5, 32:6, 32:11, 32:14, 32:18, 33:4, 33:6, 33:8, 33:24, 33:25, 34:1, 34:3, 34:23, 35:7, 35:15, 37:5, 37:6, 37:7, 37:14, 37:23, 42:7, 42:12, 42:15
**claimed** [2] - 32:19, 53:4
**claiming** [2] - 19:7, 24:19
**claims** [11] - 3:3, 5:8, 14:3, 23:9, 32:20, 32:21, 41:16, 42:2, 42:17, 43:6, 49:21
**class** [10] - 35:4, 35:5, 35:11, 35:18, 35:22, 35:23, 35:24, 35:25, 38:2
**class-wide** [2] - 35:18, 35:25
**clause** [2] - 43:5, 48:17
**clear** [2] - 14:15, 48:8
**clearly** [2] - 48:12, 49:12
**clerk** [1] - 3:15
**CLERK** [1] - 3:20
**client** [3] - 2:12, 39:10, 40:5
**cliff** [2] - 27:3, 27:8
**Clomon** [1] - 15:8
**close** [1] - 16:4
**co** [1] - 2:7
**co-counsel** [1] - 2:7
**cognizable** [2] - 17:2, 24:22
**COLEMAN** [1] - 1:13

**collect** [4] - 9:9, 43:24, 52:25, 53:3
**collecting** [2] - 18:11, 19:16
**collection** [5] - 15:12, 33:22, 41:22, 41:24, 42:13
**collector** [2] - 21:21, 33:23
**collector's** [2] - 18:11, 19:16
**coming** [3] - 5:14, 28:5, 53:9
**commenced** [1] - 23:2
**communication** [1] - 7:19
**compare** [1] - 13:6
**complaint** [25] - 3:16, 3:18, 4:11, 4:15, 4:20, 4:22, 5:4, 5:7, 6:17, 11:7, 11:17, 14:14, 18:9, 19:2, 20:17, 29:2, 30:22, 36:14, 43:14, 43:16, 43:21, 43:22, 53:23, 54:1, 54:2
**complete** [3] - 38:6, 38:7, 55:10
**completely** [1] - 49:19
**compliance** [1] - 8:22
**comply** [3] - 9:2, 11:15, 12:3
**complying** [1] - 13:24
**conceptually** [1] - 21:18
**concluded** [1] - 54:21
**concludes** [1] - 42:9
**conclusion** [2] - 15:4, 15:6
**conditions** [3] - 7:21, 8:1, 16:18
**conduct** [6] - 20:9, 20:10, 20:24, 21:3, 21:16, 22:6
**conference** [1] - 53:18
**conjunction** [1] - 12:21
**connected** [1] - 49:25
**consent** [2] - 4:18, 5:2
**consider** [6] - 14:25, 22:17, 22:18, 26:11, 29:2, 29:14

**considering** [1] - 11:12
**consistent** [2] - 10:5, 44:7
**conspicuous** [1] - 48:8
**conspicuously** [2] - 41:14, 49:13
**conspicuousness** [1] - 50:7
**constitute** [2] - 14:3, 48:8
**constituted** [1] - 34:4
**constitutes** [1] - 6:14
**constitutional** [1] - 48:14
**consumer** [12] - 6:19, 15:7, 15:10, 18:14, 18:20, 19:17, 20:4, 21:2, 26:15, 28:14, 49:21, 50:18
**consumers** [3] - 18:12, 18:13, 34:8
**contact** [1] - 21:13
**contacted** [1] - 33:18
**contained** [1] - 41:9
**containing** [1] - 43:5
**contains** [1] - 39:2
**contemplates** [1] - 44:10
**contend** [5] - 5:16, 6:1, 7:24, 8:2, 9:19
**contentions** [1] - 5:16
**context** [2] - 10:20, 49:17
**continue** [2] - 9:22, 17:15
**continues** [2] - 30:12, 36:11
**contract** [8] - 12:12, 17:16, 22:19, 43:4, 44:10, 52:13, 53:7
**contracted** [3] - 45:18, 46:23, 47:15
**contracting** [1] - 46:7
**contractual** [2] - 24:6, 37:18
**contractually** [3] - 24:8, 37:20, 41:21
**contrary** [2] - 31:19, 32:6
**conversation** [1] - 33:16
**convert** [1] - 5:15
**copy** [1] - 4:3
**corners** [1] - 4:20
**correct** [7] - 3:5,

11:19, 21:24, 27:17, 28:9, 50:10, 55:10
**Correct** [1] - 27:17
**Costello** [4] - 44:4, 45:3, 51:24, 54:3
**counsel** [5] - 2:7, 7:16, 29:8, 33:4, 45:4
**count** [3] - 18:9, 35:11, 35:12
**countervailing** [2] - 18:13, 19:18
**couple** [2] - 11:4, 41:4
**course** [3] - 26:11, 31:14, 47:1
**COURT** [64] - 1:1, 2:2, 2:9, 2:13, 2:17, 3:14, 3:18, 4:4, 4:14, 5:10, 6:3, 7:8, 8:9, 10:8, 11:1, 12:8, 13:19, 14:24, 15:20, 19:12, 19:20, 19:25, 20:2, 20:15, 21:7, 21:18, 21:25, 22:13, 23:17, 24:10, 25:7, 25:25, 26:2, 27:15, 28:17, 28:25, 29:10, 32:10, 33:3, 35:10, 36:2, 36:5, 37:9, 37:12, 37:25, 38:5, 38:13, 38:18, 39:9, 39:25, 40:24, 42:20, 44:19, 45:14, 46:6, 47:11, 48:20, 50:8, 50:25, 53:13, 53:16, 54:7, 54:15, 54:19
**court** [5] - 19:14, 20:25, 28:21, 41:11, 55:9
**Court** [41] - 1:23, 1:24, 3:10, 5:18, 5:24, 8:5, 8:6, 9:7, 15:24, 19:15, 23:4, 24:4, 24:7, 26:4, 26:8, 26:13, 28:7, 29:14, 31:4, 31:18, 32:2, 33:8, 34:9, 37:4, 37:19, 39:7, 42:8, 43:3, 43:18, 44:2, 44:24, 45:4, 46:9, 48:9, 48:20, 51:14, 52:24, 55:6, 55:15, 55:15
**courts** [5] - 12:14, 41:5, 44:23, 45:19, 49:5
**Courts** [1] - 22:17
**cover** [2] - 16:19, 27:21
**covered** [1] - 50:9

**covers** [2] - 16:8, 33:14
**create** [1] - 11:24
**creates** [1] - 48:9
**credit** [2] - 12:20, 17:13
**creditor** [2] - 17:7, 17:9
**creditor's** [1] - 22:19
**critical** [1] - 23:21
**crux** [3] - 29:15, 30:18, 36:21
**Cruz** [3] - 2:2, 35:20, 39:1
**CUMMING** [1] - 1:19
**cure** [6] - 8:19, 8:20, 29:18, 29:19, 30:8, 51:9
**cured** [3] - 13:12, 17:20, 30:12
**current** [3] - 14:14, 16:16, 20:6
**customarily** [1] - 40:3
**customers** [1] - 9:21

# D

**damage** [1] - 24:3
**damages** [11] - 18:22, 24:10, 24:15, 24:16, 25:8, 25:19, 34:10, 34:12, 35:4, 35:5
**DATE** [1] - 55:14
**date** [13] - 8:20, 9:24, 14:16, 15:1, 17:21, 18:1, 29:19, 29:22, 29:24, 29:25, 30:7, 30:8, 36:13
**days** [12] - 9:15, 9:17, 10:5, 10:11, 11:16, 11:19, 27:9, 27:15, 27:19, 29:25, 30:5, 30:12
**DE** [1] - 3:21
**deadline** [7] - 9:14, 9:17, 11:11, 11:21, 27:3, 30:17, 36:19
**debt** [14] - 9:9, 18:10, 18:11, 19:3, 19:15, 19:16, 21:14, 23:14, 33:19, 33:22, 33:23, 41:22, 41:24, 43:24
**debtor's** [4] - 14:9, 17:12, 22:20, 25:15
**debtors** [1] - 19:2
**deceptive** [4] - 16:1, 32:21, 32:22, 32:23
**decision** [2] - 26:21,

28:9
**decisions** [3] - 34:18, 34:19, 34:22
**deemed** [1] - 20:18
**deep** [1] - 50:17
**default** [27] - 3:3, 5:2, 9:22, 12:8, 13:12, 13:17, 13:24, 14:15, 16:10, 16:12, 17:20, 18:6, 19:4, 19:6, 19:10, 20:6, 20:21, 24:19, 25:6, 29:18, 29:19, 30:8, 36:24, 43:23, 51:4, 53:5
**defective** [1] - 37:7
**defend** [1] - 31:14
**defendant** [9] - 1:7, 2:11, 6:12, 41:24, 44:8, 44:11, 44:24, 46:25, 47:1
**DEFENDANT** [1] - 1:19
**defendant's** [1] - 41:19
**defense** [11] - 2:9, 2:21, 4:4, 4:5, 4:15, 4:17, 8:12, 8:13, 11:1, 12:16, 13:20
**deficiency** [1] - 32:13
**deficient** [1] - 20:18
**defined** [2] - 49:11, 49:13
**definitely** [2] - 11:14, 46:8
**definitively** [1] - 25:5
**demand** [5] - 2:19, 30:15, 38:19, 40:10, 53:3
**demonstrate** [1] - 24:1
**deny** [2] - 19:5, 45:1
**described** [1] - 25:3
**description** [1] - 29:23
**despite** [1] - 51:20
**detailed** [1] - 44:21
**details** [1] - 42:25
**determination** [1] - 7:7
**determine** [1] - 6:16
**determined** [1] - 34:24
**detriment** [3] - 34:8, 34:22, 36:1
**DIAZ** [2] - 1:23, 55:14
**Diaz** [2] - 55:5, 55:14
**difference** [1] - 33:24
**different** [7] - 7:8,

10:9, 10:25, 25:4, 32:11, 51:5, 53:22

**differently** [1] - 40:7

**difficult** [2] - 24:25, 35:5

**digital** [2] - 55:8, 55:11

**DIGITAL** [2] - 1:11, 2:1

**direct** [2] - 44:2, 44:10

**directly** [1] - 39:1

**disagree** [2] - 6:23, 8:8

**disclaimer** [7] - 3:9, 28:4, 28:6, 28:7, 28:16, 28:22, 33:9

**disclosure** [1] - 9:7

**discovery** [4] - 38:3, 38:9, 38:11

**discuss** [2] - 18:21, 52:12

**discussed** [1] - 23:6

**discussion** [1] - 52:10

**dismiss** [14] - 2:19, 4:9, 7:3, 7:7, 7:15, 8:4, 10:15, 29:5, 31:10, 31:17, 31:20, 33:8, 51:7

**dismissed** [2] - 22:2, 37:8

**dispute** [3] - 29:2, 29:4, 29:6

**dissimilar** [1] - 5:13

**distinction** [5] - 11:3, 11:5, 16:5, 23:3, 37:1

**distinguish** [1] - 12:17

**distinguishable** [1] - 12:19

**distinguishing** [2] - 13:3, 13:15

**distress** [1] - 34:23

**DISTRICT** [2] - 1:1, 1:1

**District** [30] - 1:24, 7:3, 16:25, 17:14, 18:17, 19:15, 20:13, 20:17, 22:22, 22:24, 23:23, 25:12, 25:14, 41:7, 41:12, 41:18, 42:4, 42:6, 42:12, 43:2, 43:9, 44:5, 44:15, 51:6, 51:10, 52:1, 52:8, 55:6, 55:7, 55:15

**DIVISION** [1] - 1:2

**doctors** [1] - 45:24

**document** [8] - 3:7,

5:9, 5:25, 8:23, 9:14, 40:5, 49:8, 49:10

**documents** [8] - 8:20, 9:13, 29:1, 29:4, 40:3, 40:5, 42:8, 47:18

**dollar** [1] - 34:25

**done** [2] - 8:21, 46:2

**doorway** [1] - 48:18

**down** [2] - 15:13, 31:23

**draw** [1] - 22:9

**due** [13] - 5:19, 11:8, 24:1, 24:18, 27:19, 27:20, 27:22, 29:25, 30:5, 30:6, 36:13, 41:20, 42:13

**DUNN** [1] - 1:19

**duplicative** [1] - 22:5

**during** [1] - 30:4

### E

**e(10)** [1] - 30:24

**e-mail** [1] - 4:3

**earth** [2] - 48:12, 49:9

**ease** [1] - 26:4

**easier** [1] - 19:23

**edge** [2] - 27:3, 27:7

**EDWARD** [1] - 1:16

**Edward** [1] - 2:6

**effect** [3] - 11:20, 19:11, 23:13

**effectively** [2] - 44:8, 45:6

**effort** [1] - 9:9

**either** [7] - 4:22, 12:6, 27:4, 28:23, 47:20, 49:15, 54:12

**element** [4] - 19:13, 20:4, 23:21, 37:21

**elements** [1] - 13:10

**Eleventh** [8] - 7:4, 15:23, 16:2, 26:9, 26:13, 28:8, 28:14

**emotional** [1] - 34:23

**employee** [1] - 46:25

**empowered** [1] - 39:22

**empowering** [1] - 39:19

**empowers** [1] - 40:13

**encompass** [1] - 42:10

**end** [2] - 3:9, 40:24

**enforce** [16] - 39:20, 39:22, 39:24, 43:5, 44:14, 44:17, 47:9,

49:7, 51:8, 51:12, 51:20, 52:2, 52:14, 52:17, 53:7, 53:11

**enforceable** [1] - 41:13

**enforcing** [1] - 40:16

**engage** [1] - 41:24

**enjoy** [1] - 54:15

**entered** [2] - 41:14, 51:7

**entire** [2] - 3:7, 12:20

**entitled** [3] - 35:25, 44:12, 44:13

**equally** [1] - 15:16

**equivocal** [2] - 11:14, 16:5

**ESQ** [3] - 1:13, 1:16, 1:19

**essentially** [2] - 8:13, 9:24

**establish** [3] - 8:20, 25:17, 32:14

**et** [1] - 1:4

**eventually** [1] - 31:7

**everyday** [1] - 33:16

**evidence** [11] - 10:16, 10:17, 26:23, 26:24, 35:8, 35:19, 43:19, 43:25, 44:3, 45:1, 51:22

**evidencing** [1] - 39:8

**evidentiary** [1] - 48:21

**eviscerate** [1] - 46:17

**exact** [1] - 13:13

**exactly** [4] - 13:1, 26:13, 32:3, 53:19

**example** [8] - 7:16, 21:7, 21:20, 32:10, 33:17, 45:4, 46:16, 54:3

**excellent** [1] - 2:17

**exception** [4] - 4:24, 43:3

**excuse** [8] - 16:21, 18:16, 19:4, 22:17, 22:20, 38:7, 39:19, 41:10

**execute** [2] - 40:2, 53:8

**executed** [4] - 41:23, 42:14, 48:11, 50:11

**exercise** [1] - 46:22

**exhaustive** [1] - 40:11

**Exhibit** [3] - 3:21, 3:22, 3:24

**exhibit** [1] - 3:21

**exhibits** [1] - 4:9

**exists** [1] - 43:3

**expectations** [1] - 12:5

**expiration** [1] - 15:1

**explaining** [2] - 53:24, 54:2

**explicitly** [2] - 47:21, 47:25

**expressed** [1] - 12:3

**expressly** [1] - 13:18

**extent** [2] - 16:15, 24:24

**external** [1] - 4:12

**extra** [1] - 28:18

### F

**F.Supp** [1] - 37:10

**faced** [1] - 41:8

**facie** [1] - 25:17

**fact** [19] - 7:1, 7:2, 7:11, 10:2, 12:23, 13:16, 16:4, 32:25, 35:20, 37:23, 39:6, 39:11, 41:13, 43:22, 47:4, 49:1, 51:20, 51:22, 52:16

**factor** [1] - 13:3

**factors** [1] - 13:15

**facts** [4] - 21:2, 21:5, 32:5, 32:7

**factual** [1] - 50:21

**fail** [3] - 20:23, 23:8, 37:23

**failed** [2] - 22:25, 23:25

**fails** [1] - 23:24

**failure** [4] - 14:15, 29:18, 29:19, 41:20

**fair** [3] - 32:19, 36:11, 52:19

**fairly** [1] - 14:1

**fairness** [1] - 4:21

**fall** [1] - 23:10

**false** [16] - 5:22, 5:23, 6:2, 6:15, 6:22, 7:22, 8:25, 16:20, 17:19, 22:10, 28:1, 30:20, 30:23, 31:24, 32:13, 32:18

**family** [2] - 21:14, 22:8

**Fannie** [1] - 9:18

**far** [5] - 10:2, 10:17, 29:7, 35:2, 47:2

**Fargo** [1] - 33:17

**favor** [3] - 27:6, 44:23, 50:17

**FCCPA** [9] - 22:14, 23:8, 23:11, 33:6,

41:20, 42:2, 42:12, 42:15, 42:17

**FCRR** [2] - 1:23, 55:14

**FDCPA** [14] - 9:8, 14:3, 16:7, 16:21, 18:8, 20:20, 20:22, 23:6, 24:12, 33:6, 33:25, 34:1, 42:17

**FDUTPA** [1] - 32:20

**February** [3] - 27:20, 27:21, 27:23

**federal** [6] - 10:3, 12:6, 27:11, 27:13, 36:13, 36:23

**federally** [1] - 27:17

**feelings** [1] - 38:13

**fees** [1] - 40:10

**fell** [1] - 42:5

**few** [5] - 2:21, 12:19, 18:15, 37:17, 51:2

**file** [2] - 10:24, 26:16

**filed** [6] - 15:2, 48:12, 50:4, 50:5, 51:4, 51:13

**files** [1] - 47:12

**filing** [1] - 10:21

**finally** [2] - 37:13, 44:4

**FINANCE** [1] - 1:6

**Finance** [2] - 2:3, 2:11

**finances** [2] - 34:18, 34:19

**financial** [1] - 24:3

**fine** [4] - 20:15, 28:4, 40:24, 49:6

**firm** [3] - 2:15, 13:9, 51:5

**first** [16] - 2:22, 3:1, 3:23, 4:10, 6:11, 12:1, 13:23, 18:19, 26:5, 29:18, 36:9, 40:9, 41:5, 43:1, 51:1, 53:10

**fix** [1] - 9:16

**Floor** [2] - 1:24, 55:16

**FLORIDA** [1] - 1:1

**Florida** [21] - 1:4, 1:21, 1:25, 10:13, 10:14, 10:22, 16:24, 24:9, 25:8, 33:4, 33:8, 33:24, 34:3, 42:3, 42:17, 47:4, 47:16, 52:20, 52:23, 55:7, 55:16

**focus** [1] - 39:12

**Foley** [1] - 42:6

**follow** [1] - 9:7

following [3] - 15:1, 40:3, 53:18
follows [1] - 42:4
FOR [2] - 1:13, 1:19
foreclose [11] - 10:6, 11:22, 12:12, 16:15, 17:23, 21:15, 21:16, 21:21, 21:22, 30:16, 52:25
foreclosing [1] - 10:9
foreclosure [22] - 5:20, 8:16, 8:18, 9:22, 10:1, 10:11, 10:14, 10:21, 10:22, 10:23, 15:2, 23:1, 27:19, 27:25, 28:12, 28:20, 29:21, 30:2, 30:10, 47:12, 47:24, 52:19
foreclosures [1] - 52:21
foregoing [1] - 55:10
foreseeable [1] - 41:23
forever [1] - 27:9
Forks [1] - 1:17
form [1] - 20:21
forth [5] - 2:25, 23:10, 39:16, 40:8, 41:9
forward [2] - 11:18, 31:13
founded [1] - 23:15
four [2] - 4:20, 27:23
FPR [2] - 1:23, 55:14
frankly [2] - 4:20, 6:9
fraud [3] - 35:11, 35:12, 35:15
frequency [1] - 22:18
friends [1] - 22:8
FROM [1] - 2:1
front [3] - 5:17, 6:20, 28:6
Ft [1] - 1:4
full [6] - 5:9, 5:19, 5:25, 17:22, 18:2, 30:13
fully [1] - 32:17
fundamental [1] - 45:2

**G**

Gaalswyk [1] - 33:21
generally [1] - 45:9
gist [1] - 5:12
given [1] - 10:17
Gonzalez [1] - 17:11
gotcha [1] - 31:22
great [1] - 20:2

greater [2] - 9:17, 10:2
GROSSMAN [1] - 1:14
guess [5] - 3:1, 10:10, 23:4, 31:21, 39:17
guillotine [1] - 9:25
guys [1] - 38:2

**H**

Haddad [1] - 17:14
Hamid [2] - 49:20, 52:9
Hamilton [6] - 43:1, 43:10, 44:5, 45:23, 52:7, 52:15
hand [2] - 23:7
happy [1] - 29:14
harassing [2] - 22:18, 23:9
harassment [4] - 33:11, 33:14, 34:4
hard [1] - 50:6
harm [4] - 23:23, 25:13, 31:1, 34:11
harmed [3] - 34:15, 34:21, 34:25
harmful [1] - 27:1
harms [1] - 34:14
Harris [2] - 2:8, 2:13
HARRIS [3] - 1:13, 2:15, 54:20
head [4] - 9:24, 31:4, 32:24, 34:10
heading [1] - 41:8
HEARING [1] - 1:9
hearing [2] - 40:25, 48:21
heart [1] - 14:2
heavily [1] - 13:8
held [12] - 15:24, 19:15, 20:25, 23:23, 24:5, 37:4, 37:17, 41:19, 42:4, 42:7, 42:12, 43:3
hereby [1] - 55:7
highlight [1] - 40:20
highlighted [1] - 40:12
hire [1] - 47:23
hired [2] - 43:11, 47:17
hit [3] - 13:23, 31:4, 34:9
hold [3] - 42:17
holder [3] - 17:25, 18:1, 44:17
home [4] - 21:15,

21:16, 21:22
homeowner [1] - 8:15
Homeowner [2] - 47:12, 47:13
honestly [5] - 7:2, 13:16, 16:12, 35:8, 39:21
Honor [76] - 2:6, 2:10, 2:16, 4:8, 4:23, 6:25, 7:7, 11:3, 11:25, 13:4, 13:13, 13:22, 14:7, 14:12, 15:5, 15:19, 16:19, 17:11, 18:7, 18:10, 18:15, 18:18, 18:22, 19:15, 19:24, 20:13, 20:25, 21:10, 22:15, 23:4, 23:7, 23:19, 23:25, 24:15, 24:17, 24:25, 25:11, 26:1, 36:8, 36:21, 37:1, 37:4, 37:13, 37:15, 37:24, 38:4, 38:20, 38:24, 39:21, 40:9, 40:13, 40:19, 40:21, 41:5, 41:11, 42:1, 42:7, 42:12, 42:16, 42:22, 43:2, 43:9, 43:13, 44:5, 44:16, 50:10, 51:1, 51:3, 51:17, 52:1, 52:8, 53:1, 53:10, 53:14, 54:14, 54:20
Honor's [1] - 12:20
HONORABLE [1] - 1:10
hope [1] - 47:15
hopefully [2] - 54:2, 54:11
hospital [1] - 45:24
host [4] - 11:25, 16:22, 40:8, 42:3
hours [1] - 40:25
HOWARD [1] - 1:16
hundred [2] - 50:15, 50:16
hurt [1] - 38:13

**I**

idea [1] - 46:10
identical [5] - 13:1, 41:6, 41:8, 41:12, 51:4
identified [1] - 41:8
identify [1] - 20:18
illegitimate [1] - 23:15
Illinois [3] - 17:14,

51:6, 53:15
imagine [1] - 40:15
immaterial [1] - 6:5
immediacy [9] - 11:4, 11:9, 13:6, 13:10, 13:16, 13:17, 26:6, 36:17, 36:25
immediate [3] - 13:14, 17:22, 30:13
immediately [6] - 3:10, 11:22, 14:22, 18:2, 21:15, 36:12
impermissible [1] - 14:5
implicit [1] - 31:3
imply [1] - 26:19
important [1] - 11:5, 33:10, 42:24
improperly [1] - 3:7
in-any-way-related-to [1] - 42:9
inaccurate [1] - 19:10
inappropriate [1] - 31:10
inclined [1] - 8:7
include [4] - 5:9, 10:4, 11:20, 50:8
included [3] - 3:7, 13:17, 13:18, 15:7, 17:2, 23:14, 43:14, 52:6
includes [1] - 33:11
including [1] - 44:17
inclusive [1] - 33:13
incorporated [1] - 5:3
incur [1] - 17:15
indeed [1] - 44:9
indicate [1] - 48:20
indicated [1] - 44:6
indicating [1] - 15:24
indication [1] - 36:18
indiscernible [2] - 34:2, 53:22
indistinguishable [1] - 37:5
individual [2] - 31:2, 35:12
individualized [1] - 35:5
individuals [1] - 34:21
induces [1] - 32:16
information [4] - 15:11, 17:7, 25:5, 34:22
informational [2] - 24:4, 25:3
informed [1] - 34:17

initialed [1] - 39:2
injured [2] - 24:6, 37:18
injuries [1] - 25:3
injury [18] - 18:12, 18:19, 18:24, 19:1, 19:7, 19:13, 19:17, 23:21, 24:1, 24:3, 24:4, 25:3, 25:15, 25:21, 34:11, 37:21, 37:22, 46:25
instances [1] - 45:2
instant [2] - 42:10, 51:3
instead [1] - 34:19
instruct [1] - 3:15
instructed [1] - 6:18
instruction [1] - 6:20
instructive [1] - 14:8
instrument [8] - 17:23, 30:7, 30:14, 30:16, 39:20, 39:23, 53:8, 53:12
instruments [1] - 29:9
intend [2] - 13:12, 14:22
intention [2] - 15:18, 16:11
interest [9] - 18:3, 24:21, 40:14, 40:17, 45:10, 45:16, 46:1, 46:5, 46:18
interested [1] - 12:10
interpretation [1] - 12:4
investor [1] - 39:4
invites [1] - 50:23
invoke [3] - 46:11, 48:4, 49:23
involved [2] - 13:9, 46:18
involvement [1] - 44:10
involves [1] - 49:21
involving [1] - 26:7
issuance [1] - 53:19
issue [16] - 3:13, 4:14, 6:13, 11:11, 12:16, 16:3, 19:3, 35:9, 38:9, 39:4, 41:18, 42:22, 48:6, 51:19, 53:6, 53:15
issued [3] - 51:15, 52:6, 52:7
issues [4] - 6:16, 11:25, 26:7, 35:13
itself [5] - 39:14, 44:10, 44:14, 48:6, 49:6

**Izzie** [1] - 3:18

## J

**January** [3] - 27:20, 27:22
**job** [7] - 6:16, 46:23, 47:15, 47:18, 53:24, 54:1, 54:3
**Judge** [10] - 3:6, 4:2, 5:14, 7:10, 26:3, 28:5, 38:8, 44:20, 46:24, 54:13
**JUDGE** [1] - 1:10
**judgment** [6] - 7:12, 7:20, 7:22, 8:5, 14:10, 35:9
**judicially** [1] - 5:1
**July** [1] - 51:6
**jurisdictions** [1] - 51:5
**juror** [1] - 6:19
**jury** [34] - 2:19, 6:15, 6:17, 7:12, 8:7, 33:25, 38:19, 38:24, 39:3, 39:10, 39:24, 41:6, 41:12, 41:13, 41:17, 42:1, 42:5, 42:9, 42:18, 43:5, 44:18, 46:11, 47:9, 48:4, 48:13, 48:14, 49:2, 49:3, 49:12, 49:23, 50:3, 50:5, 51:20, 52:2

## K

**Katherine** [2] - 2:8, 2:14
**keep** [1] - 29:11
**key** [4] - 13:16, 15:18, 23:3, 37:1
**kind** [14] - 13:6, 13:23, 13:25, 14:2, 16:8, 18:8, 22:9, 24:16, 24:21, 25:1, 36:9, 36:10, 41:17, 43:18
**knowingly** [2] - 41:14, 48:13
**knowledge** [1] - 50:13
**known** [1] - 49:9
**knows** [2] - 9:5, 23:7

## L

**lacking** [1] - 18:24
**language** [29] - 5:5, 5:7, 5:11, 5:12, 6:4,

9:19, 10:5, 11:6, 11:13, 11:14, 13:2, 13:4, 13:13, 13:14, 13:17, 14:22, 16:5, 28:18, 28:22, 36:11, 39:13, 39:18, 40:1, 40:13, 48:7, 49:5, 49:6, 52:4, 53:9
**largely** [3] - 34:6, 34:7, 35:3
**last** [1] - 38:11
**lastly** [1] - 23:18
**law** [42] - 3:15, 6:11, 6:13, 10:3, 10:13, 10:14, 12:6, 12:8, 12:13, 12:24, 13:7, 14:6, 17:4, 23:2, 24:7, 24:9, 25:8, 27:11, 27:14, 28:10, 28:15, 31:14, 32:21, 33:1, 35:2, 36:13, 36:23, 37:6, 37:19, 42:3, 42:24, 44:20, 45:5, 47:16, 48:7, 48:25, 49:16, 50:14, 51:5, 51:25, 52:11, 52:22
**laws** [1] - 28:11
**lawsuit** [3] - 10:21, 10:24, 48:11
**least** [10] - 6:18, 11:6, 14:13, 15:7, 15:9, 21:2, 26:14, 28:14, 41:25, 51:10
**leave** [1] - 44:18
**leaves** [1] - 29:25
**LeBlanc** [1] - 26:8
**legal** [4] - 18:5, 49:4, 53:6, 53:11
**legally** [8] - 14:5, 16:16, 17:2, 17:13, 17:15, 19:8, 30:19, 30:23
**legitimacy** [1] - 22:19
**lender** [8] - 17:21, 44:9, 44:12, 45:6, 45:8, 45:15, 46:4, 48:15
**lenders** [4] - 45:8, 46:1, 53:21, 54:6
**lends** [1] - 45:8
**less** [3] - 5:18, 9:15, 53:14
**letter** [32] - 3:3, 3:11, 3:23, 4:3, 6:14, 7:21, 7:25, 8:2, 8:18, 8:21, 8:22, 8:23, 9:2, 9:11, 9:17, 10:7, 10:20, 12:11, 12:15, 12:18, 12:21, 21:21, 23:1,

26:9, 27:21, 28:5, 28:13, 28:18, 29:17, 35:21, 36:1
**letters** [8] - 4:6, 12:3, 12:9, 12:18, 13:7, 13:9, 23:13, 23:15
**Levinson** [2] - 41:18, 41:25
**liability** [2] - 8:6, 34:2
**lien** [1] - 51:4
**likely** [1] - 42:8
**line** [9] - 3:15, 9:18, 10:20, 11:7, 13:7, 13:8, 14:14, 15:15, 31:23
**list** [2] - 40:4, 40:11
**listen** [1] - 54:8
**literally** [2] - 11:6, 13:11
**litigated** [1] - 31:24
**LLP** [1] - 1:19
**load** [1] - 12:5
**loan** [28] - 19:4, 20:6, 27:6, 36:23, 39:5, 41:10, 42:8, 43:11, 43:21, 43:24, 44:7, 44:11, 44:16, 45:3, 45:8, 49:11, 49:12, 51:11, 51:19, 51:22, 51:23, 52:2, 52:16, 52:20, 52:24, 54:5
**loans** [9] - 16:16, 17:3, 18:5, 36:15, 36:23, 39:4, 43:15, 43:17, 45:11
**look** [7] - 3:6, 3:19, 4:16, 4:19, 19:20, 40:19, 49:4
**looked** [1] - 40:1
**looking** [1] - 3:20
**looks** [1] - 16:25
**lose** [3] - 29:13, 31:15, 31:17
**loses** [3] - 31:21, 32:5, 32:6
**loss** [1] - 24:22
**losses** [2] - 24:8, 37:20
**LP** [1] - 1:6

## M

**Madura** [2] - 7:5, 15:23
**Mae's** [1] - 9:18
**magic** [2] - 39:13, 39:18
**MAGINNIS** [32] - 1:16, 1:16, 2:6, 3:6,

3:17, 4:1, 5:13, 7:10, 9:4, 10:13, 26:3, 27:17, 28:20, 29:6, 29:12, 32:12, 33:4, 35:14, 36:4, 38:6, 38:8, 38:15, 44:20, 45:15, 46:8, 47:14, 48:25, 50:12, 53:14, 53:17, 54:13, 54:18
**Maginnis** [7] - 2:7, 5:5, 5:11, 26:2, 36:9, 44:19, 51:25
**Maginnis'** [1] - 13:9
**Maginnis's** [1] - 51:5
**MAGISTRATE** [1] - 1:10
**mail** [1] - 4:3
**mailing** [2] - 25:21, 25:22
**main** [1] - 25:1
**manner** [2] - 22:7, 22:11
**mark** [2] - 8:14, 11:21
**Martins** [2] - 35:21, 38:25
**Martorella** [1] - 42:11
**matter** [3] - 15:24, 26:17, 27:18
**McCABE** [1] - 1:10
**mean** [16] - 3:20, 11:12, 19:1, 22:4, 26:19, 31:19, 32:4, 38:13, 39:15, 40:9, 40:11, 46:8, 48:21, 49:17, 49:25, 50:14
**meaning** [1] - 15:6
**means** [1] - 27:19
**meant** [1] - 48:24
**meet** [1] - 27:3
**meeting** [1] - 24:9
**meets** [1] - 50:6
**memorable** [1] - 38:17
**mention** [2] - 37:16, 43:1
**mentioned** [11] - 5:5, 12:1, 14:6, 15:23, 37:15, 37:17, 44:6, 45:4, 45:23, 52:8, 55:9
**mentions** [1] - 43:18
**mercy** [1] - 9:25
**mere** [2] - 39:10, 39:14
**merits** [1] - 23:24
**messed** [1] - 20:12
**met** [4] - 7:21, 7:25, 16:18, 33:22
**Miami** [4] - 1:24,

1:25, 55:16, 55:16
**MIAMI** [1] - 1:2
**Middle** [8] - 20:13, 20:17, 22:22, 22:24, 41:7, 41:12, 41:18, 42:4
**might** [5] - 25:4, 26:15, 33:15, 44:24, 44:25
**MILBERG** [1] - 1:13
**Miljkovic** [2] - 20:12, 32:1
**million** [1] - 23:13
**minimum** [1] - 43:15
**minute** [1] - 53:15
**mirror** [1] - 26:3
**misconduct** [1] - 20:19
**misleading** [3] - 6:15, 6:22, 7:13
**misrepresent** [1] - 32:9
**misrepresentation** [12] - 9:9, 18:21, 23:18, 23:22, 23:24, 25:9, 25:18, 32:14, 34:9, 35:16, 37:14, 37:22
**misrepresentations** [7] - 24:2, 24:9, 25:16, 29:16, 31:24, 31:25, 34:15
**misrepresenting** [1] - 34:7
**misstatements** [1] - 33:23
**misstating** [1] - 47:15
**misunderstand** [1] - 45:19
**misunderstanding** [2] - 45:3, 54:4
**mixed** [2] - 44:20, 50:16
**mod** [1] - 27:6
**moment** [3] - 7:20, 7:23, 40:23
**money** [5] - 19:5, 27:4, 34:14, 34:16, 53:4
**months** [2] - 27:11, 27:23
**Moore** [4] - 28:3, 28:6, 28:8, 33:9
**moreover** [1] - 30:4
**Morgan** [1] - 1:14
**mortgage** [46] - 4:21, 8:20, 8:22, 9:12, 9:14, 10:4, 11:24, 12:3, 12:7, 13:25, 16:17,

17:19, 18:4, 27:13,
27:18, 27:20, 27:25,
29:1, 33:19, 36:22,
41:10, 41:17, 41:21,
41:24, 42:14, 42:18,
44:8, 44:9, 44:14,
44:17, 45:25, 46:1,
46:17, 46:20, 47:6,
47:18, 49:11, 49:18,
49:22, 51:9, 51:12,
52:13, 52:14, 52:17,
53:20
  **mortgages** [2] -
38:24, 48:7
  **mortgagor** [1] -
49:24
  **most** [7] - 13:15,
16:25, 17:4, 38:11,
51:18, 52:5, 52:11
  **motion** [19] - 2:18,
2:19, 4:9, 4:13, 7:3,
7:7, 7:14, 8:4, 10:15,
29:5, 31:10, 31:17,
31:20, 38:1, 38:2,
38:18, 39:7, 51:7,
54:9
  **MOTION** [1] - 1:9
  **motions** [1] - 2:18
  **move** [5] - 8:9,
11:18, 16:20, 22:14,
35:9
  **moves** [1] - 31:13
  **moving** [1] - 9:17
  **MR** [32] - 2:6, 2:15,
3:6, 3:17, 4:1, 5:13,
7:10, 9:4, 10:13, 26:3,
27:17, 28:20, 29:6,
29:12, 32:12, 33:4,
35:14, 36:4, 38:6,
38:8, 38:15, 44:20,
45:15, 46:8, 47:14,
48:25, 50:12, 53:14,
53:17, 54:13, 54:18,
54:20
  **MS** [37] - 2:10, 4:8,
4:23, 6:25, 11:3,
12:19, 13:22, 15:5,
15:21, 19:14, 19:22,
20:1, 20:3, 20:16,
21:10, 21:24, 22:4,
22:14, 23:18, 24:14,
25:10, 26:1, 36:8,
37:10, 37:13, 38:4,
38:7, 38:17, 38:20,
39:15, 40:8, 41:3,
42:21, 50:10, 51:1,
54:14, 54:17
  **Murphy** [1] - 41:11
  **must** [3] - 30:6, 30:8,
40:22

# N

  **nail** [2] - 31:4, 34:10
  **name** [3] - 20:14,
32:2, 52:21
  **named** [1] - 39:2
  **narrowed** [1] - 14:13
  **nature** [3] - 22:9,
23:16, 25:23
  **necessary** [1] - 53:7
  **need** [7] - 5:8, 21:5,
21:6, 21:13, 45:21,
48:21, 48:22
  **needed** [1] - 29:23
  **needs** [1] - 12:21
  **negligent** [10] -
18:21, 23:18, 23:21,
23:23, 24:9, 25:9,
25:17, 34:9, 37:14,
37:21
  **negotiation** [1] -
27:6
  **net** [1] - 38:9
  **neutral** [2] - 47:17,
47:20
  **never** [4] - 3:4, 20:7,
32:17, 49:8
  **Newton** [1] - 42:4
  **next** [5] - 6:10, 8:9,
11:9, 11:22, 29:13
  **Ninth** [2] - 17:1,
17:12
  **NO** [1] - 1:2
  **nominal** [4] - 25:8,
25:21, 34:10, 34:12
  **none** [3] - 14:22,
16:23, 16:24
  **North** [5] - 1:15,
1:17, 1:20, 1:24,
55:16
  **Northern** [4] - 17:14,
25:14, 51:6, 51:10
  **note** [9] - 8:19,
17:24, 18:1, 30:7,
42:14, 43:13, 46:17,
48:15
  **noted** [4] - 33:4,
41:7, 46:9, 53:1
  **notes** [2] - 4:21,
40:22
  **nothing** [9] - 30:1,
46:19, 46:20, 46:21,
48:3, 48:5, 50:21,
50:24, 54:13
  **notice** [19] - 3:23,
5:21, 8:14, 11:20,
13:24, 14:15, 15:12,
17:21, 17:25, 19:6,
20:6, 24:19, 30:12,
30:15, 33:22, 36:11,

44:13, 51:9, 51:13
  **noticed** [1] - 5:1
  **notices** [13] - 5:2,
11:10, 13:18, 16:10,
19:10, 20:21, 25:6,
25:22, 36:16, 36:24,
43:23, 51:4, 53:5
  **notifying** [1] - 9:21
  **nowadays** [1] -
30:25
  **nowhere** [1] - 11:10
  **number** [1] - 11:5
  **numbered** [2] - 41:9,
53:10

# O

  **oath** [1] - 48:22
  **objectively** [1] - 17:9
  **obligated** [3] - 8:19,
19:8, 41:21
  **obligation** [4] - 8:17,
33:19, 44:7, 45:5
  **obligations** [9] -
9:18, 19:4, 20:6, 24:6,
33:23, 37:18, 40:9,
44:9, 45:6
  **obviously** [17] - 5:24,
7:4, 10:8, 16:3, 16:14,
16:18, 20:5, 21:17,
21:23, 24:25, 28:21,
38:1, 39:5, 44:2,
51:12, 53:5, 53:24
  **occur** [4] - 14:20,
14:21
  **OF** [2] - 1:1, 1:11
  **offer** [1] - 35:15
  **official** [2] - 1:23,
4:25
  **Official** [1] - 55:15
  **often** [3] - 35:17,
45:19, 49:1
  **once** [1] - 18:5
  **one** [37] - 2:14, 3:3,
3:22, 5:17, 5:23, 6:1,
8:12, 8:15, 11:5, 12:9,
13:15, 13:25, 14:7,
14:24, 15:15, 15:24,
16:2, 20:3, 20:15,
21:11, 22:16, 23:20,
24:12, 24:16, 26:8,
26:16, 28:3, 29:25,
37:6, 37:9, 38:21,
42:24, 50:8, 50:10,
50:12, 51:5, 53:2
  **ones** [2] - 25:1,
51:18
  **ongoing** [1] - 38:4
  **opinion** [1] - 51:14
  **opportunity** [1] -

34:18
  **opposite** [1] - 17:5
  **optimal** [2] - 34:18,
34:19
  **option** [2] - 17:22,
30:13
  **options** [1] - 12:24
  **order** [5] - 14:9,
20:25, 51:7, 53:19,
53:25
  **original** [1] - 45:15
  **ostensibly** [2] -
47:17, 47:19
  **otherwise** [2] - 19:8,
53:7
  **outline** [1] - 38:21
  **outside** [2] - 5:15,
47:2
  **outweighed** [2] -
18:12, 19:17
  **overdue** [1] - 18:1
  **overlap** [1] - 34:6
  **owe** [2] - 19:5, 34:14
  **owed** [2] - 24:8,
37:20
  **owing** [1] - 24:18
  **own** [1] - 52:21
  **owned** [1] - 39:4
  **owner** [8] - 39:6,
43:12, 43:24, 45:11,
45:17, 45:21, 51:23,
53:4
  **owners** [1] - 54:5
  **owns** [1] - 45:11

# P

  **package** [1] - 45:9
  **page** [23] - 3:3, 3:4,
3:8, 3:9, 3:12, 3:22,
3:23, 3:25, 4:10, 5:6,
5:12, 5:17, 5:23, 6:1,
12:23, 29:18, 30:11,
39:2, 41:1
  **Pages** [1] - 1:6
  **pages** [2] - 3:11,
12:10
  **paid** [4] - 18:3, 19:6,
24:17, 24:20
  **pain** [1] - 24:24
  **papers** [1] - 4:6
  **paragraph** [5] -
17:19, 40:10, 41:9,
53:2, 53:10
  **parameters** [1] -
23:10
  **paraphrasing** [1] -
26:10
  **part** [1] - 38:11
  **partial** [1] - 21:3

  **participation** [1] -
47:24
  **particularly** [5] -
13:10, 14:7, 42:6,
50:18, 50:20
  **parties** [2] - 9:5,
41:23
  **party** [6] - 43:4,
45:18, 46:7, 47:15,
47:20, 52:13
  **past** [4] - 27:19,
27:22, 29:25, 30:5
  **paths** [1] - 53:22
  **PATRICIA** [2] - 1:23,
55:14
  **Patricia** [1] - 55:5
  **pattern** [1] - 32:25
  **pay** [11] - 9:23,
14:10, 18:1, 18:2,
19:8, 21:14, 26:10,
30:1, 30:6, 33:20,
41:20
  **payment** [7] - 11:8,
15:25, 17:22, 27:21,
30:4, 30:13, 36:13
  **payments** [4] - 24:8,
37:20, 43:23, 52:25
  **pending** [2] - 38:1,
38:2, 54:9
  **people** [3] - 21:12,
48:22, 53:20
  **per** [1] - 19:14
  **perceived** [1] - 32:15
  **perform** [1] - 45:18
  **perhaps** [1] - 7:12
  **period** [3] - 16:13,
30:5, 50:9
  **permissible** [2] -
16:16, 17:16
  **permitted** [1] - 51:19
  **person** [2] - 14:25,
15:3
  **personal** [1] - 46:24
  **personalities** [1] -
22:21
  **persuasive** [1] -
16:23
  **PHILLIPS** [1] - 1:13
  **phone** [2] - 21:13,
33:13
  **phrase** [1] - 5:18
  **phrases** [1] - 5:23
  **piece** [4] - 26:6,
28:20, 49:15, 50:3
  **Pierce** [1] - 1:4
  **place** [3] - 10:22,
12:5, 40:14
  **plain** [1] - 9:12
  **plainly** [4] - 7:13,

8:6, 30:22
**plaintiff** [15] - 2:4, 2:7, 3:1, 4:10, 6:12, 7:8, 8:25, 21:25, 33:18, 33:19, 39:2, 43:10, 46:25, 50:18, 54:13
**plaintiffs** [17] - 11:5, 13:8, 16:22, 17:5, 20:19, 22:25, 23:25, 24:5, 25:2, 31:2, 37:17, 38:25, 44:23, 46:24, 48:19, 50:15, 52:12
**Plaintiffs** [1] - 1:5
**PLAINTIFFS** [1] - 1:13
**plaintiffs'** [10] - 11:15, 12:4, 17:7, 20:22, 37:5, 41:20, 42:7, 42:12, 43:15, 52:6
**plausibility** [1] - 22:20
**play** [2] - 23:5, 42:19
**plays** [1] - 31:9
**plead** [9] - 10:19, 11:17, 22:2, 26:23, 34:13, 34:20, 35:4, 35:7, 36:14
**pleadings** [1] - 5:15
**pleads** [1] - 21:25
**PLLC** [1] - 1:14
**plus** [1] - 18:3
**POA** [1] - 47:7
**point** [12] - 13:1, 14:13, 23:4, 23:19, 26:22, 27:7, 27:16, 28:1, 28:25, 43:9, 46:9, 51:13
**points** [1] - 12:20
**poor** [1] - 54:1
**portfolios** [1] - 45:11
**portion** [5] - 17:18, 18:23, 18:24, 20:8, 52:12
**position** [3] - 7:11, 15:3, 48:22
**possible** [3] - 8:15, 8:24, 49:18
**possibly** [1] - 54:10
**postage** [1] - 25:23
**potential** [3] - 9:21, 34:10, 34:23
**potentially** [2] - 22:10, 38:10
**power** [22] - 39:12, 39:13, 39:17, 39:18, 40:2, 40:5, 45:22, 46:6, 46:8, 46:10,

46:12, 46:21, 47:21, 48:3, 48:9, 48:10, 50:4, 50:22, 51:19, 51:21, 52:23, 53:1
**powers** [5] - 39:8, 39:15, 39:16, 44:1, 52:22
**practical** [1] - 11:23
**practice** [7] - 16:1, 21:8, 21:9, 22:1, 22:18, 32:22
**practices** [2] - 36:14, 41:25
**pre** [1] - 52:7
**precedent** [2] - 7:21, 8:1
**prefer** [1] - 5:24
**prepared** [1] - 46:9
**prescribed** [2] - 11:11, 36:19
**present** [6] - 11:10, 14:23, 15:17, 21:5, 21:6, 40:23
**presented** [1] - 52:24
**presuit** [1] - 44:13
**presumed** [1] - 15:10
**pretty** [2] - 16:4, 40:11
**previously** [4] - 14:6, 15:22, 37:15, 51:16
**prima** [1] - 25:17
**principal** [6] - 18:3, 40:6, 40:15, 43:4, 52:18, 53:12
**problem** [5] - 9:11, 9:12, 9:16, 9:21, 31:6
**procedurally** [1] - 37:25
**proceed** [3] - 5:20, 6:6, 21:1
**Proceedings** [1] - 54:21
**PROCEEDINGS** [1] - 2:1
**proceedings** [3] - 5:21, 23:1, 55:8
**prodigy** [1] - 52:15
**Professional** [1] - 55:5
**proffering** [1] - 6:5
**prohibit** [1] - 10:11
**prohibitive** [1] - 7:6
**prohibits** [1] - 10:10
**proof** [1] - 35:15
**properly** [2] - 34:13, 34:17
**property** [4] - 14:9, 29:21, 30:10, 46:18
**proposition** [2] - 44:16, 52:2

**protection** [2] - 49:21, 50:19
**protections** [1] - 10:3
**protects** [1] - 27:11
**prove** [6] - 24:25, 25:20, 25:24, 30:21, 31:1, 34:20
**proved** [1] - 34:4
**provide** [2] - 30:18, 52:24
**provided** [1] - 22:11
**provides** [3] - 17:20, 46:21, 53:2
**providing** [3] - 14:19, 40:17, 51:14
**proving** [1] - 18:25
**provision** [17] - 12:11, 12:22, 18:8, 18:10, 37:8, 38:25, 39:1, 39:24, 41:6, 41:8, 41:12, 42:1, 42:5, 42:9, 42:19, 51:9
**provisions** [2] - 20:20, 36:17
**public** [1] - 29:7
**publicly** [2] - 4:24, 29:8
**pull** [1] - 38:20
**pulled** [2] - 29:7, 40:22
**purchased** [1] - 45:9
**purely** [1] - 49:5
**purported** [2] - 13:5, 17:2
**purportedly** [1] - 17:10
**purpose** [1] - 45:10
**pursuant** [12] - 12:24, 17:8, 18:4, 18:10, 36:13, 36:14, 36:22, 36:23, 39:16, 39:21, 47:18, 52:22
**pursue** [1] - 12:24
**pursuing** [1] - 32:13
**put** [4] - 4:5, 28:10, 34:25, 48:22
**puts** [1] - 9:18

---

## Q

**qualify** [1] - 21:8
**questions** [8] - 2:22, 2:23, 2:25, 13:8, 13:19, 26:6, 36:6, 48:23
**quickly** [3] - 37:14, 52:5, 54:11
**quiet** [1] - 46:16

**quite** [4] - 4:20, 6:9, 23:4, 51:2
**quote** [2] - 13:13, 18:17
**quotes** [1] - 40:22

---

## R

**Raleigh** [2] - 1:15, 1:17
**ratcheted** [1] - 21:17
**reach** [1] - 27:5
**read** [11] - 6:10, 6:13, 11:5, 11:8, 12:9, 12:21, 15:11, 15:14, 35:21, 53:13
**reading** [5] - 11:16, 14:18, 29:17, 36:16, 36:24
**reads** [2] - 14:25, 15:3
**reality** [4] - 9:20, 14:10, 27:7, 28:2
**reality-based** [1] - 14:10
**really** [21] - 6:5, 10:16, 12:2, 13:23, 15:18, 16:20, 16:23, 17:5, 18:22, 23:8, 23:10, 24:2, 25:5, 27:6, 32:11, 36:3, 37:14, 39:12, 40:11, 40:13, 40:18
**reason** [6] - 20:23, 23:8, 28:17, 31:25, 32:3, 44:22
**reasonable** [2] - 6:17, 6:19
**reasonably** [3] - 18:13, 19:18, 20:4
**reasons** [5] - 5:23, 12:10, 23:6, 28:24, 50:2
**rebuttal** [2] - 36:7, 50:25
**received** [1] - 5:19
**recent** [2] - 44:21, 50:17
**recently** [2] - 51:6, 51:15
**record** [4] - 3:2, 6:9, 7:22, 50:9
**recorded** [2] - 4:25, 7:20
**RECORDING** [2] - 1:11, 2:1
**recording** [2] - 55:8, 55:11
**records** [2] - 5:1, 29:7

**quite** [4] - 4:20, 6:9,
**recover** [4] - 22:5, 25:23, 40:10, 53:3
**recoverable** [1] - 18:23
**redundant** [1] - 31:12
**refer** [5] - 16:6, 26:11, 27:18, 27:24, 47:23
**reference** [2] - 13:2, 52:15
**referenced** [3] - 5:6, 12:9, 32:1
**referencing** [1] - 13:2
**referral** [1] - 10:23
**referred** [1] - 15:25
**regard** [2] - 20:11, 43:6
**regarding** [8] - 23:6, 28:12, 29:16, 30:24, 34:10, 34:18, 34:19, 49:18
**regardless** [1] - 22:4
**regards** [6] - 16:9, 20:9, 36:9, 36:10, 37:3, 41:16
**Registered** [1] - 55:5
**Regulation** [1] - 10:10
**rejected** [1] - 32:2
**relate** [4] - 41:16, 42:17, 49:23, 49:25
**related** [1] - 42:9
**relating** [5] - 38:10, 49:16, 49:17, 52:4
**relationship** [11] - 39:8, 39:11, 39:14, 43:19, 44:1, 44:3, 46:14, 48:2, 48:4, 48:10, 52:16
**relevant** [1] - 3:8
**reliance** [3] - 25:16, 35:17, 35:18
**relied** [7] - 12:14, 17:4, 34:21, 35:23, 36:1, 44:5
**relief** [1] - 46:19
**relies** [1] - 32:5
**rely** [5] - 13:8, 16:22, 50:13, 50:22, 52:12
**relying** [2] - 5:25, 46:10
**remain** [1] - 27:8
**remained** [1] - 20:5
**remaining** [1] - 38:11
**remember** [1] - 37:12
**reminder** [2] - 14:10, 14:19
**reopening** [1] -

38:10
**reply** [3] - 39:7, 46:4, 50:11
**report** [1] - 17:12
**Reporter** [3] - 1:23, 55:5, 55:15
**represent** [2] - 47:19
**representation** [3] - 16:20, 17:19, 32:18
**representations** [2] - 30:20, 30:24
**require** [3] - 17:22, 18:2, 30:13
**required** [6] - 8:13, 11:24, 12:4, 12:6, 21:1, 50:7
**requirement** [2] - 31:3, 44:13
**requires** [2] - 8:23, 47:5
**rescue** [1] - 37:6
**research** [1] - 49:4
**resolved** [3] - 7:2, 7:14, 16:13
**resort** [1] - 31:8
**RESPA** [2] - 6:2, 27:18
**respect** [1] - 41:15
**respond** [1] - 11:2
**response** [3] - 6:12, 26:5, 52:6
**rest** [1] - 54:15
**restrictions** [1] - 6:2
**result** [10] - 8:18, 14:16, 16:11, 16:12, 19:6, 29:20, 30:1, 30:2, 30:9
**resulting** [1] - 25:15
**rights** [15] - 29:16, 29:23, 30:24, 32:9, 34:7, 34:17, 44:9, 45:6, 46:22, 47:3, 47:5, 48:14, 48:19, 49:10
**risks** [2] - 8:15, 8:24
**Road** [1] - 1:17
**Robinson** [1] - 2:8
**roles** [1] - 54:4
**RPR** [2] - 1:23, 55:14
**rudimentary** [1] - 15:10
**rule** [1] - 43:3
**ruled** [1] - 16:3
**rules** [1] - 9:8
**running** [1] - 38:23
**Ruth** [1] - 17:6
**RYON** [1] - 1:10

## S

**sale** [3] - 29:20, 30:2, 30:9
**SALLY** [1] - 1:4
**Saltero** [1] - 23:22
**Sara** [1] - 2:10
**SARA** [1] - 1:19
**satisfying** [2] - 24:6, 37:18
**Savage** [2] - 22:24, 33:7
**saw** [1] - 47:21
**scope** [2] - 43:7, 47:1
**SCOTT** [1] - 1:13
**Scott** [2] - 2:7, 2:13
**searched** [1] - 3:2
**Second** [1] - 15:9
**second** [3] - 5:17, 12:23, 20:8
**Section** [3] - 17:24, 18:7, 37:7
**section** [1] - 22:16
**secured** [4] - 17:23, 29:20, 30:9, 30:14
**securitized** [1] - 45:9
**security** [10] - 12:25, 17:23, 30:7, 30:14, 30:16, 39:20, 39:23, 40:17, 53:8, 53:12
**see** [5] - 3:6, 3:11, 5:14, 40:1, 51:17
**seem** [2] - 12:15, 48:20
**Selene** [35] - 2:2, 2:11, 5:19, 7:24, 10:19, 11:13, 11:18, 12:4, 16:14, 16:17, 17:3, 18:4, 30:13, 31:13, 39:5, 39:16, 39:19, 40:14, 40:17, 43:14, 43:16, 43:23, 45:17, 46:3, 46:12, 46:13, 46:19, 46:22, 47:12, 47:22, 48:16, 51:8, 51:11, 53:10
**SELENE** [1] - 1:4
**Selene's** [2] - 13:18, 36:14
**sell** [1] - 14:9
**send** [10] - 5:18, 8:14, 8:17, 8:20, 8:23, 17:25, 25:22, 27:20, 40:20, 53:5
**sending** [1] - 9:11
**sense** [1] - 34:21
**sensitivity** [1] - 22:21
**sent** [4] - 20:7,

23:12, 43:23, 45:9
**separate** [7] - 20:10, 20:24, 22:10, 23:8, 37:3, 46:22, 49:21
**separately** [1] - 41:9
**September** [1] - 55:14
**service** [2] - 43:11, 44:7
**serviced** [1] - 39:5
**servicer** [12] - 14:9, 39:5, 43:17, 44:11, 45:21, 46:7, 47:11, 49:22, 51:11, 51:22, 52:2, 52:17
**servicers** [8] - 45:3, 47:11, 49:12, 51:19, 52:20, 52:24, 53:21, 54:5
**services** [2] - 43:14, 49:11
**servicing** [4] - 43:19, 43:21, 43:22, 45:5
**set** [3] - 23:10, 39:16, 41:9
**Seterus** [4] - 13:8, 28:21, 28:22, 33:7
**sets** [1] - 40:8
**settled** [1] - 37:6
**Seventh** [3] - 16:25, 17:1, 17:6
**shall** [1] - 14:21
**Shallenburg** [1] - 49:19
**share** [1] - 17:7
**sheriff** [1] - 14:9
**show** [6] - 8:5, 10:17, 26:24, 35:15, 35:17, 35:18
**shown** [3] - 21:2, 23:23, 25:13
**side** [2] - 46:24, 54:12
**sign** [1] - 40:5
**signed** [2] - 39:1, 43:4
**similar** [6] - 5:16, 6:1, 33:20, 43:21, 51:3, 52:23
**similarly** [1] - 14:12
**simply** [1] - 16:10
**single** [3] - 11:7, 14:14, 45:10
**singular** [2] - 12:22, 15:15
**sister** [1] - 51:2
**situation** [9] - 9:20, 20:5, 24:18, 28:2, 33:1, 33:12, 34:14, 44:12, 46:16

**Six** [1] - 1:17
**skip** [1] - 13:25
**skooch** [1] - 18:7
**Soltero** [1] - 25:12
**someone** [2] - 21:20, 24:12
**sometimes** [1] - 25:22
**soon** [1] - 54:10
**sophisticated** [6] - 6:19, 15:7, 15:10, 21:2, 26:14, 28:14
**sorry** [3] - 20:12, 37:10, 45:14
**sort** [6] - 2:24, 6:4, 6:23, 12:11, 27:5, 31:3
**sound** [2] - 28:13, 46:3
**sounds** [1] - 46:2
**Southern** [14] - 7:3, 18:17, 19:15, 23:22, 25:12, 42:6, 42:11, 43:2, 43:8, 44:5, 44:15, 52:1, 52:8, 55:6
**SOUTHERN** [1] - 1:1
**specific** [6] - 16:3, 32:24, 39:11, 47:3, 47:5, 50:21
**specifically** [6] - 3:12, 17:20, 29:17, 48:1, 51:8, 52:9
**specified** [5] - 14:16, 17:21, 29:19, 29:22, 29:24
**SPS** [3] - 43:10, 43:11, 43:20
**stage** [1] - 31:11
**stand** [3] - 33:5, 44:16, 52:1
**standard** [5] - 6:19, 8:5, 15:8, 50:1, 50:7
**standing** [3] - 31:1, 42:22, 51:8
**start** [2] - 2:24, 13:20, 51:2
**started** [1] - 36:10
**starting** [4] - 2:4, 10:11, 26:5, 27:23
**state** [8] - 15:17, 16:11, 17:5, 22:25, 28:1, 32:20, 32:21, 47:16
**statement** [4] - 13:11, 22:7, 29:22, 30:6
**statements** [2] - 6:1, 29:16
**States** [3] - 1:24,

55:6, 55:15
**STATES** [2] - 1:1, 1:10
**states** [4] - 14:15, 15:9, 17:24, 39:18
**status** [1] - 53:18
**statute** [6] - 5:16, 17:8, 21:19, 24:11, 24:23, 33:14
**statutory** [4] - 8:17, 24:15, 33:23, 35:4
**stayed** [1] - 38:3
**stead** [1] - 40:18
**step** [2] - 11:12, 16:17
**stick** [1] - 29:18
**still** [6] - 7:2, 9:8, 25:24, 32:16, 32:19, 51:19
**straight** [4] - 3:24, 14:2, 23:19, 27:23
**Street** [2] - 1:14, 1:20
**strike** [2] - 2:19, 38:18, 39:7
**strongly** [1] - 27:6
**struggling** [1] - 27:4
**subject** [2] - 21:3, 23:11
**submitted** [3] - 4:7, 39:6, 44:2
**submitting** [1] - 51:21
**subrogation** [1] - 45:19
**subsection** [4] - 21:8, 21:9, 22:17, 37:3
**substantial** [5] - 18:12, 18:25, 19:1, 19:7, 19:17
**subsume** [1] - 49:18
**successor** [4] - 45:10, 45:16, 46:1, 46:4
**sue** [2] - 40:10, 53:3
**suffered** [2] - 24:1, 24:3
**suffering** [1] - 24:24
**sufficient** [1] - 25:20
**sufficiently** [2] - 41:17, 42:18
**suit** [3] - 15:2, 26:16, 42:4
**Suite** [2] - 1:17, 1:20
**sum** [2] - 29:20, 30:9
**summary** [3] - 7:12, 8:5, 35:9
**sums** [4] - 17:23, 19:8, 30:14, 53:3
**superfluous** [1] -

31:20
**supplement** [1] - 41:1
**supplemental** [1] - 51:13
**support** [4] - 24:7, 31:16, 37:19, 45:1
**supporting** [1] - 21:5
**supposed** [3] - 9:3, 47:19, 47:20
**surprised** [1] - 38:16
**survive** [1] - 32:7
**survived** [1] - 33:6
**survives** [1] - 33:7

**T**

**talks** [3] - 46:1, 50:1, 53:2
**Tampa** [2] - 1:20, 1:21
**tasks** [1] - 45:18
**TCPA** [1] - 42:5
**technical** [3] - 31:6, 31:22, 32:13
**technically** [3] - 7:22, 32:15, 40:4
**teed** [1] - 12:1
**TELECONFERENCE** [1] - 1:9
**telephone** [1] - 33:12
**ten** [2] - 40:3, 40:4
**term** [3] - 33:15, 49:11, 49:13
**terms** [29] - 12:3, 12:7, 12:12, 12:22, 12:25, 13:25, 15:17, 16:17, 17:17, 17:18, 18:4, 18:25, 27:12, 27:25, 30:7, 36:22, 36:24, 39:20, 39:22, 39:24, 42:18, 44:8, 44:14, 44:17, 51:12, 52:14, 52:17, 53:7, 53:11
**text** [6] - 3:8, 3:12, 3:22, 9:12, 10:4, 10:6
**THE** [67] - 1:10, 1:13, 1:19, 2:2, 2:9, 2:13, 2:17, 3:14, 3:18, 3:20, 4:4, 4:14, 5:10, 6:3, 7:8, 8:9, 10:8, 11:1, 12:8, 13:19, 14:24, 15:20, 19:12, 19:20, 19:25, 20:2, 20:15, 21:7, 21:18, 21:25, 22:13, 23:17, 24:10, 25:7, 25:25, 26:2, 27:15, 28:17, 28:25, 29:10, 32:10, 33:3,

35:10, 36:2, 36:5, 37:9, 37:12, 37:25, 38:5, 38:13, 38:18, 39:9, 39:25, 40:24, 42:20, 44:19, 45:14, 46:6, 47:11, 48:20, 50:8, 50:25, 53:13, 53:16, 54:7, 54:15, 54:19
**the's** [1] - 30:24
**themselves** [1] - 48:5
**theory** [1] - 7:17
**therefore** [3] - 37:8, 41:25, 42:14
**they've** [1] - 8:21
**thinking** [1] - 6:6
**third** [2] - 18:9, 20:4
**Thompson** [1] - 49:20
**threat** [13] - 6:14, 6:21, 7:13, 8:6, 13:5, 14:4, 14:5, 14:11, 16:9, 22:11, 26:15
**threatened** [3] - 17:6, 17:12, 17:14
**threatening** [1] - 17:10
**threats** [2] - 17:2
**three** [7] - 3:3, 3:4, 3:9, 3:11, 3:25, 5:15, 30:3
**TILA** [8] - 8:13, 8:23, 9:7, 9:8, 9:13, 12:2, 13:25, 42:8
**title** [1] - 46:16
**today** [2] - 35:10, 54:3
**together** [1] - 27:10
**took** [3] - 25:5, 40:13, 43:20
**top** [2] - 32:24, 33:5
**tort** [1] - 53:7
**touched** [1] - 42:23
**towards** [1] - 35:9
**trade** [1] - 32:22
**transcribed** [1] - 55:7
**TRANSCRIBED** [2] - 1:22, 2:1
**TRANSCRIPT** [1] - 1:11
**transcript** [2] - 55:10
**tread** [1] - 27:8
**trial** [23] - 2:20, 35:9, 38:25, 39:3, 39:10, 41:6, 41:12, 41:14, 41:17, 42:5, 42:10, 42:19, 44:18, 46:11, 47:9, 48:4, 49:2, 49:3,

49:12, 49:23, 50:3, 51:20, 52:2
**trials** [1] - 50:6
**trier** [1] - 35:20
**true** [10] - 4:23, 7:15, 10:7, 29:22, 29:24, 30:17, 32:11, 32:15, 35:24, 43:16
**truism** [2] - 7:18, 7:19
**trust** [2] - 45:16, 53:5
**trustee** [4] - 47:14, 47:16, 47:23, 53:4
**try** [2] - 26:3, 38:22
**trying** [2] - 46:17, 54:10
**turn** [2] - 2:21, 42:21
**two** [17] - 2:18, 3:4, 3:8, 3:12, 3:22, 3:25, 5:6, 5:12, 10:9, 10:24, 13:6, 26:7, 28:24, 53:21
**type** [1] - 21:7
**typically** [2] - 10:13, 31:5, 31:9

**U**

**U.S** [18] - 39:19, 39:23, 40:14, 40:16, 45:12, 45:17, 46:12, 46:14, 46:18, 46:19, 46:20, 46:22, 47:22, 47:25, 48:5, 50:22, 50:23, 50:24
**ultimate** [1] - 36:21
**ultimately** [13] - 5:13, 5:24, 5:25, 7:1, 7:11, 7:18, 8:5, 9:6, 10:16, 31:12, 34:24, 35:3, 49:5
**unconscionable** [3] - 31:7, 32:9, 32:16
**under** [30] - 8:17, 10:14, 11:23, 11:24, 15:7, 16:6, 16:17, 16:21, 17:16, 20:18, 20:22, 21:1, 22:5, 22:16, 22:25, 23:11, 24:10, 24:12, 24:22, 27:12, 27:13, 27:25, 30:6, 33:10, 33:14, 34:23, 39:1, 41:21, 42:13, 48:22
**understood** [4] - 32:17, 35:22, 48:12, 48:23
**unequivocal** [2] - 16:4, 16:5
**unethical** [4] - 21:4,

21:11, 22:1, 22:11
**unfair** [8] - 18:11, 19:16, 22:1, 31:6, 32:8, 32:16, 32:21, 32:23
**unfortunately** [1] - 16:14
**unified** [1] - 45:20
**uniform** [3] - 29:9, 35:16, 35:17
**united** [1] - 1:24
**UNITED** [2] - 1:1, 1:10
**United** [2] - 55:6, 55:15
**universe** [1] - 32:15
**unjust** [1] - 21:3
**unless** [2] - 4:15, 40:6
**unpack** [1] - 18:15
**unscrupulous** [3] - 21:4, 21:11, 22:12
**unsophisticated** [2] - 14:25, 15:3
**unsuccessful** [1] - 31:8
**up** [12] - 12:1, 18:20, 20:3, 20:12, 21:17, 26:5, 27:4, 27:10, 34:11, 44:25, 52:9, 52:16
**upheld** [1] - 41:5
**us/ominous/synonymous** [1] - 35:1
**usage** [1] - 9:12

**V**

**vacated** [1] - 53:25
**valid** [1] - 41:15
**validity** [1] - 41:6
**value** [2] - 34:16, 34:25
**veracity** [1] - 35:24
**verifications** [1] - 53:8
**version** [2] - 3:2, 3:11
**versus** [4] - 2:2, 33:17, 47:12, 47:13
**VIA** [1] - 1:9
**viable** [2] - 34:23, 35:7
**view** [3] - 7:9, 21:3, 26:15
**violate** [3] - 5:16, 9:8, 20:19
**violated** [1] - 33:18
**violation** [4] - 12:12,

24:17, 41:19, 42:7
**voluntarily** [1] - 48:13
**voluntary** [1] - 49:9
**vs** [1] - 1:5

**W**

**wait** [1] - 27:15
**waive** [1] - 49:12
**waived** [1] - 48:19
**waiver** [25] - 38:25, 39:1, 39:3, 39:10, 39:24, 41:6, 41:12, 41:14, 41:18, 41:22, 42:1, 42:5, 42:10, 42:19, 43:5, 43:6, 44:18, 46:11, 47:9, 48:4, 48:6, 48:8, 49:9, 49:23, 50:3
**waivers** [2] - 51:20, 52:3
**waiving** [2] - 48:13, 48:14
**wants** [1] - 5:7
**warning** [4] - 8:15, 8:18, 8:24, 14:8
**water** [1] - 27:8
**Weaver** [1] - 33:17
**week** [2] - 29:14, 54:15
**Wells** [1] - 33:17
**whereas** [1] - 7:24
**whoa** [1] - 47:2
**whole** [5] - 11:24, 12:5, 26:22, 28:1, 28:4
**wide** [2] - 35:18, 35:25
**Williams** [2] - 25:13, 49:20
**willingness** [1] - 15:11
**win** [2] - 29:13, 50:14
**winning** [1] - 29:12
**wins** [1] - 24:12
**Wise** [5] - 7:4, 7:16, 7:17, 14:7, 14:18
**WL** [1] - 20:1
**won** [1] - 50:15
**words** [2] - 12:17, 15:6
**works** [1] - 21:19
**world** [1] - 15:11
**worth** [1] - 38:9
**wrapped** [1] - 26:5
**wrapping** [1] - 20:3
**writes** [2] - 21:20, 21:21
**writing** [1] - 40:2

**written** [2] - 9:2, 17:25

---

## Z

---

**Zoom** [1] - 2:12